UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | No. 6:08-CR-61 |
| § | |
| v. § | Judge Leonard Davis |
| § | |
| § | |
| DOYLE RANDALL PAROLINE § | |
| § | |

BRIEF OF THE NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN
ON ISSUES OF RESTITUTION FOR
VICTIMS OF CHILD PORNOGRAPHY UNDER 18 U.S.C. § 2259

INTRODUCTION

The National Center for Missing and Exploited Children ("NCMEC") files this brief in response to the Court's June 10 request for information relating to awarding criminal restitution to victims of child pornography under 18 U.S.C. § 2259. The defendant in this case was convicted of possessing material involving the sexual exploitation of children in violation of 18 U.S.C. § 2252(a)(4)(B). "Amy," one of the children depicted in the images that defendant possessed, seeks restitution from the defendant for the full amount of her losses. The Court has severed the restitution determination from sentencing and has invited interested parties, including NCMEC, to file briefs addressing certain practical and legal considerations relating to the awarding of restitution in child pornography cases.

NCMEC serves as the central repository for information relating to child pornography cases across the United States. An essential part of NCMEC's mission in working to prevent and end the exploitation of children is to facilitate the reporting of online child pornography by

1

members of the public as well as certain corporate entities and to assist law enforcement by enhancing and facilitating the sharing of information relating to online child pornography and its victims. NCMEC submits this brief to provide the Court with additional information relating to the victimization of children by the possession and distribution of online child pornography. Specifically, NCMEC provides data relating to the substantial volume of child pornography reports that NCMEC receives and analyzes, as well as data relating to the frequent instances in which NCMEC analysts have viewed the "Misty" series, which includes images of Amy. NCMEC also provides information relating to statistical analyses of offenders who possess child pornography and the lasting psychological impact of child pornography on victims. The sheer number of instances in which a child's pornographic image may be possessed and distributed in the indelible context of the Internet coupled with the offender's rationale for possessing the image and the psychological effects on the child whose image is created and possessed suggests that each viewing, possession, or distribution of Amy is a new victimization.

Given that NCMEC is not directly involved in the judicial process to determine restitution for victims of online child pornography, NCMEC respectfully defers to differently-situated parties, including the parties in this case, to address these specific issues for the Court.

I. **BACKGROUND RELATING TO THE NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN**

NCMEC was established in 1984 as a private, nonprofit organization to provide services to families, law enforcement, and other professionals to help prevent the abduction, endangerment, and sexual exploitation of children. NCMEC works closely with many federal and state government and law enforcement agencies to prevent and combat child sexual exploitation. NCMEC's mission to assist on cases of child sexual exploitation has become increasingly complex as the growth of the Internet makes it exponentially easier to possess and

to distribute child pornography worldwide. NCMEC has two central programs, the CyberTipline and the Child Victim Identification Program (CVIP), that focus on cases of online child pornography.

### A.    The CyberTipline

NCMEC operates a national online clearinghouse for tips and leads relating to online child sexual exploitation called the CyberTipline®. The CyberTipline launched in 1998 and is authorized by Congress to create a reporting mechanism for members of the public and certain corporate entities, including electronic service providers, to report to NCMEC instances of child sexual exploitation, including the enticement of children for sexual acts, extra-familial child sexual molestation, child pornography, child sex tourism, child prostitution, the distribution of unsolicited obscene materials to a child, and the use of misleading domain names. NCMEC processes and analyzes each CyberTipline report and then makes reports available to the appropriate law enforcement agency for investigation and potential prosecution.

Since 1998, NCMEC has processed over 702,000 CyberTipline reports, of which over 610,000 related to apparent child pornography[1]. From January 1, 2009 to June 30, 2009, NCMEC received 52,628 CyberTipline reports, of which 45,112 reports concerned images of apparent child pornography. In the month of June 2009 alone, NCMEC received 9,891 CyberTipline reports, of which 8,861 reports concerned images of apparent child pornography. While NCMEC's numbers indicate that the circulation of apparent child pornography images is voluminous, many of these cases cannot be tied to a specific jurisdiction and therefore cannot be investigated by law enforcement and eventually prosecuted. Even when the image is

---

[1] In analyzing CyberTipline reports of images and websites containing alleged child pornography, NCMEC analysts determine whether the reported images are of "apparent" child pornography using the definition in the federal statute as a guideline. Deciding whether particular images constitute actual child pornography under particular state or federal laws is a matter for law enforcement, judges, and prosecutors in each particular jurisdiction to determine.

investigated, the child who has been victimized by the circulation of their pornographic image may remain unidentified and thus unable to seek redress for the crime perpetrated against them.

