Case 6:08-cr-00061-LED-JDL    Document 54-3    Filed 10/27/2009    Page 1 of 10

# EXHIBIT 2

```
 1                  IN THE UNITED STATES DISTRICT COURT
                     FOR THE EASTERN DISTRICT OF TEXAS
 2                             TYLER DIVISION

 3   UNITED STATES OF AMERICA       )
                                    )    DOCKET NO. 6:08cr61
 4        -vs-                      )
                                    )    Tyler, Texas
 5                                  )    10:00 a.m.
     DOYLE RANDALL PAROLINE         )    August 20, 2009
 6
                     TRANSCRIPT OF RESTITUTION HEARING
 7                 BEFORE THE HONORABLE LEONARD DAVIS,
                       UNITED STATES DISTRICT JUDGE
 8
                          A P P E A R A N C E S
 9
     FOR THE GOVERNMENT:      MR. WILLIAM P. BALDWIN
10                            MR. ROBERT WELLS
                              ASSISTANT U.S. ATTORNEYS
11                            110 North College, No. 700
                              Tyler, Texas   75702
12
                              MS. MANDY GRIFFITH
13                            ASSISTANT U.S. ATTORNEY
                              101 E. Park Blvd, Ste. 500
14                            Plano, Texas   75074

15   FOR THE DEFENDANT:       MR. F. R. "BUCK" FILES, JR.
                              BAIN FILES LAW FIRM
16                            109 W. Ferguson
                              Tyler, Texas   75702
17
      FOR THE MOVANT:         MR. JAMES R. MARSH
18                            THE MARSH LAW FIRM
                              P.O. Box 4668
19                            New York, NY   10163-4468

20
     ALSO PRESENT:  MR. MIKE THOMAS, US PROBATION OFFICE
21

22   COURT REPORTER:          MS. SHEA SLOAN
                              211 West Ferguson
23                            Tyler, Texas   75702

24
     Proceedings taken by Machine Stenotype; transcript was
25   produced by a Computer.
```

                                                                60

 1             MR. MARSH:  Let's put it that way.  I want it --
 2             THE COURT:  I have given you --
 3             MR. MARSH:  -- limited to this case.
 4             THE COURT:  Excuse me.  I have given you some
 5  guidance as to how the Court will probably rule on that issue
 6  if I need to, so y'all see if you can work it out.
 7             MR. FILES:  We will work it out, Your Honor -- I
 8  hope.
 9             THE COURT:  Go ahead, Mr. Marsh.
10             MR. MARSH:  Your Honor, the only issue -- and,
11  again, I think the proximate cause issue Your Honor is fully
12  aware of and engaged with.  It is a matter of statutory
13  interpretation.  We have stated our position.  I have adopted
14  the position of Professor Cassell in his brief on the issue.
15  The courts are struggling with the proximate cause issue.  I
16  don't -- and Mr. Baldwin states in one of his footnotes, 13,
17  that it is nonsensical.  I respectfully disagree with it.
18  Certainly Congress could find that the set of enumerated
19  losses are a baseline and anything else you wanted to get, you
20  have to prove some more.
21             You know, as remedial legislation if my client came
22  and said, you know, I found out I was a victim of child of
23  pornography, you know, and a week later I broke my leg, I want
24  you to pay for my broken leg, maybe we would have to provide
25  something more.  Is the broken leg related to the injury of

