Case 6:08-cr-00061-LED-JDL     Document 54-5     Filed 10/27/2009     Page 1 of 16

# EXHIBIT 4




# Child Molesters:
# A Behavioral Analysis

**For
Law-Enforcement
Officers
Investigating
the Sexual Exploitation
of Children by
Acquaintance Molesters**

In cooperation with the



# Child Molesters:
# A Behavioral Analysis

**For Law-Enforcement Officers
Investigating the
Sexual Exploitation of Children
by Acquaintance Molesters**

Fourth Edition

September 2001

**Kenneth V. Lanning**
Former Supervisory Special Agent
Federal Bureau of Investigation (FBI)

**Copyright © 2001 National Center for Missing & Exploited Children.
All rights reserved.**

The National Center for Missing & Exploited Children (NCMEC), a national clearinghouse and resource center, is funded under Cooperative Agreement #98-MC-CX-K002 from the Office of Juvenile Justice and Delinquency Prevention, Office of Justice Programs, U.S. Department of Justice.

Points of view or opinions in this book are those of the author and do not necessarily represent the official position or policies of the U.S. Department of Justice, U.S. Department of Homeland Security, nor National Center for Missing & Exploited Children. National Center for Missing & Exploited Children® is a registered service mark of the National Center for Missing & Exploited Children.

# Kenneth V. Lanning, M.S., FBI (Retired)

Mr. Lanning is a 30-year veteran of the FBI who spent 20 years in the Behavioral Science Unit and National Center for the Analysis of Violent Crime at the FBI Academy in Quantico, Virginia. He is a founding member of the Board of Directors of the American Professional Society on the Abuse of Children (APSAC) and current member of the Advisory Board of the Association for the Treatment of Sexual Abusers (ATSA). He is the 1990 recipient of the Jefferson Award for Research from the University of Virginia, 1996 recipient of the Outstanding Professional Award from APSAC, and 1997 recipient of the FBI Director's Award for Special Achievement for his career accomplishments in connection with missing and exploited children. He has testified on seven occasions before the U.S. Congress and many times as an expert witness in state and federal courts. He has consulted on thousands of cases involving deviant sexual behavior and the sexual victimization of children. He has authored numerous articles and publications including one monograph titled *Child Molesters: A Behavioral Analysis* and another titled *Child Sex Rings: A Behavioral Analysis* that have been widely distributed by the National Center for Missing & Exploited Children (NCMEC). He has made numerous presentations at major national and regional conferences on the sexual victimization of children, child abuse and neglect, and missing and exploited children and has lectured before and trained thousands of criminal-justice and mental-health professionals.

# Collection of Child Pornography and Erotica

## Collection

Law-enforcement investigations have verified that preferential sex offenders in general almost always collect theme pornography and paraphernalia related to their sexual preferences. Preferential sex offenders without a preference for children can have extensive collections. Such offenders will collect images and paraphernalia focusing primarily on their particular sexual preferences or paraphilias rather than predominantly on children. Child pornography will usually be only a small portion of their potentially large and varied collection with the children often portrayed in their paraphilic interests. Pedophiles almost always collect predominately child pornography or erotica.

Situational-type child molesters might also collect pornography but not with the high degree of predictability of the preferential sex offender. The pornography they do have will often be of a violent and degrading nature. In the child pornography collected by situational sex offenders and nonpedophile-preferential sex offenders, the children might be dressed up (*i.e.*, stockings, high heels, makeup) to look like adults or be pubescent teenagers. Situational sex offenders might collect pornography or erotica of a predominately violent theme but probably will not save the same material year after year. Investigators should always consider the possibility that any child molester might collect child pornography or erotica; however, it is almost a certainty with the pedophile type.

Especially for preferential-type sex offenders, **collection** is the key word here. It does not mean that they merely view pornography. They save it. It comes to define, fuel, and validate their most cherished sexual fantasies. They typically collect things such as books, magazines, articles, newspapers, photographs, negatives, slides, movies, albums, digital images, drawings, audiotapes, videotapes and equipment, personal letters, diaries, clothing, sexual aids, souvenirs, toys, games, lists, paintings, ledgers, photographic and computer equipment all relating to their preferences in a sexual, scientific, or social way. Not all preferential sex offenders collect all these items, and their collections can vary significantly in size and scope.

