Case 6:08-cr-00061-LED-JDL  Document 54-10  Filed 10/27/2009  Page 1 of 19

# EXHIBIT 9

*School of Law*

*Pace Law Faculty Publications*

Pace University                                                                 *Year* 2008

# Child Pornography's Forgotten Victims

Audrey Rogers
Pace University School of Law, arogers@law.pace.edu

This paper is posted at DigitalCommons@Pace.
http://digitalcommons.pace.edu/lawfaculty/541

# Child Pornography's Forgotten Victims

## Audrey Rogers*

State legislatures and Congress have enacted many laws to protect children from becoming victims of sex crimes. Yet, children live in an increasingly dangerous world attributable in part to the explosive growth of the Internet. In particular, the Internet has dramatically increased access to child pornography. With just a couple of clicks of the mouse and a few strokes of the keyboard, a person can find any type of picture, including graphic images of children being tortured and raped. Nevertheless, some judges, scholars and members of the public at large treat possession of child pornography as a victimless crime. This paper examines this phenomenon.

The Supreme Court has carved out child pornography from First Amendment protections because children are harmed in all aspects of its production, dissemination and possession. While there is little serious debate over the harm producers and distributors inflict on children, this view does not always extend to possessors of images. For example, following the demise of mandatory sentencing under the federal guidelines in *United States v. Booker*,[1] a number of United States federal district court judges have deviated substantially from the guidelines in sentencing possessors of child pornography on the ground that it is a victimless crime.[2] One federal circuit court treats the children depicted in pornographic images as merely secondary

---

* Associate Professor of Law, Pace Law School.
1. 543 U.S. 220 (2005).
2. 18 U.S.C. § 2252(b)(2) (1999) provides that a person who possesses or attempts to possess child pornography "shall be fined or . . . imprisoned not more than 10 years, or both . . . ." In contrast, the statute provides for minimum sentences of no less than five years for transporting, receiving, distributing or possessing with the intent to sell child pornography. 18 U.S.C. § 2252(b)(1) (1999). The producer of child pornography is subject to a statutory minimum imprisonment of fifteen years. 18 U.S.C. § 2251(e) (1999). The United States Sentencing Guidelines provide a framework for calculating the appropriate sentence within the statutory range. *See, e.g.*, U.S. SENTENCING GUIDELINES MANUAL § 2G2.2 (2007).

847

victims, and many states impose lenient sentences on possessors of child pornography.

The goal of this paper is to demonstrate that possession of child pornography is not a victimless crime. It will illustrate the problem and explain the harm suffered by its victims.[3] It will then trace factors that may have contributed to the perception that possession of child pornography is a victimless offense. The first factor is the dual nature of the child pornography laws that addresses both actual and future harm. When this duality is applied to possessors, their link to actual harm appears attenuated because the possessor is not involved in the acts of sexual abuse inherent in producing the images. The second factor is that a number of scholars have criticized generally possession offenses as a tool for preemptive prosecutions, but they have not exempted child pornography from their condemnation. Finally, technology itself is a cause. The growth of the Internet and the ability to find images from the comfort of one's home further weakens the connection between the victim and the viewer; this distance is exacerbated by a general sense that nothing is real in cyberspace.

## I.  Evidence of the Problem

Congress and all states outlaw the possession of child pornography. Yet, judicial treatment of those convicted of possession of child pornography reveals a perception by some courts that it is a victimless crime, as the following examples illustrate. Stefan Goff, a fifty-four-year-old elementary school teacher appeared to be "a respectable, middle-aged man leading a decent, law abiding life."[4] However, his computer told a different story. It held 360 different pornographic images of children. Some showed an adult performing oral sex on a prepubescent girl, and others showed children being raped and molested. Yet, his attorney claimed that this was a victimless crime that did not warrant serious punishment.[5] The district

---

3. It is this perception, not the specific sentence the courts imposed, that is problematic. Thus, this paper's goal is not to recommend longer sentences; rather, it is to ensure that sentences accurately reflect that those who possess child pornography hurt real victims.
4. United States v. Goff, 501 F.3d 250, 251 (3d Cir. 2007).
5. *Id.* at 253.

court agreed, sentencing Goff to four months' imprisonment, far less than the Sentencing Guidelines' suggested minimum sentence of twenty-one months.[6] In rejecting the prosecutor's position that possession of child pornography was a serious offense, the district court, during sentencing proceedings, stated: "'[It's] truly a psychological crime. It is not a taking crime. . . . Almost one might say a psychiatric crime.'"[7]

