IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § | |
| vs. | § | CASE NO. 6:08-CR-61 |
| DOYLE RANDALL PAROLINE | § § § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Request for Restitution by Amy,[1] who is a victim in the "Misty" child pornography series.[2] Defendant Doyle Randall Paroline ("Paroline") unlawfully possessed two pornographic images of Amy he obtained over the Internet. Having considered the parties' oral arguments and written submissions, and for the reasons explained below, the Government has not met its burden of proving what losses, if any, were proximately caused by Paroline's possession of Amy's two pornographic images and thus, the Request for Restitution is **DENIED**.

## BACKGROUND

On January 9, 2009, Paroline pled guilty to one count of possession of material involving the sexual exploitation of children in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2). Paroline admitted to knowingly possessing on his computers between 150 and 300 images of minors engaged in sexually explicit conduct (Docket No. 6). The National Center for Missing and Exploited Children ("NCMEC") identified Amy as at least one of the minors depicted in the pornographic

---

[1] "Amy" is a pseudonym used to protect the privacy of the victim in the "Misty" child pornography series.

[2] A series is a collection of images and/or video files taken over a period of time, typically containing both pornographic and non-pornographic images of a child or children. NCMEC's Brief, Docket No. 30, at 5.

images. Amy is depicted in two of the pornographic images Paroline possessed.[3]

On June 10, 2009, Paroline was sentenced to 24 months custody in the Bureau of Prisons and 120 months of supervised release. During sentencing, the Court reviewed Amy's Victim Impact Statement and her Request for Restitution under 18 U.S.C. § 2259.[4] Her Victim Impact Statement detailed not only the harm she has suffered from the abuse by her uncle when she was eight and nine years of age, but the harm she continues to endure ten years later by knowing that pornographic images of her are circulating against her will on the Internet and there is nothing she can do to stop it. In her Request for Restitution, Amy seeks approximately $3,367,854 from Paroline. This amount reflects the total amount of Amy's losses and includes costs for future psychological care, future lost income, and attorney's fees. Amy's Latest Request for Restitution, Docket No. 54-2, at 18. Amy offers no alternate theory of restitution for the portion of her total losses proximately caused by any single defendant's possession of her images. Amy's restitution request is being made by the Government on her behalf. Amy's personal attorney, Mr. James R. Marsh, has also participated in presenting Amy's restitution request in this case.

Because the issue of restitution in child pornography possession cases is one of first impression in this Court, the Court severed the restitution issue from the sentencing proceeding and ordered all interested parties to submit briefing on the issue (Docket No. 13). The Court received briefing from the Government, Amy, Paroline, and other interested parties including NCMEC. On August 20, 2009, the Court conducted a hearing pursuant to 18 U.S.C. § 3664(d)(5) to determine restitution. At the hearing, Paroline requested additional time to obtain the data underlying Amy's

---

[3] Amy was sexually exploited by her uncle when she was eight and nine years of age. She is now 19 years of age. The pornographic images of her abuse depict rape, cunnilingus, fellatio, and digital penetration. These images have been, and continue to be, traded and distributed on the Internet. Amy's Latest Request for Restitution, Docket No. 54-2, at 3.

[4] This is only one of approximately 250 restitution requests Amy has filed against different defendants across the country who have been charged with possession of child pornography involving the "Misty" series.

2

restitution request and further brief the restitution issue. In addition, Paroline and his counsel waived the statutory requirement that a final determination concerning restitution be held within 90 days of sentencing (Docket No. 36). Following the August 20 hearing, Paroline filed a motion for certain discovery materials, which the Court granted in part and denied in part (Docket No. 46).[5] The Court received supplemental briefing from Paroline, the Government, and Amy, and held a second restitution hearing on October 28, 2009 where Paroline presented additional evidence and arguments against Amy's restitution request.