      B.      Child Victim Identification Program

NCMEC also operates the Child Victim Identification Program (CVIP), which has a dual mission: (1) to assist federal and state law enforcement agencies and prosecutors with child pornography investigations; and (2) to assist law enforcement in locating unidentified child victims so they can be removed from abusive situations.

CVIP analysts assist law enforcement with online child pornography cases by reviewing seized collections of child pornography to determine which images contain child victims who previously have been identified by law enforcement. NCMEC conducts evidence reviews using NCMEC's Child Recognition and Identification System (CRIS), a proprietary software program that determines whether an image under review contains a previously identified child. CVIP analysts also review images newly entered into CRIS to determine if the new images depict a previously identified child.

To date, NCMEC analysts have conducted over 19,000 evidence reviews, comprising more than 24 million images, at the request of law enforcement. NCMEC has collected information regarding approximately 2,300 child victims depicted in sexually exploitative images who previously have been identified by law enforcement. In 2008, CVIP analysts conducted 4,629 evidence reviews, comprising more than 8.6 million images, at the request of law enforcement. Seventy five percent of these evidence reviews contained images of child victims who previously have been identified by law enforcement. NCMEC's data indicates that while the volume of apparent child pornography images seized by law enforcement and sent to

NCMEC for review continues to grow dramatically, for a variety of reasons, the number of child victims who are identified remains relatively small.

Of these identified children, 89% are located in the United States and 11% are located outside the United States. Five percent of identified children were infants; 47% were prepubescent; and 48% were pubescent. The extreme youth of many of the identified child victims exacerbates the likelihood that their victimization will be long-lasting, and they will be compelled to endure the continual circulation and possession of their images by an increasing number of offenders.

## II.    BACKGROUND RELATING TO THE "MISTY" CHILD PORNOGRAPHY SERIES

Child pornography images and/or video files are often characterized as a "series." A series is a collection of images and/or video files taken over a period of time and typically containing both apparent child pornography as well non-pornographic images of a child or children. Traders and collectors of child pornography images often name a series before they trade it with other offenders.

The "Misty" series contains still images of a pre-pubescent female child. According to law enforcement officials who identified the child, this series has been actively collected and traded since 1998. State, federal, and international law enforcement agencies have sent to NCMEC child pornography collections seized from offenders that contained images associated with the "Misty" series.

NCMEC analysts have encountered the "Misty" series in over 3,227 evidence reviews submitted by law enforcement. In conducting these evidence reviews, CVIP analysts have viewed over 35,570 images that appear to be associated with the "Misty" series. To date in 2009 alone, NCMEC analysts have viewed images associated with the "Misty" series 8,860 times.

The "Misty" series pictures a child being forced to perform a series of extremely graphic acts, including oral copulation, anal penetration, and masturbation, with an adult man. The images in the "Misty" series are crime scene photos. They memorialize the criminal acts committed against this child. These images have been viewed, traded, and collected by offenders thousands of time for their own personal gratification.

## III.     RESEARCH STUDIES REGARDING OFFENDERS WHO POSSESS CHILD PORNOGRAPHY

In 2000, NCMEC sponsored a statistical analysis of arrested offenders who possessed child pornography. *See* Janis Wolak, et al., *Child Pornography Possessors Arrested in Internet-Related Crimes, Findings from the National Online Juvenile Victimization Study* (2005) (the "Study"). The Study surveyed participating state and local law enforcement agencies for a one-year period[2] and tracked data from 1,713 arrests for crimes involving the possession of child pornography. *Id.* at 13. The Study showed that while the majority of all the individuals arrested were white males over the age of 25, the income and educational levels varied greatly. *Id.* at 16-17. The number of images that these individuals possessed varied from less than 100 to over 1,000. *Id.* at 20. Many of the individuals who were arrested had images of pre-pubescent children, and the majority of these images depicted sexual penetration. *Id.* at 19. Twenty-one percent of those arrested possessed images depicting violence being perpetrated on the child victims. *Id.* at 20.