                                                                61

1    child pornography -- caused by child pornography?  Is there
2    any proximate cause between the broken leg and the possession?
3    But, clearly, I don't think that it is necessarily nonsensical
4    for Congress to provide a baseline of recognizable and
5    enumerated losses with the provision that if you want more, if
6    you want something different or unique -- and perhaps our
7    claim for Hedonic Damages -- without conceding the issue --
8    would be that, then clearly you need to provide the Court with
9    something more to base it on.
10              THE COURT:  So you are saying if you are a victim of
11   child pornography, then the enumerated (a) through (e) in
12   2259, medical services relating to physical, psychiatric, or
13   psychological care; physical and occupational therapy or
14   rehabilitation; necessary transportation; temporary housing;
15   childcare expenses; loss income; and attorney's fees as well
16   as other costs incurred, that those are not subject to a
17   proximate cause test relating to this defendant but all
18   defendants that have, as Mr. Baldwin said, entered the room
19   are jointly and severally responsible for those; but if there
20   is some other loss such as breaking the leg or something else,
21   then under subparagraph (f) any other losses suffered by the
22   victim as a proximate result of the offense, that is where the
23   proximate cause would come in?
24              MR. MARSH:  Yes, Your Honor.  That is our position.
25   And I think for all of the reasons that have been stated ad

Case 6:08-cr-00061-LED-JDL    Document 54-3    Filed 08/24/2009    Page 4 of 10

62

1  nauseam in all of the papers that, you know, if you look at
2  what the Supreme Court said, if you look at what the courts of
3  appeals have said -- and I am not talking specific -- well, I
4  am going to get to that in one second.  If you look at the
5  other statutory scheme, the MVRA, and the general restitution
6  statute, they are all very specific in linking victimhood, if
7  you will, victim's status to proximate cause.  And this
8  statute doesn't.

9       And what you see in the cases from the Supreme Court
10 on down and in the Congressional language and in the statutory
11 language is the use of the word "harm"; that the victim has to
12 be harmed by a violation of Chapter 110.  And, you know,
13 Congress -- and in their findings, if you will, Congress
14 recognized there is a set of enumerated harms, that that based
15 on all of the material that has been discussed so aptly by Mr.
16 Baldwin and myself and everyone else in the papers, recognizes
17 that there is a harm.  There is a harm from this criminal
18 activity.

19      I think what has been equally recognized and because
20 the law characterizes this fundamentally or at least primarily
21 as a privacy tort, it is an invasion of the privacy of the
22 victim and a revictimization.  I liked what Mr. Baldwin said
23 about, you know, the stranger in the room, because I think
24 more accurately than anyone has been able to elucidate, he
25 describes precisely the harm that Congress is trying to

 1   prevent.  And it is clear that this harm is the baseline that
 2   victims need to show in order to arrive at the enumerated
 3   damages.
 4          And as a privacy tort, Congress recognized at some
 5   level that these things are going to be difficult to sort out
 6   in terms of factual.  You know, is it -- you know, is she in
 7   therapy because -- for this factor or that factor or the lost
 8   income?  Congress clearly recognized and the courts have
 9   recognized that these victims are harmed and it is a lifetime
10   harm and it is an ongoing harm and it is a continuing harm.
11   What I think Mr. Baldwin said, is accurate.
12          In this case in some ways -- I am not going to say
13   it is unique, but Mr. Shanley and the victim herself recognize
14   and prove that from the very beginning this individual, the
15   producer, was engaging in this activity in order to produce
16   child pornography.  And we have proof of that.  He was
17   producing this for consumers like the defendant in this case.
18   And if you look at the totality of the crime from start to
19   finish -- and our position has evolved on this slightly -- you
20   know, judges get fixated on the act, the sex act, we are not
21   going to charge the defendant for the sex that happened back
22   in 1999 -- or 1989 -- ten years ago, 1998 and 1999.
23          But in reality, given the facts of this case, why
24   shouldn't the defendant be charged for those acts, in terms of
25   restitution at least, because those acts occurred in order to