Factors that **formerly** seemed to influence the size of an offender's collection included **socioeconomic status**, **living arrangements**, and **age**. Better educated and more affluent offenders tended to have larger collections. Offenders whose living or working arrangements gave them a high degree of privacy tended to have larger collections. Because collections are accumulated over time, older offenders tended to have larger collections. Today, however, the computer has changed all of this. Almost anyone with an online computer can, in a relatively short time and at minimal expense, have a large collection of theme pornography especially child pornography. A short time ago it would have taken years at great expense to accumulate such a collection. In a computer the collection can also be easily hidden from family and friends. With an online computer a 20-year-old, blue-collar worker living with his parents can have a collection as large as a 55-year-old executive living alone in a mansion. The older, more affluent offender, however, is more likely to have more of his collection not on the computer.

> *Child pornography, by itself, represents an act of sexual abuse or exploitation of a child and, by itself, does harm to that child.*

Preferential sex offenders with the economic means previously converted parts of their collections to videotape when that technology became available. They converted their books, magazines, photographs, and movies to videotape. For a seemingly ever-decreasing price, an offender could have his own video camera and two video recorders, which gave him the capability to produce and duplicate obscene material or child pornography with little fear of discovery. Although videotape still has a significant appeal, an ever-increasing portion of most collections is now being digitally stored or duplicated on computers and disks.

### Child Pornography

What the pedophile collects can be divided into two categories. They are **child pornography** and **child erotica**. Child pornography can be behaviorally, **not legally**, defined as the sexually explicit reproduction of a child's image and includes sexually explicit photographs, negatives, slides, magazines, movies, videotapes, and computer disks. In essence it is, or was, the permanent record of the sexual abuse or exploitation of an **actual** child. Child pornography, by itself, represents an act of sexual abuse or exploitation of a child and, by itself, does harm to that child. The online computer and Internet, however, have radically changed most of what could have been said about the possession and distribution of child pornography in the United States in the 1980s and early 1990s.

Legal definitions of the term "child pornography" vary from state-to-state and under federal law. Under most definitions child pornography usually involves a **visual depiction** (not the written word) of a **child** (a minor as defined by statute) that is **sexually explicit** (not necessarily obscene unless required by state law). The federal child-pornography law (18 U.S.C.A. § 2256) defines a child or minor as someone who has not yet reached his or her eighteenth birthday. In contrast to adult pornography, but consistent with the gender preference of many pedophiles, there is a high percentage of boys in child pornography.

> *The online computer and Internet ... have radically changed most of what could have been said about the possession and distribution of child pornography in the United States in the 1980s and early 1990s.*

Because true child pornography once was hard to obtain, some pedophiles have or had only child erotica in their collections (s*ee* discussion of child erotica beginning on page 65); however, because of online computers, child pornography is now more readily available in the United States than it has been since the late 1970s. Child pornography is so readily available on the Internet, it is possible to store a collection in cyberspace and download it anytime one wants to view it. Because it represents his sexual fantasies (*e.g.*, age and gender preferences, desired sexual acts) the collection of any child molester should be carefully examined and evaluated.

Previous research I conducted with Drs. Carol R. Hartman and Ann W. Burgess identified four kinds of child-pornography collectors. They are "**closet**,"

"**isolated**," "**cottage**," and "**commercial**" (Hartman, Burgess, & Lanning, 1984). The "closet collector" keeps his collection a secret and is not actively involved in molesting children. Materials are usually purchased discreetly through commercial channels. The "isolated collector" is actively molesting children as well as collecting child pornography or erotica. Fear of discovery overrides his need for active validation and causes him to keep his activity a secret between only himself and his victims. His collection may include pictures of his victims taken by him as well as material from other sources. The "cottage collector" shares his collection and sexual activity with other individuals. This is usually done primarily to validate his behavior, and money or profit is not a significant factor. Photographs, videotapes, and "war stories" are swapped and traded with other child molesters, and sometimes, unknowingly, with undercover investigators. The "commercial collector" recognizes the monetary value of his collection and sells his duplicates to other collectors. Although profit is an important motive, these individuals are usually active sexual molesters themselves. It is important to recognize that the patterns identified in this research predated widespread public use of the Internet.