Bruce Pugh pled guilty to possessing sixty-eight images of child pornography, including images of an infant being raped by an adult and an eight-year old girl performing oral sex on an adult male.[8] The district court ruled that the defendant's possession was "passive and incidental" to his goal of meeting people online and sentenced him to five years probation.[9] Similarly, the defendant in *United States v. Goldberg*[10] received a one-day sentence for possessing images of two- and three-year olds being raped. In support of this sentence, the district court stated that the "defendant was not a real deviant because he had committed the crime out of 'boredom and stupidity.'"[11]

Even federal circuit courts are not exempt from the view that possession is a victimless offense. A pre-*Booker* split developed among the circuits concerning whether, for the purposes of the Federal Sentencing Guidelines, they should group as one the multiple counts of possession of child pornography.[12] If they are not grouped, multiple counts of possession would increase the severity of the sentence. The Federal Sentencing Guidelines state that multiple "counts involving substantially the same harm shall be grouped together into a single group."[13] Whether the counts involve "substantially the same harm" de-

---

6. *Id.* Goff was also sentenced to three years' supervised release and a $10,000 fine.

7. *Id.*

8. United States v. Pugh, 515 F.3d 1179 (11th Cir. 2008).

9. *Id.* at 1187.

10. 491 F.3d 668 (7th Cir. 2007).

11. *Id.* at 671. *See also* United States v. Polito, 2 No. 06-30133, 2007 WL 313463 (5th Cir. Jan. 31, 2007) (one year house arrest and five years' probation); United States v. Peterson, No. 03-2078, 2003 WL 22952189 (8th Cir. Dec. 15, 2003) (six months' house arrest and three years' probation).

12. *Compare* United States v. Toler, 901 F.2d 399 (4th Cir. 1990) *with* United States v. Sherman, 268 F.3d 539 (7th Cir. 2001), United States v. Norris, 159 F.3d 926 (5th Cir. 1998), *and* United States v. Boos, 127 F.3d 1207 (9th Cir. 1997).

13. U.S. SENTENCING GUIDELINES MANUAL §3D1.2(d) (2007).

pends on whether they involve the same primary victim.[14] The Commentary to the Guidelines notes that in most cases there is an identifiable victim—the "one person who is directly and most seriously affected by the offense."[15] It further provides that if the victim cannot be identified, the primary victim for the purposes of grouping is "society in general." The Commentary specifies that crimes where society is the victim are "victimless" crimes.[16]

The Fourth Circuit, in *United States v. Toler*,[17] held that the primary victim in child pornography offenses is society in general, not the specific child depicted.[18] It placed the offense in the category of victimless crimes by reasoning that trafficking in child pornography harms the "moral fabric of society at large."[19] Thus, the *Toler* court focused on the future harm that could be inflicted on children if the market for child pornography is not dried up, rather than on the particular child being depicted.[20]

Post-*Toler* appellate courts have rejected its reasoning by focusing on the actual harm inflicted on the children portrayed in pornographic images. As the Ninth Circuit stated, the creation and distribution of child pornography creates a "permanent record of the children's participation and the harm to the child is exacerbated by their circulation."[21] Child pornography is therefore different than crimes such as drug and immigration offenses, where the harm is spread evenly throughout society.[22] According to all the circuits that addressed the issue (except the Fourth Circuit), this direct victimization theory rationale ap-

---

14. *Id.* § 3D1.2(b).
15. *Id.* cmt. 2.
16. *Id.*
17. 901 F.2d 399 (4th Cir. 1990).
18. In *Toler*, the defendant was convicted of violating 18 U.S.C. § 2423 (2006) (interstate transportation of a minor with the intent to engage in prohibited sexual conduct) and 18 U.S.C. § 2252(a)(1) (2006) (interstate transportation of child pornography) after he traveled across state lines with his twelve-year-old stepdaughter and transported pornographic photos of her. The Fourth Circuit held that the lower court properly refused to group the offenses because the child was the victim of the section 2423 offense, but society was the victim of the section 2251 offense. *Toler*, 901 F.2d at 402-03.
19. *Id.* at 403.
20. *Id.*
21. United States v. Boos, 127 F.3d 1207 (9th Cir. 1997).
22. *Id.* at 1211.