## APPLICABLE LAW

The victim in this case seeks restitution under 18 U.S.C. § 2259,[6] which governs restitution

---

[5] In his discovery motion, Paroline requested the data underlying Amy's experts' reports and requested that he be allowed to depose Amy's experts. The Court granted these requests. The Court also granted Paroline's request for an accounting of all cases in which Amy had filed a similar restitution request and the amount of restitution ordered and collected in each case. Paroline further requested that Amy be produced for a forensic psychological or psychiatric examination. The Court denied this request. Paroline also requested expert funds to assist him in rebutting the data underlying Amy's Request for Restitution. The Court denied this request without prejudice to re-urging at a later date.

[6] Section 2259 provides:
(a) In general.–Notwithstanding section 3663 or 3663A, and in addition to any other civil or criminal penalty authorized by law, the court shall order restitution for any offense under this chapter.
(b) Scope and nature of order.–
    (1) Directions.–The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court pursuant to paragraph (2).
    (2) Enforcement.–An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.
    (3) Definition.– For purposes of this subsection, the term "full amount of the victim's losses" includes any costs incurred by the victim for–
        (A) medical services relating to physical, psychiatric, or psychological care;
        (B) physical and occupational therapy or rehabilitation;
        (C) necessary transportation, temporary housing, and child care expenses;
        (D) lost income;
        (E) attorneys' fees, as well as other costs incurred; and
        (F) any other losses suffered by the victim as a proximate result of the offense.
    (4) Order mandatory.–
        (A) The issuance of a restitution order under this section is mandatory.
        (B) A court may not decline to issue an order under this section because of–
            (i) the economic circumstances of the defendant; or
            (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or any other source.
(c) Definition.– For purposes of this section, the term "victim" means the individual harmed as a

for all offenses involving the sexual exploitation and other abuse of children. 18 U.S.C. § 2259(a). Section 2259 clearly mandates that the sentencing court order a defendant convicted of such an offense to pay restitution to the victim of the crime. 18 U.S.C. § 2259(b)(4)(A). The statute provides that restitution is available for "the full amount of the victim's losses." 18 U.S.C. § 2259(b)(1). Compensable losses under section 2259 include, among other things, any costs incurred by the victim for "medical services relating to physical, psychiatric, or psychological care," "physical and occupational therapy or rehabilitation," and "attorneys' fees, as well as other costs incurred." 18 U.S.C. § 2259(b)(3). Further, section 2259 specifically prohibits the Court from declining to order restitution because of the defendant's economic circumstances or because the victim receives compensation for his or her injuries from another source. 18 U.S.C. § 2259(b)(4)(B). The Government must prove the amount of the victim's losses by a "preponderance of the evidence," and that Court shall resolve any dispute as to the proper amount of restitution by the same standard. 18 U.S.C. § 3664(e).

**ANALYSIS**

*Victim Status Under § 2259*

The Court's first task is to determine whether Amy is a "victim" of Paroline's offense. Section 2259 defines a "victim" as any "individual harmed as a result of a commission of a crime under [the Sexual Exploitation and Other Abuse of Children Chapter of Title 18]." 18 U.S.C. § 2259(c). It is undisputed that Paroline was convicted of a crime under this chapter and that Amy was depicted in two of the pornographic images Paroline possessed. Thus, Amy is a victim for purposes of section 2259 if she was harmed as a result of Paroline's possession of her images.

---

result of a commission of a crime under this chapter, including, in the case of a victim who is under 18 years of age, incompetent, incapacitated, or deceased, the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, but in no event shall the defendant be named as such representative or guardian.

4

Child pornography fosters the exploitation of innocent and vulnerable children all over the world. It causes irreparable harm to some of the weakest members of our society. Child pornography is a permanent photographic record of the victim's sexual abuse, and the distribution and circulation of the pornographic images forever exacerbates the harm to these child victims. *New York v. Ferber*, 458 U.S. 747, 759 (1982) (finding that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children"). In the Supreme Court's landmark decision in *New York v. Ferber*, the Court extensively discussed the issue of child pornography and the long-term physiological, emotional, and mental harms associated with the sexual exploitation of children. 458 U.S. at 758. The Court cited to various authorities in the field of child exploitation, noting that:

> The use of children as . . . subjects of pornographic materials is very harmful to both the children and the society as a whole. It has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults.
>
> . . . .
>
> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*Id*. at 758–60, nn. 9 & 10 (internal quotations and citations omitted).