In addition to the offender profile data that the Study disclosed, it also revealed aspects of the possession of child pornography that had not been widely documented before. The Study determined that individuals possessing child pornography images, in addition to those that distribute such images, add to the lasting burden of child victims. *Id.* at 41. Because it is

---

[2] The majority of the survey participants were state and local law enforcement agencies, though two federal law enforcement agencies also participated.

impossible to remove child pornography images from the Internet or from an offender's personal collection, a child is perpetually victimized by the continued distribution and possession of their images. *Id.*

### IV. THE PSYCHOLOGICAL IMPACT AND HARM OF CHILD PORNOGRAPHY

Child pornography is a photographic record of a child's sexual abuse. Offenders use these images for sexual arousal. *See* Sharon W. Cooper, et al, *Medical, Legal & Social Science Aspects of Child Sexual Exploitation, Volume 1* (2005). Offenders often create collections of child pornography that they exchange with one another, not only for their own personal gratification but also to "normalize" and gain support for their illicit behavior. *Id.* at 267. Offenders often show child pornography images to children in an effort to lower a child's inhibitions so they will participate in sexual acts and to "educate" them about how to perform sexual acts. *Id.* at 266.

The U.S. Supreme Court consistently has recognized the serious and continuous harm posed by child pornography. In the landmark case of *New York v. Ferber*, 458 U.S. 747 (1982), the Court concluded that "the prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Ferber*, 458 U.S. at 757. In making this specific finding, the Court referenced several studies that indicate that "[p]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. *Id.* at 760. Because the child's violation is reduced to a recording, the pornographic image may haunt the child long after the original violation occurred. *Id.* The U.S. Supreme Court continued to emphasize the harmful effects of child pornography in *Osborne v. Ohio*, stating that "the victimization of children involved [in child pornography] does not end when the pornographer's camera is put away. . . . The pornography's continued existence causes the child victims continuing harm. . . ."

*Osborne v. Ohio*, 495 U.S. 103, 111 (1990). The Supreme Court affirmed these conclusions in *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002). In *Ashcroft*, the Court emphasized not only the permanency of images of child pornography but the repeated violation of the child in concluding that child pornography is "a permanent record of a child's abuse, [its] continued circulation . . . would harm the child who has participated. Like a defamatory statement, each new publication . . . would cause new injury to the child's reputation and emotional well-being." *Ashcroft*, 535 U.S. at 249. The continual dissemination of child pornographic images perpetuates the sexual abuse that was perpetrated against the child victim and repeatedly victimizes the children depicted in these images. *See also United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998) (victimization of a child continues after the image is made).

While society's understanding of the lasting impact on children who are exploited by child pornography would benefit from additional research, certain studies have documented the harm caused to a child by the possession and distribution of these images. These studies have demonstrated that children experience intense feelings of powerlessness from knowing that there is nothing they can do to prevent others viewing their pornographic images. *See* National Society for the Prevention of Cruelty to Children, *Images of abuse: a review of the evidence on child pornography* (2006). Child victims also are concerned that images of their abuse may be used to entice or manipulate other children into sexually abusive acts. *Id.* at 4-5. The continuous distribution and possession of a child's images imposes a permanent and recurring reminder of their sexual abuse, and this knowledge further exacerbates the psychological harm caused by the actual act of abuse. *Id*.

Studies on victims of child pornography also indicate that the child's psychological harm continues into adulthood and impacts their ability to form healthy relationships with others. John

8

E.B. Myers, et al., *The APSAC Handbook on Child Maltreatment* (2d ed. 2002). The symptoms of distress exhibited by child victims of sexual abuse continue after the actual sexual exploitation to the time of disclosure and into the post-traumatic phase as well. *Id*. at 59-62. In cases of online child pornography, where the crime is perpetuated by the continual circulation of the child's images, these symptoms of distress are likely to continue with each new distribution and possession.

Child victims experience depression, withdrawal, anger, and other psychological disorders that can continue well into adulthood. *Id*. at 64. Child victims also frequently experience feelings of guilt and responsibility for the abuse as well as feelings of betrayal, a sense of powerlessness, worthlessness, and low self-esteem. *Id*. at 59. Younger children tend to externalize stress by re-enacting sexual activities through play, while adolescents may experience negative effects on their developing sexuality. *Id.* at 52.

Studies also suggest that a significant part of the healing process for children traumatized by sexual abuse is the ability to control the disclosure of the abuse. Children who felt powerless when the abuse occurred may feel empowered by choosing when, how, and to whom to disclose their abusive experiences. Ethel Quayle, et al., *Child Pornography and Sexual Exploitation of Children Online* (2008). Children victimized through the online distribution and possession of child pornography images are stripped of the ability to control the disclosure of their abuse. *Id.* at 59. Instead, their abuse is perpetrated by the uncontrollable distribution of their images across the Internet at any time and to any number of recipients. *Id.* at 59-60. The repeated distribution and possession of child pornography images in an uncontrolled setting re-victimizes children and exposes them to further shame and humiliation and the attendant physical and mental results of this abuse. *Id.* at 59.