64

1  produce child pornography?  Specifically, the facts of this
2  case are that my client's uncle was part of what I will
3  characterize, knowing fully the import of these words, a child
4  pornography conspiracy directed against my client.  An
5  individual in Seattle, Washington requested that the uncle of
6  my client engage in certain activities of sexual abuse and
7  exploitation, visually record those; in some cases requiring
8  my client to hold up a sign with greetings to the Seattle
9  pedophile.  And there are images that show her with signs that
10 say "Hi, Haz."  "Haz" was the handle, if you will, of the
11 Seattle pedophile, hazmat.  He was a hazardous waste material
12 hauler.
13          THE COURT:  Your client resided in New York?
14          MR. MARSH:  In Pennsylvania, Your Honor.
15          THE COURT:  In Pennsylvania.
16          MR. MARSH:  So she was required to engage in these
17 activities:  To hold up signs "Hi, Haz"; to engage in chats
18 and other contacts with other child pornography consumers, for
19 the purpose of producing the visual images demanded by the
20 consumers.  That is not going to be true in every case.  But
21 in this case specifically, we have a victim who knew -- and
22 Dr. Cooper talks about this in terms of severity of child
23 pornography and its effect on the victims, so I will not try
24 to be the expert in this case.
25          But we have an individual, a victim, who knew at the

1    time that she was a child porn star for eager consumers around
2    the world.  And that in and of itself is a psychological
3    harm.  She didn't need me to notify her.  She didn't need the
4    Government to tell her.  She didn't need social workers to
5    tell her that she was a victim of child pornography.  She knew
6    it at the time during the acts that occurred.  She was being
7    raped and molested for consumers of child pornography.
8              So to take Mr. Baldwin's analogy one step further,
9    the defendant was not only in the room, he conjured these
10   images up, he and other consumers, that directly led to the
11   victimization of my client.  And one thing which also I think
12   impacts on if the Court's analysis of this case -- and, again,
13   I use these terms carefully; but the very strange nature of
14   this crime is one of an ongoing conspiracy against my client.
15   And the MVRA talks about co-conspirators in terms of how
16   damages are parsed -- well, not damages but restitution awards
17   are parsed.
18             And what we do know from the nature of this crime is
19   that these images are traded and circulated and used to obtain
20   other images and used in the production of child pornography
21   and are ranked and are discussed and are in effect, you know,
22   an underground group of individuals who didn't create the
23   image.  There is no doubt that this defendant had no
24   individual contact with my client or -- well, from the best of
25   my knowledge didn't know her personally.  But we have a victim

```
 1   in which judges, police officers, politicians, lawyers,
 2   doctors, accountants, and the boy next door, all know her; but
 3   she doesn't know them.  She can't know them.  And that is the
 4   real nature of the harm in this case.  And Dr. Silberg can
 5   talk more about that, and Dr. Cooper can speak more about
 6   that.
 7              But if you look at the totality of the crime from
 8   start to finish and how my client has gotten to this point,
 9   she exists in a world -- we just had one, the Staples case
10   involved a law enforcement officer.  He, in fact, was a court
11   officer in the federal courthouse.  He was trading in child
12   pornography.  So for my clients, in effect -- and, again, I am
13   not trying to testify, but I am just offering our perspective,
14   there is no safe place for this girl in the world.
15              She doesn't know who has seen it, who is trading it,
16   who is talking about it, who is laughing at her, who is
17   comparing her to the pictures.  It could be anyone.  As the
18   Court knows, I'm sure the Court has seen these defendants -- I
19   know because I have 800 of them -- they are all kinds of
20   people from everywhere; people that you could not imagine
21   would engage in this activity.
22              THE COURT:  You say you have 800 defendants that
23   have been identified in the Amy Series?
24              MR. MARSH:  Yes, I will explain where that number
25   comes from, too, because that is a good point.  We have 250
```

```
                                                                  104
 1                     C E R T I F I C A T I O N

 2

 3    I certify that the foregoing is a correct transcript from the

 4    record of proceedings in the above-entitled matter.

 5

 6

 7    /s/ Shea Sloan                                    8/24/09

 8    SHEA SLOAN, CSR, RPR
      OFFICIAL COURT REPORTER
 9    STATE OF TEXAS NO. 3081
```