As with most forms of human behavior it is probably best to view the behavior of collecting child pornography on a continuum. It ranges from those who "just" collect to those who collect and noncriminally interact with children to those who collect and actively seek validation for their interests to those who collect and swap, trade, or sell child pornography to those who collect and produce child pornography to those who collect and molest children to those who collect and abduct children. All possibilities must be considered and evaluated.

With the exception of technical child pornography (*see* discussion beginning on page 64), the primary producers, distributors, and consumers of child pornography in the United States are child molesters, pedophiles, and sexual deviants. Child pornography is not a multibillion-dollar industry run by organized crime or satanic cults. With the advent of the Internet, however, it does appear that profit-motivated, child-pornography distribution has returned and is growing.

**Commercial Versus Homemade**
Child pornography can be divided into two subcategories. They are **commercial** and **homemade**. Commercial child pornography is that which is produced and intended for commercial sale. Because of strict federal and state laws today, there is no place in the United States where commercial child pornography is knowingly openly sold. What child pornography is now being commercially distributed in the United States is most often sold on the Internet. For other than Internet distribution, the risks are usually too high for the strictly commercial dealer or common criminal. Because of their sexual and personal interests, however, preferential sex offenders are more willing to take those risks. Their motive goes beyond just profit. In the United States it is primarily a cottage industry run by pedophiles and child molesters. Some commercial child pornography being distributed in the United States was smuggled in from foreign countries by pedophiles. Commercial child pornography is more readily available in foreign countries. United States citizens, however, seem to be the main customers for much of this material. Some offenders collect their commercial child pornography in ways (*e.g.*, photographs of pictures in magazines, pictures cut up and mounted in photo albums, names and descriptive information written below, homemade labels on commercial videotapes, scanned into a computer) that make

it appear to be homemade child pornography. If necessary, highly experienced investigators and forensic laboratories could be of assistance in making distinctions between homemade and commercially produced child pornography.

Contrary to what its name implies, the quality of homemade child pornography can be as good if not better than the quality of any commercial pornography. The pedophile has a personal interest in the product. Homemade simply means it was not originally produced primarily for commercial sale. Although commercial child pornography is not openly sold in "brick and mortar" stores anywhere in this country, homemade child pornography is continually produced, swapped, and traded in almost every community in the United States primarily via the Internet. Although rarely found in "adult" bookstores, child pornography is frequently found in the homes and offices, especially on the computers, of doctors, lawyers, teachers, clergy members, and other apparent pillars of the community. There is, however, a connection between commercial and homemade child pornography. Sometimes homemade child pornography is sold or winds up in commercial child-pornography magazines, movies, and videos or uploaded on the Internet. The same pictures are reproduced and circulated again and again. With rapidly increasing frequency, more and more of both commercial and homemade child pornography is found in digital format on computers and disks. In this format there is no loss of quality when it is reproduced. This actually increases the odds of finding child pornography in any investigation. Again the Internet has tended to blur the distinction between commercial and homemade child pornography.

**Technical Versus Simulated**

In understanding the nature of child pornography, investigators must also recognize the distinction between **technical** and **simulated** child pornography. As previously stated the federal child-pornography law (18 U.S.C.A. § 2256) defines a **child** as anyone younger than the age of 18; therefore, a sexually explicit photograph of a pubescent, mature looking 15-, 16-, or 17-year-old girl or boy is what I call **technical** child pornography. Technical child pornography does not look like child pornography, but it is. The production; distribution; and, in some cases, possession of this child pornography could and should be investigated under appropriate child-pornography statutes. Technical child pornography is an exception to much of what we say about child pornography. It often is produced, distributed, and consumed by individuals who are not child molesters or pedophiles; is more openly sold in stores and distributed around the United States; and more often portrays females than males. In essence, because it looks like adult pornography, it is more like adult pornography.

On the other hand, sexually explicit photographs of 18-year-old or older males or females may not legally be child pornography, but, if the person portrayed in such material is young looking, dressed youthfully, or made up to look young, the material could be of interest to pedophiles. This is what I call **simulated** child pornography. Simulated child pornography looks like child pornography, but may not be. (*See* discussion below.) It is designed to appeal to the pedophile but it usually is not legally child pornography because the individuals portrayed are older than 18. This illustrates the importance and sometimes the difficulty in proving the age of the child in the photographs or videotapes. Particularly difficult is pornography portraying underage children pretending to be overage

models pretending to be underage children and "virtual" child pornography that is created with computer software that does not involve the depiction of actual children.