2008] *CHILD PORNOGRAPHY'S FORGOTTEN VICTIMS* 851

plies equally to those who possess, receive, transport and distribute child pornography.[23] While the Sentencing Guidelines are no longer mandatory, the grouping issue is still significant because of the post-*Booker* rulings that require federal courts to begin their calculation of a defendant's sentence according to the guidelines and then explain how deviations are reasonable.[24]

Similar to the circuit courts' rejection of *Toler*, appellate courts vacated Goff, Pugh, and Goldberg's sentences in opinions that chastised the lower court judges for failing to properly take the seriousness of the offenses into account.[25] For example, the Third Circuit in *Goff* stressed that the defendant's activities in front of his computer screen were not "solitary" activities in an online fantasy world.[26] Noting that "children are exploited, raped and molested for the prurient pleasure of Goff and others who support suppliers of child pornography," it found that this was not a theoretical crime with no victims.[27]

In light of these reversals, we could ask whether the illustrated cases are mere aberrations. While it may be easy to dismiss them as such, there are other indications that they reflect a deeper societal view that possession is a victimless crime. In fact, the defendants convicted of possessing child pornography in state courts appeared before similarly sympathetic judges. For example, a Connecticut Superior Court judge rejected an agreement worked out by defense attorneys and prosecutors that called for four years' imprisonment for the defendant's possession of 141 images and two videotapes of toddlers and prepubescent children being abused. Instead, the judge granted defendant a suspended sentence.[28] This perception that posses-

---

23. *See, e.g.*, United States v. Sherman, 268 F.3d 539 (7th Cir. 2001); *see also* United States v. Norris, 159 F.3d 926 (5th Cir. 1998); *Boos*, 127 F.3d 1207.

24. Gall v. United States, 128 S. Ct. 586 (2007); Rita v. United States, 127 S. Ct. 2456 (2007).

25. *See* United States v. Pugh, 515 F.3d 1179 (11th Cir. 2008); United States v. Goff, 501 F.3d 250 (3d Cir. 2007); United States v. Goldberg, 491 F.3d 668 (7th Cir. 2007).

26. *Goff*, 501 F.3d at 258.

27. *Id.* at 259.

28. *See* Associated Press, *Connecticut Judge Lets Child Porn Defendant Walk, No Jail Time*, FOXNEWS.COM, Oct. 10, 2006, http://www.foxnews.com/story/0,2933,219159,00.html. *See also* Dan Herberk, *Child Porn: State Goes Easy on Child Porn Offenders*, COMPUTER CRIME RESEARCH CTR., October 19, 2005, http://www.crime-

sion is a victimless crime is not limited to the United States. According to a 2006 survey of 184 Interpol member countries, 136 of these countries did not even criminalize the possession of child pornography.[29]

We cannot rely on the appellate courts to fix inappropriate sentences since their powers have been reined in by the recent Supreme Court decision in *Gall v. United States*,[30] which mandates that appellate courts apply a highly deferential abuse of discretion standard in reviewing federal sentences. The Supreme Court has already granted certiorari and vacated appellate court reversals of insubstantial possession sentences with instructions to review them in light of *Gall*.[31] Thus, now, more than ever, it is essential that we dispel the perception that possession of child pornography is a victimless crime.

## II. The Damage Caused by Child Pornography

Even with their eventual reversals, cases such as *Goff* and *Pugh* exemplify the continuing misperception that possession of child pornography is a victimless crime. If federal and state court judges hold these misperceptions, undoubtedly others are similarly misguided. In fact, statistics show the real damage caused by child pornography. A 2005 study of child pornography possessors, conducted by the National Center for Missing and Exploited Children, found that more than eighty percent of arrested child pornography possessors had images of prepubescent children, and eighty percent had images of children being sexually penetrated.[32] Twenty percent of the defend-

---

research.org/analytics/child-porn-offenders; Ed Hynes, *Man Gets Two Months in Jail for 44 Counts of Child Pornography*, in A View From Riverside Drive, OBSCENITYCRIMES.ORG, June, 2008, http://www.obscenitycrimes.org/news/vfrd0606.cfm.

29. *See* INT'L CTR. FOR MISSING & EXPLOITED CHILDREN, CHILD PORNOGRAPHY: MODEL LEGISLATION & GLOBAL REVIEW (2006), *available at* http://www.missingkids.com/en_US/documents/CP_Legislation_Report.pdf.

30. 128 S. Ct. 586 (2007).

31. *See, e.g.*, United States v. Duhon, 440 F.3d 711 (5th Cir. 2006), *vacated*, 128 S. Ct. 853 (2008) (five months' probation for images including rape of an 8-year old); United States v. Grinsberg, 470 F.3d 758 (8th Cir. 2006), *vacated*, 128 S. Ct. 859 (2008) (366 day sentence for 300 images, including prepubescent children).

32. Janis Wolak et al., *Child-Pornography Possessors Arrested in Internet-Related Crimes: Findings from the National Juvenile Online Victimization Study*, NAT'L CTR. FOR MISSING AND EXPLOITED CHILDREN, 2005, *available at* http://www.missingkids.com/en_US/publications/NC144.pdf.