The Fifth Circuit has also addressed the issue of child pornography. In *United States. v. Norris*, the Fifth Circuit held that "children depicted in child pornography may be considered to be the victims of the crime of receiving child pornography." 159 F.3d 926, 929 (5th Cir. 1998). The court determined that "the 'victimization' of the children involved does not end when the photographer's camera is put away." *Id*. The end-user or possessor of pornographic materials may be considered to be causing the children depicted in those materials to suffer as a result of his actions

in at least three ways: (1) because the dissemination of the images perpetuates the abuse initiated by the producer of the materials, a consumer who merely receives or possesses child pornography directly contributes to the child's continued victimization; (2) because the mere existence of the child pornography invades the privacy of the child depicted, the recipient of the child pornography directly victimizes the child by perpetuating the invasion of the child's privacy; and (3) because the consumer of child pornography instigates, enables, and supports the production of child pornography, the consumer continuously and directly abuses and victimizes the child subject. *Id*. at 929–30. Thus, "the victimization of a child depicted in pornographic materials flows just as directly from the crime of knowingly receiving child pornography as it does from the arguably more culpable offenses of producing or distributing child pornography." *Id*. at 930.

Congress has also long recognized the harm inflicted on victims of child pornography. In the legislative history of the Child Pornography Prevention Act of 1996, Congress specifically cited and broadly quoted from the landmark *New York v. Ferber* decision finding that "[t]he use of children as subjects of pornographic materials is harmful to the physiological, emotional and mental health of a child." S. Rep. No. 104-358, at 14 (1996) (citing *New York v. Ferber*, 458 U.S. 747, 759 (1982)). Congress further observed that "it has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id*. More recently, Congress again addressed the impact of child pornography in the legislative history behind the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, § 501, 120 Stat. 587, 623 (2006). Congress found that "[t]he illegal production, transportation, distribution, receipt, advertising[,] and possession of child pornography . . . is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole." *Id*. Congress further observed that "[e]very instance of viewing images of child pornography

6

represents a renewed violation of the privacy of the victims and repetition of their abuse." *Id*. at 624.

In addition to the courts' and Congress's recognition of the long-term harms associated with child pornography, NCMEC data indicates that incidents of online child pornography are increasing. *See* NCMEC's Brief, Docket No. 30. NCMEC was established in 1984 as a private, nonprofit organization to assist families, law enforcement, and other professionals in preventing the abduction, endangerment, and sexual exploitation of children. *Id*. at 2. NCMEC works with both federal and state governments and law enforcement agencies to prevent and combat the growing problem of child sexual exploitation. *Id*. Using two central programs, the CyberTipline and the Child Victim Identification Program ("CVIP"), NCMEC serves as the central repository for information relating to child pornography cases across the country. *Id*. at 2–5. In 2000, NCMEC sponsored a study that profiled arrested offenders who possessed child pornography and surveyed participating state and local law enforcement agencies. *See* Janis Wolak, et al., *Child Pornography Possessors Arrested in Internet Related Crimes*: *Findings from the National Online Juvenile Victimization Study* (2005). The study revealed that the dissemination of child pornography may increase the trauma experienced by the victims because the victims know "their pictures are circulating globally on the Internet with no hope of permanent removal." *Id*. at 27.

In addition to NCMEC's study, various other studies document the harm caused to a child by the possession and distribution of child pornography. One study demonstrates that a child's psychological harm after the actual sexual exploitation continues into adulthood and affects his ability to develop healthy relationships. John E. B. Myers, et al., *The APSAC Handbook on Child Maltreatment* 55–69 (2d ed. 2002). The child victims develop a number of psychological disorders, including depression, withdrawal, and anger, and experience feelings of guilt, betrayal, powerlessness, worthlessness, and low self-esteem. *Id*. Another study suggests that the continual online distribution and possession of the child pornography images re-victimizes these child victims,

stripping them of any control over the disclosure of their abuse and exposing them to further shame and humiliation. *See* Ethell Quayle, et al., *Child Pornography and Sexual Exploitation of Children Online* 59–60 (2008).