V.     **LEGAL ANALYSIS OF RESTITUTION CLAIMS BY VICTIMS OF CHILD PORNOGRAPHY**

Courts uniformly have held that restitution is mandatory for offenses involving the sexual exploitation of children. *See United States v. Searle,* 65 Fed. Appx. 343, 344 (2d Cir. 2003); *United States v. Julian*, 242 F.3d 1245, 1247 (10th Cir. 2001); *United States v. Crandon*, 173 F.3d 122, 127 (3rd Cir. 1999). Since the recent enactment of 18 U.S.C. § 2259, courts have begun to extend the award of restitution to victims of online child pornography.

In February 2009, the District Court of Connecticut ordered a defendant convicted of possessing child pornography to pay restitution to an identified victim depicted in an image that the defendant possessed. The ruling was one of the first to require a defendant convicted of possessing, but not creating, illegal images of child pornography, to pay restitution to a victim. *United States v. Hesketh*, No. 3:08-cr-00165-WWE (D. Conn. Feb. 23, 2009). More recently, on July 9, 2009, the District Court for the Northern District of Florida ordered a defendant convicted of knowingly transporting and shipping child pornography as well as receiving and attempts to receive child pornography, to pay $3,263,758 in restitution to the child victim. *United States v. Freeman*, No. 3:08CR22-002/LAC (N.D. Fl. July 9, 2009). These cases demonstrate the district courts' growing recognition that victims of online child pornography are entitled to seek and recover restitution from defendants who possessed as well as distributed their images.

Congress has long recognized the harm child pornography inflicts on its victims. In passing the Child Pornography Prevention Act of 1996, Congress specifically found that "[t]he use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of the child." S. Rep. 104-358 (citing *New York* v. *Ferber,* 458 U.S. 747 (1982)). Congress relied further on *Ferber* in indicating that "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have

sexual dysfunctions, and have a tendency to become sexual abusers as adults. Sexually exploited children (are) predisposed to self-destructive behavior such as drug and alcohol abuse or prostitution." *Id.*

More recently, The Adam Walsh Child Protection and Safety Act, signed into law on July 27, 2006, made specific findings regarding the psychological harm and trauma suffered by the victims of child pornography. *See* Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501, 120, Stat. 587, 623 (2006). First, Congress found that:

> [t]he illegal production, transportation, distribution, receipt, advertising and possession of child pornography, as defined in section 2256(8) of title 18, United States Code, as well as the transfer of custody of children for the production of child pornography, is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole.

*Id.* Second, Congress found that "technological advances have had the unfortunate result of greatly increasing the interstate market in child pornography." *Id.* Finally, Congress found that "every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." *Id.*

Victims of child pornography must deal with the permanency and expanding circulation of the record of their sexual abuse. The U.S. Supreme Court and Congress consistently have recognized the grave harm perpetrated on child victims even after their pornographic images are made and when viewed by others. NCMEC's data reflects increasing reports regarding incidents of online child pornography, which indicates that the victimization of children through the possession of online child pornography continues to expand.

## CONCLUSION

This Court has the authority to order restitution to victims from offenders who possess, receive, and/or distribute child pornography images. Due to the continued, online victimization of children, such as Amy, whose abuse is captured in heavily-traded online pornographic images, this Court should award equitable restitution to Amy.

Respectfully submitted,

/s/ Yiota Souras
General Counsel
National Center for Missing & Exploited Children
Charles B. Wang International Children's Building
699 Prince Street
Alexandria, VA 22314
703-837-6122

/s/ Margaret M. Zimmer
Attorney
National Center for Missing & Exploited Children
Charles B. Wang International Children's Building
699 Prince Street
Alexandria, VA 22314
   703-778-6483

## CERTIFICATE OF SERVICE

       On July 20, 2009, I provided electronic copies of the BRIEF OF THE NATIONAL CENTER FOR MISSING AND EXPLOITED CHILDREN ON ISSUES OF RESTITUTION FOR VICTIMS OF CHILD PORNOGRAPHY UNDER 18 U.S.C. § 2259 to counsel for the Defendant, and counsel for the United States, and amicus parties.

                                       /s/ Yiota Souras
                                       General Counsel
                                       National Center for Missing & Exploited Children
                                       Charles B. Wang International Children's Building
                                       699 Prince Street
                                       Alexandria, VA 22314
                                       703-837-6122