The ability to manipulate digital visual images with a computer can make it more difficult to determine the ages of the persons in them. Computer-manipulated and, soon, computer-generated visual images of individuals who appear to be, but are not, children engaging in sexually explicit conduct may call into question the basis for highly restrictive (*i.e.*, possession, advertising) child-pornography laws. In an attempt to deal with this problem, the Child Pornography Prevention Act (CPPA) of 1996, 18 U.S.C.A. § 2252A, expanded the federal definition of "child pornography" to include not only a sexually explicit visual depiction using a minor, but also any visual depiction that "has been created, adapted, or modified to **appear** (emphasis added) that an identifiable minor is engaging in sexually explicit conduct." This expanded definition, in essence, federally criminalizes simulated child pornography. Although this new law makes prosecution of cases involving manipulated computer images easier, it also means that it is no longer possible in every case to argue that child pornography is the permanent record of the abuse or exploitation of an **actual** child. The significance of being able to make that argument will be discussed shortly. This law is currently being challenged in a variety of cases and jurisdictions, and the U.S. Supreme Court will ultimately establish its constitutionality. If this law is found unconstitutional, only existing obscenity laws may apply to such manipulated/simulated child pornography.

With other than simulated and/or virtual child pornography, it could be effectively argued that child pornography requires a child to be victimized. A child had to be sexually exploited to produce the material. Children used in pornography are desensitized and conditioned to respond as sexual objects. They are frequently ashamed of their portrayal in such material. They must deal with the permanency, longevity, and circulation of such a record of their sexual victimization. Some types of sexual activity can be repressed and hidden from public knowledge. When this happens child victims can imagine that some day the activity will be over, and they can make a fresh start. Many children, especially adolescent boys, vehemently deny their involvement with a pedophile. But there is no denying or hiding from a sexually explicit photograph or videotape. The child in a photograph or videotape is young forever, and the material can be used over and over again for years. Some children have even committed crimes in attempts to retrieve or destroy the permanent records of their molestation. The fact that none of these points can be argued about simulated child pornography greatly weakens the jury and sentencing appeal of cases prosecuted under that portion of the 1996 CPPA.

## Child Erotica ("Pedophile Paraphernalia")

In addition to theme pornography, preferential sex offenders are also highly likely to collect other paraphernalia related to their sexual interests. Focusing on child molesters, in the early 1980s I started calling this other material "child erotica." In *Child Molesters: A Behavioral Analysis* (Lanning, 1986), I defined it as "any material, relating to children, that serves a sexual purpose for a given individual." It is a broader, more encompassing, and more subjective term than child pornography. It includes things such as fantasy writings, letters, diaries, books, sexual aids,

souvenirs, toys, costumes, drawings, and nonsexually explicit visual images. Such child erotica might also be referred to as "pedophile paraphernalia." This type of material is usually not illegal to possess or distribute.

Because of the diversity of material that could be considered "child erotica," there was no way to develop a comprehensive itemization; therefore, I divided it into categories defined by its nature or type. These categories are published material, unpublished material, pictures, souvenirs and trophies, and miscellaneous. (*See* Lanning, 1992a.) Later my partner of many years, former FBI Special Agent Roy Hazelwood, applied the same concept to sexual sadists (also preferential sex offenders) and called this type of material "collateral evidence." Hazelwood, however, divided it by its purpose or use such as educational, introspective, and intelligence. Hazelwood's term was probably better because, for many professionals, the term "erotica" implies only a sexual use for the material. Many investigators had begun using the term "child erotica" to refer only to visual images of naked children that were not considered pornography. These two different approaches were eventually reconciled in a book chapter by Hazelwood and Lanning titled, "Collateral Materials in Sexual Crimes" (Hazelwood & Lanning, 2001).

For investigative purposes child erotica or collateral evidence can be divided into the categories noted below.