2008] *CHILD PORNOGRAPHY'S FORGOTTEN VICTIMS* 853

ants had images of children enduring sadistic sex and bondage,[33] and thirty-nine percent had videos of children being abused.[34] Thus, the vast majority of possessors of child pornography are viewing hard-core child pornography. Moreover, if eighty percent of the images are of prepubescent children, there can be few legitimate claims that a possessor was unaware he was viewing a child.[35]

The National Center for Missing and Exploited Children has explained the effects of child pornography on its victims. Because children are sexually abused in the creation of the pornographic images, they can incur physical injuries such as genital bruising, cuts, lacerations and sexually transmitted diseases.[36] The children may suffer psychological injuries including depression, anger, withdrawal, low self-esteem and feelings of worthlessness. These feelings may be expressed in flash-backs, nightmares and other indicia of post-traumatic stress syndrome.[37] They often engage in self-destructive behavior including substance abuse, prostitution, depression and suicide.[38]

When the pornographic images are viewed by others, the children depicted are victimized once again. The mere knowledge that images exist and are being circulated causes shame, humiliation and powerlessness.[39] This victimization lasts forever since the pictures can resurface at any time,[40] and this circulation has grown exponentially because of the Internet.[41] As

---

33. *Id.* at vii.
34. *Id.*
35. In United States v. X-citement Video, Inc., 513 U.S. 64 (1994), the Supreme Court ruled that section 2252 requires knowledge that pornographic images portrayed minors. This case involved a 17-year old who was a pornography star. It led Congress to impose stringent record-keeping and labeling requirements on producers of adult pornography to ensure that minors are not used in their productions.
36. Eva J. Klain, et al., *Child Pornography: The Criminal-Justice-System-Response*, NAT'L CTR. FOR MISSING & EXPLOITED CHILDREN, March, 2001, at 10, *available at* http://www.missingkids.com/en_US/publications/NC81.pdf.
37. *Id.*
38. *Id.* at 1-11.
39. *See* Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2001).
40. Wolak et al., *supra* note 32, at 11.
41. *See Hearing on Internet Child Pornography Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 107th Cong. 6 (2002) (testimony of Michael J. Heimbach, Unit Chief, Crimes Against

one expert explained: "The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child."[42] At a more fundamental level, child pornography victims' rights of privacy and human dignity are violated when their images are circulated and viewed by others.[43] The possessor thus has real victims and inflicts actual harm upon them by his conduct.

Moreover, there is growing evidence linking the possession of child pornography with acts of sexual violence against children. A recent study by psychologists at the Federal Bureau of Prisons found that eighty-five percent of individuals charged with possessing child pornography admitted that they also sexually abused children.[44] The study's results were so shocking that the Bureau of Prisons ordered the paper containing the results of the survey be withdrawn from publication pending further investigation. Earlier studies placed the percentage of child pornography possessors who had also molested or attempted to molest children at sixty-five percent.[45] Thus, not only do the images themselves victimize the children they portray, but the linkage between possession and molestation may be even greater than previously thought.

Even with the real harm inflicted by child pornography, the outrage it triggers in most arenas has failed to reach adequately into the ring of possessors. The next section traces the development of child pornography laws to help explain why this perception may have developed.

---

Children Unit, Federal Bureau of Investigation), *available at* http://www.fbi.gov/congress/congress02/heimbach050102.htm; Janis Wolak et al., *Internet Sex Crimes Against Minors: The Response of Law Enforcement*, NAT'L CTR. FOR MISSING & EXPLOITED CHILDREN, Nov., 2003, *available at* http:www.ncmec.org/en_US/publications/NC132.pdf.

42. T. Christopher Donnelly, *Protection of Children from Use in Pornography: Toward Constitutional and Enforceable Legislation*, 12 U. MICH. J.L. REFORM 295, 301 (1979) (interview with child psychiatrist) (quoted in United States v. Pugh, 515 F.3d 1179, 1196 n.11 (11th Cir. 2008)).

43. The issue of a child's right not to be depicted in pornography demands an in-depth treatment that I will address in a future article.

44. The study was conducted at the Federal Correctional Institution in Butner, N.C. of 155 male inmates serving sentences for possession or distribution of child pornography. Benedict Carey & Julian Sher, *Debate on Child Pornography's Link to Molesting*, N.Y. TIMES, July 19, 2007, available at http://www.nytimes.com/2007/07/19/us/19sex.html?_r=2&oref=slogin&oref=slogin.

45. *See* Wolak et al., *supra* note 32.

### III. Reasons for the Faulty Perception That Possession of Child Pornography is a Victimless Crime

#### A. *The Dual Rationale of Child Pornography Laws*

A trilogy[46] of Supreme Court cases established the two rationales of child pornography laws: (1) to punish for the harm inflicted by the production, distribution and possession of child pornography and (2) to protect against future harm that may occur if child pornography is not stamped out. Lower courts that fail to recognize adequately the actual harm aspect of the laws foster the view that possession is a victimless crime. This section provides a brief history of child pornography laws to understand their dual rationale.