Based on the Supreme Court's analysis in *Ferber,* the Fifth Circuit's reasoning in *Norris*, and the overwhelming amount of literature and briefing regarding the harm caused to children depicted in child pornography, the Court finds that the Government has met its burden of establishing that Amy was "harmed as a result of" Paroline's possession of pornographic images depicting Amy's sexual abuse. Accordingly, Amy is a victim of Paroline's offense for purposes of section 2259. The Court now turns to the issue of causation between Paroline's conduct and his victim's alleged losses.

*Causation Under § 2259*

Amy contends that, as a matter of statutory construction, there is simply no proximate cause requirement for the losses specifically enumerated in the statute.[7] On the other hand, both the Government and Paroline are of the view that section 2259 requires a showing of proximate cause between the victim's losses and the defendant's conduct. The Government, however, argues that it has met its burden of proving by a preponderance of the evidence that the total amount of Amy's losses ($3,367,854) were indeed proximately caused by Paroline's conduct. Thus, the Court must determine first whether there is a proximate cause requirement in section 2259, and if so, whether the Government has met its burden of proving that the total amount of Amy's losses were proximately caused by Paroline's possession of Amy's two pornographic images.

Is There a Proximate Cause Requirement?

Section 2259 provides that restitution is available for "the full amount of the victim's losses."

---

[7] Thus, Amy seeks restitution for the full amount ($3,367,854) of her losses stemming from the abuse itself and the dissemination of her pornographic images. Amy's theory of restitution is not limited to those losses proximately caused by any single defendant's possession of her images. She embraces the view that every defendant is jointly and severally liable for the total amount of her losses, although she points out that she is not seeking any windfall beyond her total losses, i.e. no double recovery.

8

18 U.S.C. § 2259(b)(1). The statute specifies that these losses include, among other things, any costs incurred by the victim for "medical services relating to physical, psychiatric, or psychological care," "physical and occupational therapy or rehabilitation," and "attorneys' fees, as well as other costs incurred." 18 U.S.C. § 2259(b)(3). The statute provides six categories of losses, but only the last subsection, which provides for "any other losses suffered by the victim" expressly contains a "proximate result" requirement. 18 U.S.C. § 2259(b)(3)(F).

Amy contends that proximate cause is simply not a factor in a restitution determination under section 2259. Specifically, Amy argues that, as a matter of statutory construction, the "proximate result" language in the statute modifies only the "catchall" category of losses, not the other loss categories enumerated in section 2259, and the other categories of loss are mandatory without regard to causation. However, the Supreme Court has held that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., Light & Power Co. v. Mor.*, 253 U.S. 345, 348 (1920); *see also Fed. Mar. Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 734 (1973) (holding that a "catchall provision" was "to be read as bringing within a statute categories similar in type to those specifically enumerated"). Based on this rule of construction, the phrase "as a proximate result of the offense" would apply equally to all the loss categories in section 2259(b)(3). This construction has been applied in a very well reasoned opinion of the District Court of Maine, holding that "the natural construction of [section 2259] demands that the proximate cause requirement be read as applicable to every class of loss set forth in the statue." *United States v. Berk*, — F. Supp. 2d —, No. 08-CR-212-P-S, 2009 WL 3451085, at *5 (D. Me. October 29, 2009).[8]

---

[8] In further support of her argument against reading a proximate cause requirement into the statute, Amy argues that other federal restitution statutes require either "proximate harm" or "direct harm" in the definition of "victim" while section 2259 requires a more generalized "harm." Amy's Latest Request for Restitution, Docket No. 54-2, at 25. Amy suggests that by omitting the terms "directly" or "proximately" in section 2259's definition of "victim," "Congress . . . explicitly recognized the causal link between the criminal conduct . . . and the harm

9

Furthermore, construing the statute as Amy suggests could render section 2259 unconstitutional. Paroline argues that a restitution award not tied to those losses proximately caused by his conduct would "clearly be excessive" in violation of the Eighth Amendment.[9] Defendant's Opening Brief, Docket No. 26, at 15. "[A]n Act of Congress ought not be construed to violate the Constitution if any other possible construction remains available." *Rust v. Sullivan*, 500 U.S. 173, 190 (1991); *see also United States v. Valencia*, 394 F.3d 352, 355 (5th Cir. 2004) ("In [construing a statute], we give effect to the intent of Congress, and as between two possible interpretations of a statute, by one of which it would be unconstitutional and by the other valid, our plain duty is to adopt that which will save the Act.") (internal citation omitted). This Court is of the opinion that a restitution order under section 2259 that is not limited to losses proximately caused by the defendant's conduct would under most facts, including these, violate the Eighth Amendment.