**Published Material Relating to Children**
Examples of this include books, magazines, articles, or videotapes dealing typically with any of the areas noted below.
- child development
- sex education
- child photography
- sexual abuse of children
- incest
- child prostitution
- missing children
- investigative techniques
- legal aspects
- access to children
- sexual disorders
- pedophilia
- man-boy love
- personal ads
- detective magazines
- "men's" magazines
- nudism
- erotic novels
- catalogs/brochures
- Internet

Listings of foreign sex tours, guides to nude beaches, and material on sponsoring orphans or needy children provide them with information about access to

children. Detective magazines saved by pedophiles usually contain stories about crimes against children. The "men's" magazines collected may have articles about sexual victimization of children. The use of adult pornography to lower inhibitions is discussed elsewhere in this publication. Theme adult pornography may help to prove the offender's interest in similar paraphilic behavior involving children. Although the possession of information on missing children should be carefully investigated to determine possible involvement in abduction, most pedophiles collect this material to help rationalize their behavior as child "lovers," not abductors. Personal ads include those in "swinger" magazines, video magazines, newspapers, and on the Internet. These ads may mention "family fun," "family activity," "European material," "youth training," "unusual and bizarre," "better life," and "barely legal." Sites on the Internet are somewhat less likely to use this "code" language. Erotic novels may contain stories about sex with children but without sexually explicit photographs. They may contain sketches or drawings. Materials concerning current or proposed laws dealing with sex abuse; arrested, convicted, or acquitted child molesters; or investigative techniques used by law enforcement are common.

**Unpublished Material Relating to Children**

Examples include items such as
- personal letters
- audiotapes
- diaries
- fantasy writings
- manuscripts
- financial records
- ledgers
- telephone and address books
- pedophile manuals
- newsletters and bulletins
- directories
- adult pornography
- computer chat
- electronic mail (E-mail)

Any or all of this material could be on a computer or floppy disk. Much of it can now be obtained on the Internet. Directories usually contain information on where to locate children. Pedophile support groups, such as the North American Man/Boy Love Association (NAMBLA) and other similar support groups, distribute newsletters and bulletins. Ledgers and financial records might include canceled checks used to pay victims or purchase erotica or pornography and details of credit-card transactions. Manuscripts are writings of the offender in formats suitable for real or imagined publication. Logs of computer chat and E-mail can be especially valuable to investigators. Because it may help to prove the offender's paraphilic interests involving children, theme adult pornography should be considered as possible collateral evidence. Any of this material could be encoded to make evaluation more difficult. Codes could range from simple substitution and invented symbols to more complicated encryption.

**Pictures, Photographs, and Videotapes of Children**
Examples include children found in
- photography, art, or sex-education books
- photography albums, displays, collages
- candid shots
- photocopies of photographs or pictures
- drawings and tracings
- posters and paintings
- advertisements
- children's television programs or videos
- cut-and-paste pictures
- computer-manipulated images
- digitally encoded images on computer or compact disks, read-only memory (CD-ROMs)

Cut-and-paste involves creating new pictures by cutting and pasting parts of old ones. This can be done more easily with a computer and the right software. Seized videotapes should always be viewed or scanned in their entirety because a variety of material, including hard-core child pornography, could be on any one tape. Some pedophiles cut out pictures of children from magazines and put them in albums as if they were photographs. Such visual images of children can be obtained on the Internet and stored on hard drives, floppy disks, CD-ROMs, or digital video discs (DVDs).

**Souvenirs and Trophies**
Examples may include the mementos of children such as
- photographs of "victims"
- articles of clothing
- jewelry and personal items
- audio- and videotapes and computer files
- letters and notes
- charts and records

This material all relates to real or fantasy "victims." Photographs of "victims" collected by pedophiles are often labeled or marked. Charts and records might include astrology, growth, or biorhythm charts. Audiotapes, letters, and notes collected for souvenir purposes are usually from past child victims and discuss what the two did together and how much the victims like the offender. These communications can now be made and stored on a computer. Personal items could even include victims' fingernails, hair, or underwear.

**Miscellaneous**
This category can include items used in seducing children such as
- computers and peripheral equipment
- sexual aids
- toys, games, and dolls
- costumes

- child- or youth-oriented decorations
- video, film, and digital photography equipment
- alcohol and drugs

Costumes include those worn by the offender and children. Toys, games, drugs, and alcohol can all be used as part of the seduction process to lower inhibitions. Dolls of varying sizes and types can also be used for simulated and autoerotic sexual activity. The photography equipment may be hidden in such a way as to surreptitiously record children performing acts such as going to the bathroom or undressing. Computers constitute a potential gold mine of evidence and will be discussed in more detail in the chapter titled "Use of Computers by Sex Offenders" beginning on page 89.