Following an increased public awareness of the scourge of child pornography in the late 1970s, Congress passed the Protecting of Children Against Sexual Exploitation Act of 1977.[47] The Act barred the use of a minor to engage in sexually explicit conduct for the purpose of producing a visual image of such conduct with the knowledge that that it would be transported in interstate or foreign commerce.[48] An important limitation of this early federal legislation was that it applied only to child pornography that was obscene and used for commercial purposes.

During this same time period, states were also enacting their own bans on child pornography.[49] In contrast to early federal legislation, some states outlawed the production and distribution of child pornography without requiring that it be obscene. New York was one such state and the challenge to its statute led to the 1982 landmark ruling in *New York v. Ferber*,[50] where the United States Supreme Court ruled that child pornography was not protected by the First Amendment even if it

---

46. Ashcroft v. The Free Speech Coalition, 535 U.S. 234 (2002); Osbourne v. Ohio, 495 U.S. 103 (1989); New York v. Ferber, 458 U.S. 747 (1982). On May 19, 2008, the Supreme Court decided that speech that pandered or solicited child pornography fell outside First Amendment protection because of the potential harm it created. United States v. Williams, 128 S.Ct. 1830 (2008).

47. 18 U.S.C. §§ 2251-2253 (1978). *See generally* ATT'Y GEN. COMM. ON PORNOGRAPHY, FINAL REP., 408-415 (1986); Klain, *supra* note 36, at 12.

48. 18 U.S.C. §§ 2251-2253 (1978).

49. *See* Amy Adler, *Inverting the First Amendment*, 149 U. PA. L. REV. 921, 928-29 (2001).

50. 458 U.S. 747 (1982).

was not obscene. In carving out a new category of unprotected speech, the Supreme Court reasoned that the "use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child."[51] It stressed that child pornography was "intrinsically related to the sexual abuse of children in at least two ways." First, the materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.[52] Second, the distribution network for child pornography needed to be closed to control the production of child pornography.[53]

Thus, the *Ferber* Court highlighted both the actual and threatened harm to children inherent in the production and distribution of child pornography as necessitating its criminalization.[54] Following *Ferber*, in 1984 Congress amended the original federal child pornography legislation to remove the obscenity and commercial purpose requirements.[55] Some states were enacting legislation that banned possessing and viewing child pornography even though the Supreme Court had ruled in *Stanley v. Georgia* that possession of obscene materials was protected by the First Amendment.[56]

---

51. *Id.* at 758.
52. One could say that the actual harm is inflicted in two ways: the abuse to the victim in its creation and the injury to the victim by publication of the images.
53. *Ferber*, 458 U.S. at 759.
54. In addition to the reasons stated above, the Court added three more reasons for excluding child pornography from First Amendment protection. As part of the need to stop the child porn industry, the *Ferber* Court reasoned further that the First Amendment does not protect speech that is "an integral part of criminal activity," as is "the advertising and selling of child pornography." *Id.* at 761. In addition, it noted that "any material of value that would be prohibited under the category of child pornography is "exceedingly modest, if not de minimis." *Id.* at 762-63. Finally, it stated that precedent allows for a content-based restriction on First Amendment protections. *Id.* at 763-64. *See* Adler, *supra* note 49.
55. Child Protection Act of 1984, 18 U.S.C. §§ 2251-2253 (1984). The production of child pornography was so clandestine that between 1978 and 1984 only one person was convicted for producing child pornography under the 1977 Act. *See* ATT'Y GEN. COMM. ON PORNOGRAPHY, FINAL REP., *supra* note 47, at 604-05. Thus, the need to stop the flow of child pornography became the better route for prosecutors.
56. *See* Stanley v. Georgia, 394 U.S. 557 (1969). The Stanley Court reasoned that prohibiting the possession of obscene materials in one's home was inimical to the very premise of the First Amendment's protection against state interference with what a person thinks, reads or views in the privacy of his home. It specifically rejected the state's claim that it had a legitimate interest in banning the possession of obscene material because it may lead to sexual violence. The Stanley

Constitutional challenges to possession statutes provided the next opportunity for the Supreme Court to reaffirm the dual rationale of child pornography legislation. In *Osborne v. Ohio*,[57] the Court ruled that the mere possession or viewing of child pornography victimized children and could be prohibited. In distinguishing *Stanley*, the *Osborne* Court stated that the ban on possessing or viewing child pornography was enacted "to protect the victims of child pornography; it hopes to destroy a market for the exploitative use of children."[58] This one sentence with its two independent clauses exemplifies the dual rationale of child pornography laws.