The Government agrees that section 2259 does have a causation requirement. "A victim is only entitled to recover restitution for losses that are proximately caused by the conduct in question" because "[i]t would be nonsensical for the statute to include differing burdens of proof and different causal requirements for different types of losses." Government's Opening Brief, Docket No. 29, at 3 & n.13. However, the Government argues that it has met its burden of proving that Amy's total losses were proximately caused by Paroline's conduct. Paroline disagrees with both Amy and the Government.

---

experienced by the victims." *Id*. However, this argument is unpersuasive because the Court has already concluded that Amy has been harmed by Paroline's conduct. The relevant inquiry at this stage of the analysis is not whether Amy has been harmed by Paroline's conduct, but whether the statute requires that the Government prove the amount of Amy's losses proximately caused by Paroline's conduct.

[9] The Eighth Amendment provides: "Excessive bail shall not be required, no excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST., amend. VIII. Paroline cites to *United States v. Bajakajian*, where the Supreme Court held a criminal forfeiture invalid under the Eighth Amendment reasoning "[i]f the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional." 524 U.S. 321, 337 (1998). The Third and Ninth Circuits have reviewed restitution issues under the same Eight Amendment analysis. *See United States v. Dubose*, 146 F.3d 1141, 1144–45 (9th Cir. 1998); *United States v. Lessner*, 498 F.32d 185, 205 (3d Cir. 2007).

Paroline contends that section 2259 requires that the Government prove by a preponderance of the evidence the amount of Amy's specific losses proximately caused by Paroline's possession of her two images. Paroline urges the Court to apply general restitution and causation principles in its analysis of section 2259. Defendant's Opening Brief, Docket No. 26, at 4–5. Indeed, restitution ordered in criminal cases is generally tied to the losses caused by the specific offense of conviction. *See United States v. Hughey*, 495 U.S. 411, 412–13 (1990); *United States v. Maturin*, 488 F.3d 657, 660–61 (5th Cir. 2007); *United States v. Wright*, 496 F.3d 371, 381 (5th Cir. 2007).

For example, in *United States v. Hughey*, the Supreme Court held that the Victim and Witness Protection Act of 1982 ("VWPA") authorized restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." 495 U.S. at 412–13. The Fifth Circuit has applied *Hughey* noting that a "district court can award restitution to victims of the offense, but the restitution award can encompass only those losses that resulted directly from the offense for which the defendant was convicted." *Maturin*, 488 F.3d at 660–61, 661 n.2 (noting that *Hughey*, 495 U.S. at 413, also applies to cases arising under the Mandatory Victims Restitution Act of 1996 ("MVRA") and, although *Hughey* predated the enactment of the MVPA, the "[C]ourt's holding that restitution must be limited to losses caused by the offense of conviction remains good law"); *see also United States v. Arledge*, 553 F.3d 881, 898 (5th Cir. 2008). Furthermore, "[w]hen a defendant is ordered to pay restitution in an amount greater than the loss caused, the error affects substantial rights as well as the fairness and integrity of the judicial proceeding." *United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007). The Fifth Circuit has referred to the causation requirement as the "*Hughey* limitation." *See United States v. Ortiz*, 252 Fed. Appx. 664, 666, 2007 WL 3208806 (5th Cir. 2007).