## Motivation for Collection

It is difficult to know with certainty why preferential sex offenders collect theme pornography and related paraphernalia. There may be as many reasons as there are offenders. Collecting this material may help them satisfy, deal with, or reinforce their **compulsive**, persistent sexual fantasies. Some child erotica is collected as a substitute for preferred but unavailable or illegal child pornography.

Collecting may also fulfill needs for **validation**. Many preferential sex offenders collect academic and scientific books and articles on the nature of their paraphilic preferences in an effort to understand and justify their own behavior. For the same reason pedophiles often collect and distribute articles and manuals written by pedophiles in which they attempt to justify and rationalize their behavior. In this material pedophiles share techniques for finding and seducing children and avoiding or dealing with the criminal-justice system. Preferential sex offenders get **passive** validation from the books and articles they read and collect.

Many preferential sex offenders swap pornographic images the way boys swap baseball cards. As they add to their collections they get strong reinforcement from each other for their behavior. The collecting and trading process becomes a common bond. Preferential sex offenders get **active** validation from other offenders, some victims, and occasionally from undercover law-enforcement officers operating "sting" operations. The Internet makes getting active validation easier than ever before. Fear of discovery or identification causes some offenders to settle only for passive validation.

The need for **validation** may also partially explain why some preferential sex offenders compulsively and systematically save the collected material. It is almost as though each hour spent on the Internet and each communication and image is evidence of the value and legitimacy of their behavior. For example one offender sends another offender a letter or E-mail enclosing photographs and describing his sexual activities with children. At the letter's or E-mail's conclusion he asks the recipient to destroy the letter or E-mail because it could be damaging evidence against him. Six months later law enforcement finds the letter or E-mail—carefully filed as part of the offender's organized collection. Offenders' need for validation is the foundation on which proactive investigative techniques (*e.g.*, stings, undercover operations) are built, and it is also the primary reason they work so often. In a letter or during Internet correspondence an offender states

that he suspects the recipient is an undercover law-enforcement officer and asks for assurances that the recipient is not. The recipient who is in fact an undercover officer sends a reply assuring the offender that he is not. The offender accepts his word and then proceeds to send child pornography and make incriminating statements. Although their brains may tell them not to send child pornography or reveal details of past or planned criminal acts to someone they met online, their need for validation often compels them to do so. They believe what they need to believe.

Some of the theme pornography and erotica collected by preferential sex offenders is saved as a souvenir or trophy of the relationships with victims. All child victims will grow up and become sexually unattractive to the pedophile. In a photograph, however, a 9-year-old child stays young forever. This is one reason why many pedophiles date and label their pictures and videotapes of children. Images and personal items become trophies and souvenirs of their relationships—real or fantasized.

The offenders' needs to validate their behavior and have souvenirs of their relationships are the motivations most overlooked by investigators when evaluating the significance of the pornography and erotica collections of pedophiles and other preferential sex offenders.

## Use of Collection

Although the reasons preferential sex offenders collect pornography and erotica are conjecture, we can be more certain as to how this material is used. Study and law-enforcement investigations have identified certain criminal uses of the material by pedophiles.

Child pornography and erotica are used for the **sexual arousal** and gratification of pedophiles. They use child pornography the same way other people use adult pornography—to feed sexual fantasies. Some pedophiles only collect and fantasize about the material without acting out the fantasies, but for others the arousal and fantasy fueled by the pornography is only a prelude to actual sexual activity with children.

A second use of child pornography and erotica is to **lower children's inhibitions**. A child who is reluctant to engage in sexual activity with an adult or pose for sexually explicit photographs can sometimes be convinced by viewing other children having "fun" participating in the activity. Peer pressure can have a tremendous effect on children. If other children are involved, the child might be led to believe that the activity is acceptable. When the pornography is used to lower inhibitions, the children portrayed will usually appear to be having a good time.

Books on human sexuality, sex education, and sex manuals are also used to lower inhibitions. Children accept what they see in books, and many pedophiles have used sex education books to prove to children that such sexual behavior is acceptable. Adult pornography is also used, particularly with adolescent boy victims, to arouse them or lower inhibitions.