On the actual harm to children, the *Osborne* Court reiterated *Ferber's* rationale by stating that "materials produced by child pornographers permanently record the victim's abuse."[59] It noted further that the "pornography's continued existence causes the child victims continuing harm by haunting the children in years to come."[60] On the threatened harm, the *Osborne* Court explained that possessing child pornography is harmful because the possessor might "use child pornography to seduce other children into sexual activity."[61] In addition, banning possession will protect future victims of child pornography by drying up the market for it. The Court noted that since *Ferber*, much of the child pornography market was driven underground, making it much more difficult to attack by punishing only its production and distribution.[62] Thus, *Osborne* recognized the need to ban the possession or viewing of child pornography. Congress shortly followed suit and passed the Child

---

Court stated that not only was there no empirical evidence that supported the State's claim, but that crime prevention is better served by "education and punishment for violations of the law" than by criminalizing anticipatory conduct. *Id.* at 566-67. The Stanley Court also rejected the State's contention that criminalizing possession was needed to support the state's ban on the distribution of obscene materials, reasoning that this need did not justify a ban on what a person read or viewed in his home.

57. 495 U.S. 103 (1989).
58. *Id.* at 109.
59. *Id.* at 111.
60. *Id.*
61. *Id.*
62. *Id.* at 110-11.

Protection Restoration and Penalties Enhancement Act of 1990 that banned the possession of child pornography.[63]

The advent of computer technology and the Internet led to Congressional concerns that existing legislation was out of date. In 1996, Congress passed the Child Pornography Prevention Act that expanded the definition of child pornography to cover computer-generated images.[64] In 2002, the Supreme Court once again focused on the actual and future harm to children in ruling that Congress could not outlaw virtual pornography. In *Ashcroft v. The Free Speech Coalition*,[65] the Court reaffirmed *Ferber's* central premise that "[w]here the images are themselves the product of child sexual abuse, . . . the State can ban them."[66] It elaborated on *Ferber's* rationale that child pornography actually harms children when it is circulated. It explained that "[l]ike a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being."[67] As to the ban on possessing child pornography, the *Ashcroft* Court stressed that its ruling in *Osborne* "anchored its holding in the concern for the participants, those whom it called the 'victims of child pornography.'"[68] Because no child is abused when a person creates, distributes or possesses virtual pornography, the *Ashcroft* Court ruled that it was protected speech under the First Amendment.

As to the future harm aspect of child pornography laws, *Ashcroft* once again reiterated that drying up the market for child pornography and stopping possessors from using the images to groom future victims were compelling state inter-

---

63. 18 U.S.C. § 2252 (1996). The legislation banned the possession of three or more images of child pornography. *Id.* Subsequent legislation banned possessing any images, but created an affirmative defense for those who possessed less than three images and took steps to destroy the images and reported them to the authorities. 18 U.S.C. § 2252A(5)(d) (1996). Unlike the Ohio statute at issue in *Osborne*, the federal legislation did not include an explicit ban on the viewing of child pornography. Courts are increasingly grappling with the significance of the omission. *See* Ty E. Howard, *Don't Cache Out Your Case: Prosecuting Pornography Possession Laws Based on Images Located in Temporary Cache Files*, 19 BERKELEY TECH. L.J. 1227 (2004).

64. 18 U.S.C. § 2252A (1996).

65. 535 U.S. 234 (2002).

66. *Id.* at 249 (citing New York v. Ferber, 458 U.S. 747, 761 n.12 (1982)).

67. *Id.* (citing *Ferber*, 458 U.S. at 759).

68. *Id.* at 250 (quoting Osborne v. Ohio, 495 U.S. 103, 110 (1990)).

2008] *CHILD PORNOGRAPHY'S FORGOTTEN VICTIMS* 859

ests.[69] Nevertheless, the *Ashcroft* Court ruled that the risk that the virtual pornography may be used to seduce a child was too attenuated from actual harm to be punishable.[70] The key distinguishing factor to the *Ashcroft* Court was the lack of an actual victim.

These cases rest on two grounds: actual and threatened harm to children. This dual rationale applies to all aspects of child pornography laws, including bans on possessing child pornography. With the Internet's ability to republish an image of child pornography around the world in seconds, the harm to the children depicted is magnified immensely. The possessor of the image inflicts actual harm when he views the image. He also threatens harm to other children. However, this threatened harm is only part of the rationale for its ban. Thus, there should be no doubt that possession of child pornography is not a victimless crime. Yet, this erroneous perception endures. Another possible explanation for this flawed view may stem from scholarly criticisms of possessory offenses in general. The next section explores this criticism and demonstrates why such criticism should not apply to possession of child pornography.