However, the Fifth Circuit has also held that, although "[a] defendant sentenced under the [MVRA] is only responsible for paying restitution for the conduct underlying the offense for which

he was convicted," "where a fraudulent scheme is an element of the conviction, the court may award restitution for actions pursuant to that scheme." *United States v. Inman*, 411 F.3d 591, 595 (5th Cir. 2005) (internal citation omitted). Amy argues that "[t]he illicit trade in child pornography is a joint enterprise" and "[e]ach possession and each distribution of each image all combine to . . . a 'single indivisible result.'" Amy's Latest Request for Restitution, Docket No. 54-2, at 14. *See United States. v. Norris*, 159 F.3d 926, 929–30 (5th Cir. 1998). However, the offense of conviction in this case—possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B)and 2252(b)(2)—does not have a fraudulent scheme or conspiracy as an element of the offense. If the Court were to adopt Amy's reading of section 2259 and find that there is no proximate cause requirement in the statute, a restitution order could hold an individual liable for a greater amount of losses than those caused by his particular offense of conviction. This interpretation would be plainly inconsistent with how the principles of restitution and causation have historically been applied.

Although the Fifth Circuit has yet to construe section 2259, other circuits that have considered restitution awards under section 2259 have interpreted the statute to require a causal connection between the victim's losses and the offense of conviction. *United States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999) ("[Section 2259] requires awarding the full amount of the victim's losses suffered as a proximate result of the offense."); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999) ("Section 2259 . . . incorporates a requirement of proximate causation . . . requir[ing] a causal connection between the offense of conviction and the victim's harm."); *United States v. Searle,* 65 Fed. Appx. 343, 346, 2003 WL 21025186, at *2 (2d Cir. 2009) (assuming that section 2259 includes a requirement that the victim's losses be suffered by the victim as a proximate result of the offense). However, the Court is not aware of any circuit court that has considered a restitution award under section 2259 where the defendant was an end-user or possessor of child pornography. Restitution in possession cases is an issue of first impression in district courts around the nation as

the Government has only recently begun seeking restitution from possessors of child pornography on behalf of victims.

Restitution orders entered in possession cases have varied among the various district courts addressing the issue. On July 9, 2009, a district court in the Northern District of Florida entered a restitution order against a possessor criminal defendant in favor of Amy in the amount of $3,263,758. *United States v. Freeman*, No. 3:08-cr-22 (N.D. Fla. filed July 9, 2009). Similarly, a district court in the Southern District of Florida ordered a possessor criminal defendant to pay $3,680,153 in restitution to Amy without addressing the proximate causation issue. *United States v. Staples*, No. 09-14017-CR, 2009 WL 2827204, at *3–4 (S.D. Fla. Sept. 2, 2009). On the other hand, a district court in the Northern District of California declined to order restitution because restitution was precluded under the defendant's plea agreement, but noted that "a restitution order in [an end-user possession] case must be based upon the identification of a specific injury to the victim that was caused by the specific conduct of the defendant." *United States v. Simon*, 2009 WL 2424673, at *7 (N.D. Cal. August 7, 2009). The Central and Eastern Districts of California have taken a different approach, seemingly adopting a set amount of restitution per defendant convicted of possession of child pornography. *See United States v. Brown*, No. 2:08-cr-1435 (C.D. Cal. filed Oct. 5, 2009) (awarding restitution in the amount of $5,000 to each victim); *United States v. Ferenci*, No. 1:08-cr-0414, 2009 WL 2579102, at *6 (E.D. Cal. Aug. 19, 2009) (awarding restitution in the amount of $3,000 to the victim). In another case, the Government and the defendant stipulated to the amount of restitution because it was "in the best interest of justice, judicial expedience[,] and economy in resolving this novel legal issue." *United States v. Granato*, No. 2:08-cr-198 (D. Nev. filed August 28, 2009). Most recently, a district court in Maine declined to order restitution finding that the Government "failed to present sufficient evidence showing a particular loss proximately caused by the offense of conviction." *United States v. Berk*, — F. Supp. 2d —, No. 08-CR-212-P-S, 2009 WL

3451085, at *8 (D. Me. October 29, 2009).

After considering all of the arguments, authority before it, and principles of statutory construction, the Court finds that section 2259 requires that a victim's losses be proximately caused by the defendant's conduct to be recoverable in restitution. General restitution and causation principles applied by the Supreme Court and the Fifth Circuit support this interpretation of the statute. Moreover, this interpretation is consistent with the various circuit courts that have interpreted section 2259 to require that the victim's losses be proximately caused by the defendant's conduct. Thus, an award of restitution under section 2259 is appropriate only for the amount of the victim's losses proximately caused by the defendant's conduct.