A third major use of child pornography collections is **blackmail**. If a pedophile already has a relationship with a child, seducing the child into sexual activity is only part of the plan. The pedophile must also ensure that the child keep the secret. Children are often most afraid of pictures being shown to their

friends. Pedophiles use many techniques to blackmail; one of them is through photographs taken of the child. If the child threatens to tell his or her parents or the authorities, the existence of sexually explicit photographs can be an effective silencer.

A fourth use of child pornography and erotica is as a **medium of exchange**. Some pedophiles exchange images of children for other images or access to telephone numbers of other children. The quality and theme of the material determine its value as an exchange medium. Rather than paying cash for access to a child, the pedophile may exchange a small part, usually duplicates, of his collection. Digital images on a computer make the production of duplicates, equal in quality to the original, easier than ever. The younger the child and more bizarre the acts, the greater the value of the pornography.

A fifth use of the collected material is **profit**. Some people involved in the sale and distribution of child pornography are not pedophiles; they are profiteers. In contrast most pedophiles seem to collect child erotica and pornography for reasons other than profit. Some pedophiles may begin nonprofit trading, which they pursue until they accumulate certain amounts or types of images, which are then sold to distributors for reproduction in commercial child-pornography magazines or made available on the Internet for downloading. Others combine their pedophilic interests with their profit motive. Some collectors have their own photographic reproduction equipment. Thus the image of a child taken with or without parental knowledge by a neighborhood pedophile in any community in the United States can wind up in a commercial child-pornography magazine or on the Internet with worldwide distribution.

## Characteristics of Collection

**Important**

The preferential sex offender's collection is usually one of the most important things in his life. He is willing to spend considerable time and money on it. Most pedophiles make no profit from their collections. After release from prison many pedophiles attempt to get their collections back. State and federal laws banning its mere possession will most likely prevent the return of the child pornography. But unless denial is made a condition of treatment, probation, or parole, the child erotica may have to be returned.

**Constant**

No matter how much the preferential sex offender has, he never has enough. He rarely throws anything away. If law enforcement has evidence that an offender had a collection 5 or 10 years ago, chances are he still has the collection now—only it is larger. This is a significant characteristic to consider when evaluating the staleness of information used to obtain a search warrant.

**Organized**

The preferential sex offender usually maintains detailed, neat, orderly records. There are exceptions, but the collections of many offenders are carefully organized and maintained. As will be discussed, many of these offenders now use computers for this purpose.

**Permanent**

The preferential sex offender will try to find a way to keep his collection. He might move, hide, or give his collection to another offender if he believes law enforcement is investigating him. Although he might, he is not likely to destroy the collection because it is his life's work. In some cases he might even prefer that law enforcement seize and keep it intact in an evidence room where he might retrieve at least some of it when released from prison. One offender is known to have willed his collection to a fellow pedophile. Another offender, knowing he would never get his child pornography back, still requested to go to the prosecutor's office to put his magazines in covers and dividers so they would not be damaged.

**Concealed**

Because of the hidden or illegal nature of the preferential sex offender's activity, he is concerned about the security of his collection. But this must always be weighed against his access to the collection. It does him no good if he cannot get to it.

Where offenders hide their collections often depends on their living arrangements. If living alone or with someone aware of his illegal preferences, the collection will be less well concealed. It might be in a trunk, box, cabinet, bookcase, out in the open, or on a computer. The pornography might be better hidden than the erotica. If living with family members or others not aware of his activity, it will be better concealed. The collection might be found behind a false panel, in the ductwork, under insulation, or on a password-protected computer. The collection is usually in the pedophile's home, but it could be in an automobile or a camper, at his place of business, in a safety deposit box, or in a rented storage locker. The most difficult location to find is a secret place in a remote rural area. The investigator should search any area that is under the control of the offender. Again, computer technology has changed much of this. Computers and various types of disks make it possible to hide illegal and incriminating material in "plain sight."

**Shared**

The preferential sex offender frequently has a need or desire to show and tell others about his collection. He is seeking validation for all his efforts. The investigator can use this need to his or her advantage by showing interest in the collection during any interview of an offender. The offender might appreciate the opportunity to brag about how much time, effort, and skill went into his collection. This need can also be exploited during proactive or undercover investigations.

## The Role of Law Enforcement