B. *Scholarly Criticism of Possession Offenses*

Many scholars view possession offenses as anticipatory offenses that punish preemptively for the threat of harm, rather than the infliction of harm.[71] Some see them as an unwarranted and dangerous expansion of the criminal law. They argue that possession offenses are part of a larger war on crime that grants law enforcement overly broad powers to preemptively incapacitate undesirable members of society.[72] One of the

---

69. *Id.* at 249-50 ("While the Government asserts that the images can lead to actual instances of child abuse, the causal link is contingent and indirect. The harm does not necessarily follow from the speech, but depends upon some unquantified potential for subsequent criminal acts.").

70. *Id.* at 250.

71. *See, e.g.*, JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 93 (2001); MARKUS DIRK DUBBER, VICTIMS IN THE WAR ON CRIME: THE USE AND ABUSE OF VICTIMS' RIGHTS (2002) [hereinafter DUBBER, VICITMS IN THE WAR]; GEORGE P. FLETCHER, RETHINKING CRIMINAL LAW 198-202 (1978) [hereinafter FLETCHER, RETHINKING]; Douglas Husak, *The Nature and Justifiability of Nonconsummate Offenses*, 37 ARIZ. L. REV. 151 (1995).

72. *See, e.g.*, DUBBER, VICTIMS IN THE WAR, *supra* note 71; Francisco Munoz-Conde & Luis Chiesa, *The Act Requirements as a Basic Concept of Criminal Law,*

leading critics of possession offenses, Professor Markus Dubber, argues that possession offenses "do the crime war's dirty work" because they are sweeping offenses, easy to detect and easy to prove, with a disproportionate impact on poor, urban minorities.[73] Classifying possession as a status crime, Professor Dubber contends that possession offenses have replaced the now-discredited vagrancy laws for law enforcement to stop, search and incapacitate as a "mass policing tool of choice."[74]

Professor Dubber characterizes possession offenses as victimless because they punish only the threat of harm. For example, he states that gun possession is a victimless crime because having a gun does not harm anyone unless it is used.[75] In fact, according to Professor Dubber, "The only personal victim of a possession offense is the person doing the possessing because he is unable to enjoy the possessed."[76] Other scholars similarly treat possession offenses as victimless.[77]

Whether the criticism of most possession offenses is well-deserved is outside the scope of this paper. The problem is that scholars have not explicitly carved out possession of child pornography from their opprobrium. Professor Dubber includes the possession of obscene materials depicting sexual performances by a child in his recitation[78] of the many possession offenses legislatures have enacted as part of their war on crime.[79] Other scholars have repeated this inclusion.[80] For example,

---

28 CARDOZO L. REV. 2461, 2477 (2007) ("[M]ere possession of a potentially dangerous object is not noxious per se.").

73. Markus Dubber, *Policing Possession: The War on Crime and the End of Criminal Law*, 91 J. CRIM. L. & CRIMINOLOGY 829, 831, 931 (2001) [hereinafter Dubber, *Policing Possession*].

74. Markus Dubber, *Punishment, Morality, and the State: Legitimating Penal Law*, 28 CARDOZO L. REV. 2597, 2605 (2007).

75. Dubber, *Policing Possession*, supra note 73, at 936.

76. *Id.*; DUBBER, VICTIMS IN THE WAR, *supra* note 71, at 32-33.

77. *See supra* notes 71 & 72.

78. *See* N.Y. PENAL LAW § 263.11 (McKinney 2000).

79. Dubber, *Policing Possession*, supra note 73, at 936.

80. JOHN KAPLAN ET AL., CRIMINAL LAW CASES AND MATERIALS 112 (2004). Professor Fletcher criticizes offenses that criminalize possession of obscene materials without distinguishing between those depicting adults and not children. *See* GEORGE P. FLETCHER, RETHINKING CRIMINAL LAW § 3.4 (Oxford Univ. Press 2000) (1978) [hereinafter FLETCHER, RETHINKING]. *See also* Douglas Husak, *Rethinking the Act Requirement*, 28 CARDOZO L. REV. 2437, 2438 (2007) (referencing Professor Dubber's list of N.Y. possession offenses).

2008] *CHILD PORNOGRAPHY'S FORGOTTEN VICTIMS* 861

Professor Douglas Husak reiterates Professor Dubber's list of possession offenses as evidence of the over-criminalization of the law.[81] Yet, Professor Husak identifies an anticipatory offense as one that fails to "cause . . . harm on each and every occasion in which it is performed."[82] Under his definition, possession of child pornography is clearly more than an anticipatory possession offense.[83] Accordingly, possession of child pornography should be explicitly excluded from Professor Husak's criticism.