<u>Were Amy's Total Losses Proximately Caused By Paroline's Possession?</u>[10]

The Government argues that the proximate cause requirement is satisfied because Amy was obviously "harmed" by Paroline's conduct. However, the Government is conflating the proximate cause requirement with the requirement that the victim be harmed as a result of Paroline's conduct. Certainly, Amy was harmed by Paroline's possession of Amy's two pornographic images, but this does little to show how much of her harm, or what amount of her losses, was proximately caused by Paroline's offense. A victim is not necessarily entitled to restitution for all of her losses simply because the victim was harmed and sustained some lesser loss as a result of a defendant's specific conduct. The proper inquiry is whether the Government has met its burden of proving by a preponderance of the evidence the amount of Amy's losses proximately caused by Paroline's conduct.

---

[10] This type of "possession case" differs from a "production case," where the defendant is the actual abuser and producer of the child pornography. In a "production case" there is no question of causation because all of the victim's losses are proximately caused by the defendant. *See United States v. Baker*, No. 6:08-cr-99 (E.D. Tex. filed December 7, 2009) ("[R]estitution in [a 'production case'] is payment for the harm caused to the victim by the production and dissemination of the child pornography. . . . The entirety of losses these images cause these children, now and in the future, is a direct and proximate result of the crimes to which [the defendant] pled guilty.")

14

Proximate cause is defined as "[a] cause that directly produces an event and without which the event would not have occurred." BLACK'S LAW DICTIONARY 234 (8th ed. 2004). Thus, the Government has the burden of proving the amount of Amy's losses directly produced by Paroline that would not have occurred without his possession of her images. The Court is guided by certain principals in making this determination. "The determination of an appropriate restitution amount is by nature an inexact science," *United States v. Teehee*, 893 F.2d 271, 274 (10th Cir.1990), and "[a] sentencing court may resolve restitution uncertainties 'with a view towards achieving fairness to the victim,' so long as it still makes a 'reasonable determination of appropriate restitution' rooted in a calculation of actual loss." *United States v. Fallah*, No. H-07-155, 2008 WL 5102281, at *2 (S.D. Tex. December 1, 2008) (quoting *United States v. Vaknin*, 112 F.3d 579, 587 (1st Cir.1997) (internal quotation omitted)). Notwithstanding some latitude in making this determination, the Court must be guided by the premise that "[a]n order of restitution must be limited to losses caused by the specific conduct underlying the offense of conviction." *United States v. Tencer*, 107 F.3d 1120, 1135 (5th Cir. 1997).

The Court has held two hearings regarding the issue of restitution in this case and has reviewed the parties' initial and supplemental briefs. To substantiate her claim for approximately $3,367,854 in restitution, Amy has submitted: (1) a Victim Impact Statement; (2) a psychological evaluation by Dr. Joyanna Silberg dated November 21, 2008; (3) an economic report by Dr. Stan V. Smith dated September 15, 2008; and (4) numerous excerpts from articles discussing the harms associated with child pornography. The losses described in Amy's reports are generalized and caused by her initial abuse as well as the general existence and dissemination of her pornographic images. No effort has been made to show the portion of these losses specifically caused by Paroline's possession of Amy's two images. After reviewing the data underlying Amy's experts' reports, Paroline submitted a supplemental brief that identifies certain discrepancies between Amy's

15

Victim Impact Statement and Dr. Silberg's notes. Paroline's supplemental briefing also includes a report by Dr. Timothy J. Proctor enumerating his concerns as to the reliability of Dr. Silberg's report and an economic report prepared by Dr. Kent Gilbreath that sets forth estimates of Amy's future potential earning capacity to illustrate the discrepancy between his sums and those of Dr. Smith.[11]