Professor George Fletcher also expresses concern with possession offenses. In his view, the main problem with possession offenses is overbreadth.[84] He distinguishes between possession offenses that manifest danger to the community and those that do not. In the first category he places drug, weapons and obscenity offenses because there does not appear to be an innocent purpose in having them and thus, the mere fact of having them "raises sinister implications."[85] In the second category he places offenses such as possession of burglary tools that are dangerous only because the state has outlawed them.[86] According to Professor Fletcher, the latter category of *malum prohibitum* offenses are a questionable use of police power, whereas the former may be appropriate.

Yet, Professor Fletcher treats both categories as victimless offenses based upon the notion that they represent only a threat of harm. He states that guns, drugs or obscene materials are "not likely to be used for innocent purposes."[87] However, they are only a threat of future harm. Without expressly carving out possession of child pornography from even these more acceptable possession offenses, the perception remains that it, too, is a

---

81. Husak, *supra* note 71, at 154, 162-63, 179.
82. *Id.* at 158.
83. In contrast, consider drug possession offenses. It may not be a victimless crime because people *may* have been forced to smuggle the drugs that are ultimately possessed. Yet there could be situations where this is not the case, and therefore, under Professor Husak's definition, it is a non-consummate crime. In contrast, inherent in the possession of child pornography is the victimization of the child depicted.
84. GEORGE P. FLETCHER, THE GRAMMAR OF CRIMINAL LAW 295 (2007); FLETCHER, RETHINKING, *supra* note 80, at 198-205.
85. FLETCHER, RETHINKING, *supra* note 80, at 200-05.
86. *Id.*
87. *Id.* at 200.

victimless offense. In fact, even if the child pornography is not used at all beyond merely possessing it, the possessor has harmed the depicted child.

The failure to carve out child pornography from other possession offenses may be intentional because, as discussed previously, possession of child pornography is, in part, an anticipatory offense. This is so since the possessor could use the images to seduce other children by de-sensitizing them, or the images could so inflame the possessor that he goes out and sexually abuses a child. Yet, whether intentional or not, scholars have not focused sufficiently on the ways in which possession of child pornography is a possessory offense that inflicts, not only risks, but actual harm to victims.[88] As previously explained, the possessor causes actual harm because re-publication inflicts shame and humiliation upon the child depicted. This psychological damage can lead to anti-social, destructive and depressive behavior. The circulation over the Internet to innumerable individuals who receive, possess and view the images causes the victims to suffer further in the knowledge that the images are forever in cyberspace, able to resurface at any time.

C. *The Unreal World of Cyberspace*

The explosive growth of the Internet has created confusion and tension between what is real and what is fiction. Because of its anonymity, the Internet allows people to reinvent themselves. They may say they are single on an online dating service when they are in fact married. They may say they are teenagers when they are adults on a social network. They may claim to be one person when they are someone else and engaging in identity theft. They may claim they are merely role-playing when they are engaged in online chats with undercover agents who themselves are posing as children.[89]

---

88. Prof. Husak characterizes most possession offenses as nonconsummate, carving out one example—possession of radioactive material, as a consummate offense because it is harmful regardless of its use. *See* Husak, *supra* note 71, at 169 n.78.

89. This "fantasy" defense has been used successfully at least once to defeat an Internet sting charge. *See* Audrey Rogers, *New Technologies, Old Defenses: Internet Sting Operations and Attempt Liability*, 38 U. RICH. L. REV. 477, 508-09 (2004).

Some of the lies are innocuous, while others are criminal. Yet, all have led to some sense that nothing is real in cyber-space. Thus, as the attorney representing one defendant charged with possessing child pornography asserted: "[I]f the anonymous interaction with a far away internet wasn't possible, [the possession] may never have happened."[90] Some scholars agree, arguing that cyber-space itself is encouraging criminal behavior.[91] In other words, these individuals would not have gone out and sought child pornography, but when they can easily access images from their homes, they are somehow lured into doing so. If this phenomenon is true, it calls for more, not less, vigilance in tracking down and prosecuting possessors of child pornography so that the public is educated about the victims of child pornography and the criminal nature of surfing the Internet.

## IV. Conclusion

Possession of child pornography is a crime with actual victims. Judges, scholars and the general public need to treat it as such. If we focus on the harm inflicted to a child when an image of him being sexually abused is possessed and viewed, we can help dispel misperceptions that possession is a victimless crime.

---

90. United States v. Goff, 501 F.3d 250 (3d Cir. 2007).
91. *See* Christina Demetriou & Andrew Silke, *A Criminological Internet "Sting": Experimental Evidence of Illegal and Deviant Visits to a Website Trap*, 43 BRIT. J. CRIMINOLOGY 213 (2003), *cited in* ORIN S. KERR, COMPUTER CRIME LAW 268-69 (2006).