It is clear from the evidence before the Court that a large portion of Amy's total losses were caused by her original abuse by her uncle. It is equally clear that significant losses are attributed to the widespread dissemination and availability of her images and the possession of those images by many individuals such as Paroline. There is no doubt that everyone involved with child pornography—from the abusers and producers to the end-users and possessors—contribute to Amy's ongoing harm. The Court is sympathetic to Amy and the harm that she has undoubtedly experienced and will continue to experience for the rest of her life. The Court also realizes that it is incredibly difficult to establish the amount of a victim's losses proximately caused by any one defendant convicted of possession. However, the Court's sympathy does not dispense with the requirement that the Government satisfy its burden of proving the amount of Amy's losses proximately caused by Paroline's possession of her two images. Although this may seem like an impossible burden for the Government, the Court is nevertheless bound by the requirements of the statute.[12]

---

[11] In addition, the Government, Amy, and Paroline entered into a Stipulation establishing that Amy does not know who Paroline is and none of the losses for which she seeks restitution flow from her knowledge about Paroline or his conduct (Docket No. 47). Paroline argues that this "effectively precludes a finding by the Court that any of Amy's injuries or damages were the proximate result of [his] conduct." Defendant's Supplemental Brief, Docket No. 48, at 15. However, section 2259 does not require that Amy have knowledge of each individual possessor and his conduct in order to establish proximate cause, it simply requires that restitution be tied to the victim's losses proximately caused by a defendant's possession of Amy's images.

[12] While Congress was obviously well intended in attempting to create a statutory framework to help compensate victims of child pornography, it has unfortunately created one that is largely unworkable in the context of criminal restitution. 18 U.S.C. § 2255, however, does provide a civil remedy for those victims able to obtain counsel to pursue it. There is a great need for counseling and medical care for victims of child pornography. Perhaps a statutory provision requiring that fines for child pornography be paid to a national center that would act as a trustee to disburse funds for counseling of victims of child pornography would do more to help these victims than the seemingly unworkable criminal restitution provisions in 18 U.S.C. § 2259.

Having reviewed all of the evidence, the Court finds that the Government has failed to meet its burden of proving any specific losses proximately caused by Paroline's conduct. Thus, an award of restitution is not appropriate in this case. *See Berk*, 2009 WL 3451085, at *5. *But cf. United States v. Baker*, No. 6:08-cr-99 (E.D. Tex. filed December 7, 2009) (awarding $150,000 in restitution to each minor victim).[13]

## CONCLUSION

Accordingly, the Court finds that Amy was harmed as a result of Paroline's conduct and thus, is a "victim" for purposes of section 2259. However, a restitution award under section 2259 requires that the Government prove by a preponderance of the evidence the amount of the victim's losses proximately caused by the defendant's conduct. Having considered the parties' oral arguments and written submissions, the Government has not met its burden of proving what losses, if any, were proximately caused by Paroline's possession of Amy's two pornographic images and thus, the Request for Restitution is **DENIED**.

---

[13] In *Baker*, the Court relied on Congress's mandated minimum damage amount of $150,000 set forth in 18 U.S.C. § 2255(a) to award the minor victims $150,000 each in restitution. The Court found the victims' expert's estimate of losses inadequate to cover the full amount of the victims' losses, reasoning that any award of restitution below the statutorily mandated minimum of $150,000 would fall short of making the minor victims whole. This case differs from *Baker* in two respects. First, the defendant in *Baker* was the actual producer and distributor of the child pornography and thus, causation was not an issue. Therefore, the Court's only task in *Baker* was to determine the proper amount of restitution. In contrast, as a case of first impression, this "possession case" required an exhaustive causation analysis to determine whether an award of restitution was even appropriate. Because the Court has concluded that the Government did not establish any specific losses proximately caused by Paroline's possession of Amy's images, the amount of restitution in this case was not subject to calculation. Second, unlike *Baker*, where the Court was confident $150,000 was far below the minor victims' actual losses, the Court is concerned that a restitution award of $150,000 in this case may exceed any specific losses proximately caused by Paroline's possession of Amy's images. *See United States v. Austin*, 479 F.3d 363, 373 (5th Cir. 2007) (holding that when a restitution award is greater than the losses caused by the defendant's conduct, the error affects the defendant's substantial rights and the fairness and integrity of the judicial proceeding).

**So ORDERED and SIGNED this 7th day of December, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**