# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

FILED-CLERK
U.S. DISTRICT COURT

2013 JAN 15  AM 10:41

TEXAS-EASTERN

BY_____

United States Court of Appeals
Fifth Circuit

**FILED**

November 19, 2012

Lyle W. Cayce
Clerk

No. 09-41238

D.C. Docket No. 6:08-CR-61

In re:  AMY UNKNOWN,

  Petitioner

Consolidated with

  09-41254

UNITED STATES OF AMERICA,

  Plaintiff - Appellee

DOYLE RANDALL PAROLINE,

  Defendant - Appellee

v.

AMY UNKNOWN,

  Movant - Appellant

Appeals from the United States District Court for the
Eastern District of Texas, Tyler

Before STEWART, Chief Judge, and KING, JOLLY, DAVIS, JONES, SMITH,
GARZA, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK,
HAYNES, and GRAVES, Circuit Judges.

## JUDGMENT ON REHEARING EN BANC

This cause came on to be heard on rehearing en banc and was argued by counsel.

It is ordered and adjudged that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court.


DENNIS, Circuit Judge, concurring in part in the judgment.


W. EUGENE DAVIS, Circuit Judge, concurrring in part and dissenting in part, joined by KING, SMITH, and GRAVES, Circuit Judge.


LESLIE H. SOUTHWICK, Circuit Judge, dissenting.


ISSUED AS MANDATE:   JAN 1 1 2013


A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit

By: *Christina Gardner*
                    Deputy
                              JAN 1 1 2013
New Orleans, Louisiana

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit
**F I L E D**
November 19, 2012

Lyle W. Cayce
Clerk

———————

No. 09–41238

———————

In re:  AMY UNKNOWN,

> Petitioner

Consolidated with 09–41254

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

DOYLE RANDALL PAROLINE

> Defendant - Appellee

v.

AMY UNKNOWN,

> Movant - Appellant

-----------------------------

No. 09-31215

UNITED STATES OF AMERICA

> Plaintiff - Appellee

v.

MICHAEL WRIGHT

> Defendant - Appellant

No. 09–41238
c/w No. 09–41254
No. 09–31215

———————————

Appeals from the United States District Courts
for the Eastern District of Texas
and the Eastern District of Louisiana

———————————

Before STEWART, Chief Judge, and KING, JOLLY, DAVIS, JONES, SMITH, GARZA, DENNIS, CLEMENT, PRADO, OWEN, ELROD, SOUTHWICK, HAYNES, and GRAVES, Circuit Judges.[1]

GARZA, Circuit Judge, joined by STEWART, Chief Judge, JOLLY, JONES, CLEMENT, PRADO, OWEN, ELROD, and HAYNES, Circuit Judges:

The original opinion in this matter was issued by the en banc court on October 1, 2012. *In re Unknown*, No. 09-41238, 2012 WL 4477444 (5th Cir. Oct. 1, 2012) (en banc). A petition for rehearing en banc is currently pending before the en banc court. The petition for rehearing en banc is granted in part. Accordingly, we WITHDRAW our previous opinion and replace it with the following opinion.[2]

The issue presented to the en banc court is whether 18 U.S.C. § 2259 requires a district court to find that a defendant's criminal acts proximately caused a crime victim's losses before the district court may order restitution, even though that statute only contains a "proximate result" requirement in § 2259(b)(3)(F). All our sister circuits that have addressed this question have expanded the meaning of § 2259(b)(3)(F) to apply to all losses under § 2259(b)(3), thereby restricting the district court's award of restitution to a victim's losses

———————————

[1] Judge Higginson is recused and did not participate in any aspect of this en banc rehearing.

[2] In Wright's case, because the Government did not appeal and Amy did not seek mandamus review, we revised our opinion to affirm Wright's sentence, in compliance with *Greenlaw v. United States*, 554 U.S. 237 (2008).

2

No. 09–41238
c/w No. 09–41254
No. 09–31215

that were proximately caused by a defendant's criminal acts.  A panel of this court rejected that reading, and instead focused on § 2259's plain language to hold that § 2259 does not limit a victim's total recoverable losses to those proximately resulting from a defendant's conduct.  A subsequent panel applied that holding to another appeal, yet simultaneously questioned it in a special concurrence that mirrored the reasoning of our sister circuits.  To address the discrepancy between the holdings of this and other circuits, and to respond to the concerns of our court's special concurrence, we granted rehearing en banc and vacated the panel opinions.

This en banc court holds that § 2259 only imposes a proximate result requirement in § 2259(b)(3)(F); it does not require the Government to show proximate cause to trigger a defendant's restitution obligations for the categories of losses in § 2259(b)(3)(A)–(E).  Instead, with respect to those categories, the plain language of the statute dictates that a district court must award restitution for the full amount of those losses.  We VACATE the district court's judgment in *United States v. Paroline*, 672 F. Supp. 2d 781 (E.D. Tex. 2009), and REMAND for further proceedings consistent with this opinion.  We AFFIRM the district court's judgment in *United States v. Wright*, No. 09-CR-103 (E.D. La. Dec. 16, 2009).

I

We review a set of appeals arising from two separate criminal judgments issued by different district courts within this circuit.  Both appeals involve restitution requests by Amy, a young adult whose uncle sexually abused her as a child, captured his acts on film, and then distributed them for others to see. The National Center for Missing and Exploited Children, which reports that it has found at least 35,000 images of Amy's abuse among the evidence in over

3

No. 09–41238
c/w No. 09–41254
No. 09–31215

3,200 child pornography cases since 1998, describes the content of these images as "extremely graphic." The Government reports that restitution has been ordered for Amy in at least 174 child pornography cases across the United States in amounts ranging from $100 to $3,543,471.

## A

In the consolidated cases *In re Amy*, 591 F.3d 792 (5th Cir. 2009), and *In re Amy Unknown*, 636 F.3d 190 (5th Cir. 2011), a panel of this court reviewed Amy's mandamus petition and appeal, both of which challenged the district court's order denying Amy restitution in connection with a criminal defendant's sentence.

In the case underlying Amy's mandamus petition and appeal, Doyle Paroline ("Paroline") pled guilty to 18 U.S.C. § 2252 for possessing 150 to 300 images of minors engaged in sexually explicit conduct. At least two images were of Amy. Pursuant to Amy's right to restitution under the Crime Victims' Rights Act, 18 U.S.C. § 3771, the Government and Amy moved the district court to order restitution under § 2259. Amy supported this request with her psychiatrist's report, which itemized her future damages for specific categories of treatment and estimated total damages nearing $3.4 million.[3]

The district court denied Amy restitution. *Paroline*, 672 F. Supp. 2d at 782. The district court held that § 2259 required the Government to prove that by possessing images depicting Amy's sexual abuse, Paroline proximately caused the injuries for which she sought restitution. *Id.* at 791. Concluding that the Government failed to show this causal link, the district court denied Amy restitution. *Id.* at 793. Amy petitioned for mandamus, asking this court to

---

[3] Amy attested that this amount reflects the total amount of her losses from the production, distribution, and possession of the images of her abuse and primarily comprises costs for future psychological care and future lost income.

4

No. 09–41238
c/w No. 09–41254
No. 09–31215

direct the district court to order Paroline to pay her the full amount of the restitution she had requested.

Over one dissent, that panel denied her relief because it was not clear or indisputable that § 2259 mandates restitution irrespective of proximate cause. *In re Amy*, 591 F.3d at 794–95.  Amy sought rehearing and filed a separate notice of appeal from the district court's restitution order; her mandamus petition and appeal were consolidated.  *See In re Amy Unknown*, 636 F.3d at 192–93.  The panel assigned to hear Amy's appeal granted her rehearing request.  *Id.* at 193.  That panel then granted mandamus and rejected a requirement of proof of proximate cause in § 2259 because "[i]ncorporating a proximate causation requirement where none exists is a clear and indisputable error," but declined to reach the question of whether crime victims such as Amy have a right to an appeal.  *Id.* at 193, 201.  The panel remanded for the district court's entry of a restitution order.  *Id.* at 201.

**B**

In *United States v. Wright*, 639 F.3d 679 (5th Cir. 2011), a separate panel of this court heard the appeal of Michael Wright ("Wright").  Like Paroline, Wright pled guilty to 18 U.S.C. § 2252 for possession of over 30,000 images of child pornography, which included images of Amy's abuse.[4]  The Government

---

[4] Wright pled guilty pursuant to a plea agreement in which he generally waived his right to appeal but reserved his right to appeal "any punishment in excess of the statutory maximum."  Wright's plea agreement stated that "the restitution provisions of Sections 3663 and 3663A of Title 18, United States Code will apply" and made no reference to § 2259.  During the guilty plea colloquy, the district court restated the terms of the plea agreement regarding Wright's appeal waiver.  The district court asked Wright if he understood all the rights he was waiving, and he responded that he did.  The district court also asked Wright if he understood that he "also may be required to reimburse any victim for the amount of his or her loss under the Victim Restitution Law, if that term is applicable."  Wright again said he understood.
    The Government seeks to assert the appeal waiver Wright signed only if we hold that restitution is limited by proximate cause in all respects.  It concedes, however, that Wright's

No. 09–41238
c/w No. 09–41254
No. 09–31215

sought restitution for Amy under § 2259, supporting its request with the same psychiatric report Amy provided in Paroline's case. The district court awarded Amy $529,661 in restitution, explaining that "[t]his amount was reached by adding the estimated costs of the victim's future treatment and counseling at $512,681.00 and the costs of the victim's expert witness fees at $16,980.00." *United States v. Wright*, No. 09-CR-103, at 5 (E.D. La. Dec. 16, 2009). The district court did not explain why it awarded no restitution for the other amounts that Amy had requested and made no reference to a proximate cause requirement. *See id.* Observing that Amy had been awarded restitution in another district court, the district court further explained that "[t]he restitution ordered herein is concurrent with any other restitution order either already imposed or to be imposed in the future payable to this victim." USCA5 R. 111–112. Wright appealed to contest the restitution order.

The *Wright* panel first found that the appeal waiver in Wright's plea agreement did not foreclose his right to appeal the restitution order. *Wright*, 639 F.3d at 683. Then, applying *Amy*'s holding, the Wright panel concluded that Amy was entitled to restitution but that the district court had given inadequate reasons for the award it assessed. *Id.* at 685–86. The panel remanded for further findings regarding the amount of the award. *Id.* at 686. The three

---

appeal waiver would not be valid if the en banc court holds that § 2259 lacks a proximate cause requirement that covers all categories of losses because Wright did not waive his right to appeal a sentence unbounded by a proximate cause limitation. Because we hold today that § 2259's isolated "proximate result" language does not cloak all categories of losses with a proximate cause requirement, we need not further address the appeal waiver issue. We have repeatedly held that appeal waivers the Government does not seek to enforce are not self-enforcing and that the Government can effectively "waive the waiver." *See United States v. Acquaye*, 452 F.3d 380, 381 (5th Cir. 2006). Given the Government's concession and our holding on the substance of § 2259, we conclude that the Government is not seeking to enforce the appeal waiver in this case. Accordingly, we conclude that the appeal waiver does not bar Wright's appeal. *See id.*

No. 09–41238
c/w No. 09–41254
No. 09–31215

members on the *Wright* panel, however, joined a special concurrence that questioned *Amy*'s holding and suggested that the court rehear both cases en banc, in part because this court was the first circuit to hold that a proximate cause requirement does not attach to the "full amount of . . . losses" under § 2259(b)(3). *See id.* at 689–90, 692 (Davis, J., specially concurring).

This court held the mandates in both *Amy* and *Wright*. A majority of this court's members voted to rehear these opinions en banc to resolve the question of how to award restitution under § 2259 and to address other related questions raised by these appeals. *See In re Amy Unknown & United States v. Wright*, 668 F.3d 776 (5th Cir. 2012) (granting rehearing en banc).

## II

In rehearing *Amy* and *Wright* en banc, we address the following issues: (1) whether the Crime Victims' Rights Act ("CVRA") grants crime victims a right to an appeal or, if not, whether this court should review Amy's mandamus petition under the standard this court has applied to supervisory writs; (2) whether 18 U.S.C. § 2259 requires the Government to show a defendant's criminal acts proximately caused a victim's injuries before a district court may award restitution; and (3) whether, in light of our holding with respect to § 2259, the district courts in *Amy* and *Wright* erred.

## A

Amy petitioned for mandamus and, after this court initially denied her relief, appealed from the district court's restitution order. In the panel opinion in *Amy*, this court granted her mandamus on rehearing under our traditional mandamus inquiry, which this court held in *In re Dean*, 527 F.3d 391, 394 (5th Cir. 2008) (per curiam), applies to appeals under the CVRA. *See Amy*, 636 F.3d at 197–98. In *Amy*, the panel declined to decide whether the CVRA entitled her

7

No. 09–41238
c/w No. 09–41254
No. 09–31215

to bring a direct appeal, *see id.* at 194–97, even though *Dean* seemingly foreclosed that argument. *See Dean*, 527 F.3d at 394 (rejecting victims' assertion that the standards governing an appeal apply on CVRA review).   Amy asks the en banc court to construe the CVRA to guarantee crime victims the right of appeal and alternatively asks the court to hear her mandamus petition under our supervisory mandamus power, which would hold her mandamus petition to a less onerous standard of review than *Dean* requires.

### 1

The CVRA grants crime victims, including Amy, "[t]he right to full and timely restitution as provided in law," 18 U.S.C. § 3771(a)(6), and makes explicit that crime victims, their representatives, and the Government may move the district court to enforce that right.   *Id.* § 3771(d)(1); *see id.* § 3771(e) (defining "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense.").   The CVRA further commands that "[i]n any court proceeding involving an offense against a crime victim, the court shall ensure that the crime victim is afforded [this right]." *Id.* § 3771(b)(1).   Where a district court denies a victim relief, the CVRA provides that

> [T]he movant may petition the court of appeals for a writ of mandamus.  The court of appeals may issue the writ on the order of a single judge pursuant to circuit rule or the Federal Rules of Appellate Procedure.  The court of appeals shall take up and decide such application forthwith within 72 hours after the petition has been filed.

*Id.* § 3771(d)(3); *see id.* § 3771(d)(5)(B) (requiring the victim to petition for mandamus within fourteen days).   The CVRA further grants the Government, "[i]n any appeal in a criminal case," the authority to "assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal

8

No. 09–41238
c/w No. 09–41254
No. 09–31215

relates," *id.* § 3771(d)(4), and makes clear that "[n]othing in this chapter shall be construed to impair the prosecutorial discretion of the Attorney General or any officer under his direction." *Id.* § 3771(d)(6).

Amy's argument effectively requires us to address two questions: first, whether the CVRA entitles crime victims to an appeal; and second, whether the CVRA entitles crime victims' mandamus petitions through the review standards governing an appeal. First, we observe that the plain text of the CVRA expressly grants crime victims only a right to mandamus relief and makes no mention of any right of crime victims to an appeal. *See* 18 U.S.C. § 3771(d)(3); *Dean,* 527 F.3d at 394. In contrast, the CVRA grants the Government the right to mandamus while also retaining the Government's right to a direct appeal. *Id.* § 3771(d)(4) (allowing only the Government to "assert as error the district court's denial of any crime victim's right in the proceeding to which the appeal relates."). In interpreting the statute, absent contrary indication, we presume that Congress "legislated against the background of our traditional legal concepts," *United States v. U.S. Gypsum Co.,* 438 U.S. 422, 437 (1978), including that crime victims have no right to appeal. *See Marino v. Ortiz,* 484 U.S. 301, 304 (1988) (citing *United States ex rel. Louisiana v. Jack,* 244 U.S. 397, 402 (1917)) (explaining that "[t]he rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment.").

Amy fails to show any language in the statute that reflects Congress' intent to depart from this principle. Instead, she protests that before the CVRA's enactment, this court heard appeals from nonparties with a direct interest in aspects of criminal prosecutions and contends that this suggests that the crime victims retain a similar right to appeal under the CVRA. *See Amy,* 636 F.3d at 195–96 (discussing *United States v. Briggs,* 514 F.2d 794 (5th Cir.

9

No. 09–41238
c/w No. 09–41254
No. 09–31215

1975); *United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983)). The cases Amy cites, however, are unconvincing. They allowed non-parties to appeal discrete pre-trial issues with constitutional implications, which were unrelated to the merits of the criminal cases from which they arose. *See Briggs*, 514 F.2d at 799 (holding that persons named as unindicted co-conspirators in an indictment had standing to challenge the power of a grand jury to charge them with criminal conduct without indicting them); *Chagra*, 701 F.2d at 360 (allowing newspapers and a reporter to appeal an order restricting their access to a pretrial bail reduction hearing). These cases do not stand for the proposition that this court has allowed victims any post-judgment right of appeal and, moreover, do not support the inference that Congress drafted the CVRA with the understanding that crime victims had any right to an appeal. Because nothing in the CVRA suggests that Congress intended to grant crime victims the right to an appeal or otherwise vary the historical rule that crime victims do not have the right of appeal, we conclude that the CVRA grants crime victims only mandamus review.[5]

---

[5] Six of our sister circuits generally favor a reading of the statute that allows no appeal, and no circuit has expressly granted victims the right to an appeal under the CVRA. *See United States v. Alcatel-Lucent France, SA*, Nos. 11–12716, 11–12802, 2012 WL 3139014, at *5 (11th Cir. Aug. 3, 2012); *United States v. Monzel*, 641 F.3d 528, 533 (D.C. Cir.), *cert. denied, Amy, Victim in Misty Child Pornography Series v. Monzel*, 132 S. Ct. 756 (2011); *United States v. Aguirre–Gonzalez*, 597 F.3d 46, 53–56 (1st Cir. 2010); *In re Antrobus*, 519 F.3d 1123, 1128–30 (10th Cir. 2008); *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1017 (9th Cir. 2006); *In re W.R. Huff Asset Mgmt. Co.*, 409 F.3d 555, 562–63 (2d Cir. 2005); *see also In re Acker*, 596 F.3d 370, 373 (6th Cir. 2010) ("[W]here the [purported victim's] direct appeal was filed at the same time as the [CVRA] mandamus petition and raises the identical issues, there is no additional right of appeal.").

Further supporting this conclusion is that under the Victim and Witness Protection Act ("VWPA"), the CVRA's predecessor in which restitution was optional rather than mandatory, at least one circuit court denied victims a right to any relief because "[n]owhere in the statute does Congress suggest that the VWPA was intended to provide victims with a private remedy to sue or appeal restitution decisions." *United States v. Mindel*, 80 F.3d 394, 397 (9th Cir. 1996). This same logic extends to limit the right of crime victims under the CVRA to only the

No. 09–41238
c/w No. 09–41254
No. 09–31215

Next, we consider whether the CVRA nonetheless requires appellate courts to apply the standard of review governing a direct criminal appeal to mandamus petitions, and conclude it does not. When assessing the meaning of the term "mandamus" in the CVRA, we presume that this "statutory term . . . ha[s] its common-law meaning," absent contrary indication. *Taylor v. United States*, 495 U.S. 575, 592 (1990). The Supreme Court has explained that "[t]he remedy of mandamus is a drastic one, to be invoked only in extraordinary situations." *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 402 (1976); *accord Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). "[T]he writ has traditionally been used in the federal courts only . . . to compel it to exercise its authority when it is its duty to do so." *Kerr*, 426 U.S. at 402 (quotation marks omitted). "[O]nly exceptional circumstances amounting to a judicial usurpation of power will justify the invocation of this extraordinary remedy." *Id.* (quotation marks omitted). Mandamus traditionally "is not to be used as a substitute for an appeal, or to control the decision of the trial court in discretionary matters." *Plekowski v. Ralston-Purina Co.*, 557 F.2d 1218, 1220 (5th Cir. 1977). Issuance of the writ is largely a matter of discretion with the court to which the petition is addressed. *See Schlagenhauf v. Holder*, 379 U.S. 104, 112 n.8 (1964).

Certain aspects of the CVRA convince us that Congress intended mandamus in its traditional sense when it selected the word "mandamus." *See*

---

mandamus relief that the statute clearly expresses. *See id.*

   The cases Amy relies on, moreover, further disfavor allowing a § 1291 appeal. Any persuasive force that *In re Siler*, 571 F.3d 604, 608 (6th Cir. 2009) (allowing crime victims to appeal under § 1291 when they sought the use of a presentencing report in a subsequent civil suit), may have is undercut by the Sixth's Circuit later decision not to extend a right of appeal to a crime victim who simultaneously petitioned for mandamus relief. *See In re Acker*, 596 F.3d 370, 373 (6th Cir. 2010). Likewise, the Third Circuit's decision allowing a crime victim a § 1291 appeal, without any analysis, in *United States v. Kones*, 77 F.3d 66, 68 (3d Cir. 1996), also fails to convince us that allowing crime victims a § 1291 appeal is proper.

No. 09–41238
c/w No. 09–41254
No. 09–31215

*Taylor*, 495 U.S. at 592.  Reading the statute's provisions together, the CVRA seems to intentionally limit victims' right to review as an extraordinary remedy because it authorizes review only where a district court fails to fulfill a statutory duty; the statute does not extend victims' right to review to situations where a district court acts on a discretionary matter.  *See Kerr*, 426 U.S. at 402.  To explain, the CVRA lists eight rights that it ensures crime victims, including the right to restitution.  18 U.S.C. § 3771(a)(1)–(8).  The restrictive statement, "A crime victim has the following rights," precedes the list of those rights and supports the conclusion that the CVRA's grant of rights is exclusive.  *Id.* § 3771(a).  And only where the district court denies a motion seeking to assert one of those rights does the CVRA allow a victim to seek the review of an appellate court.  *See id.* § 3771(d)(3).  This limitation suggests that in granting relief, the district court retains discretion to select the appropriate means to ensure victims' rights, and that victims may only properly seek appellate intervention where the district court clearly fails to "exercise its authority when it is its duty to do so."  *See Kerr*, 426 U.S. at 402; *see also Plekowski*, 557 F.2d at 1220 ("The remedy of mandamus . . . is not to be used . . . to control the decision of the trial court in discretionary matters.").  Under this reading, only the Government would retain a right to appeal even seemingly discretionary actions, *see* 18 U.S.C. § 3771(d)(4), and could elect to appeal the district court's order to the extent it exercises its own prosecutorial discretion to do so.  *See id.* § 3771(d)(6).  If we were to instead read the CVRA as extending a right of appeal to victims, we would expand the rights granted to crime victims and simultaneously erode the CVRA's attempt to preserve the Government's discretion.  *See id.*  A reading of the statute that limits victims' appellate review to the traditional mandamus inquiry thus respects both the CVRA's preservation of the Government's and the

12

No. 09–41238
c/w No. 09–41254
No. 09–31215

district court's traditional discretion while safeguarding the limited rights the CVRA grants.

The very short timeline in which appellate courts must act, and the fact that a single circuit judge may rule on a petition, confirm the conclusion that Congress intended to limit crime victims' appellate relief under the CVRA to traditional mandamus review. *See* 18 U.S.C. § 3771(d)(3). These requirements reflect that appellate courts must grant relief quickly, but rarely, as "a drastic remedy generally reserved for really 'extraordinary' cases." *In re E.E.O.C.*, 709 F.2d 392, 394 (5th Cir. 1983) (citing *Kerr*, 426 U.S. at 402).

Amy has failed to show that Congress intended to grant crime victims anything other than traditional mandamus relief under the CVRA.[6] While, as

---

[6] Amy nevertheless insists that the CVRA's requirements that the courts of appeals "take up and decide" a petition and "ensure that the crime victim is afforded" all his or her rights in a court proceeding support recognizing victims' right to an appeal and disfavor an interpretation that would provide for traditional mandamus review, which is typically discretionary. *See* 18 U.S.C. §§ 3771(b)(1), (d)(3). The requirement that appellate courts "take up and decide" a petition, however, relates directly to the short time period in which Congress directs appellate courts to act; this short time period, as we have already explained, favors, rather than opposes, the use of mandamus. *See supra*. Similarly, Amy fails to note that the command that federal courts "ensure that the crime victim is afforded" certain rights falls within a section labeled "In general." *See id.* § 3771(b)(1). Placed in context, this language merely reflects Congress' intention to make plain that federal courts must guard the specific, but necessarily limited, rights spelled out in the CVRA through the processes prescribed in its other subsections. This language does not suggest that the grant of mandamus in this context is not discretionary. Amy's arguments are unavailing.

Only two circuits support Amy's position that she is entitled to something more closely resembling direct appellate standards of review. With little analysis, the Second Circuit has concluded an abuse of discretion standard should govern CVRA mandamus petitions. *See In re W.R. Huff*, 409 F.3d at 562–63. That court divined a relaxed standard from the express terms of the statute and reasoned only that "[i]t is clear . . . that a petitioner seeking relief pursuant to the mandamus provision set forth in § 3771(d)(3) need not overcome the hurdles typically faced by a petitioner seeking review of a district court determination through a writ of mandamus." *Id.* at 562–63. The lack of reasoning accompanying the Second Circuit's use of a relaxed standard of review fails to convince us that anything other than traditional mandamus standards should govern our review of CVRA petitions.

The Ninth Circuit also has provided for relaxed review, focusing on legal error in reviewing a crime victim's mandamus petition under the CVRA. To justify this relaxed review,

No. 09–41238
c/w No. 09–41254
No. 09–31215

Amy insists, it may be more difficult for a crime victim to enforce rights through mandamus than appeal, this limitation reflects the express language of the statute and honors the common law tradition in place when the CVRA was drafted.

### 2

Our conclusion that the CVRA does not provide crime victims with appellate review does not foreclose Amy's somewhat different request that we apply our supervisory mandamus power of review to her mandamus petition, which would lower the hurdles to relief under mandamus. *See In re McBryde*, 117 F.3d 208, 223 (5th Cir. 1997) (acknowledging that "courts of appeals have possessed the power to issue supervisory writs of mandamus in order to prevent practices posing severe threats to the proper functioning of the judicial process"); *In re E.E.O.C.*, 709 F.2d at 395 (in allowing a supervisory writ to proceed as a one-time-only device, this court advised it would only grant the writ if "there is 'usurpation of judicial power' or a clear abuse of discretion" and the movant

---

the Ninth Circuit emphasized that "[t]he CVRA explicitly gives victims aggrieved by a district court's order the right to petition for review by writ of mandamus, provides for expedited review of such a petition, allows a single judge to make a decision thereon, and requires a reasoned decision in case the writ is denied." *Kenna*, 435 F.3d at 1017. But a later decision suggests that the Ninth Circuit's interpretation in *Kenna* was influenced by the facts of that case and a desire to reach a question of law that its traditional mandamus inquiry would not have allowed; in that later case, the Ninth Circuit explained that it applies its normal test to CVRA mandamus petitions, and merely emphasizes the question of legal error in assessing a crime victim's right to relief. *See In re Andrich*, 668 F.3d 1050, 1051 (9th Cir. 2011) (per curiam).

While Amy asserts that two additional circuits favor her position, those courts have not clearly accepted her position, and it is unclear that they would do so if presented with the opportunity to fully analyze the legal issues this question presents. *See In re Stewart*, 552 F.3d 1285 (11th Cir. 2008) (granting mandamus on question of whether a person was a crime victim who could participate in district court proceedings without reviewing traditional mandamus factors); *In re Walsh*, 229 F. App'x 58, 60–61 (3d Cir. 2007) (in dicta, agreeing with the Second and Ninth Circuits that "mandamus relief is available under a different, and less demanding, standard under 18 U.S.C. § 3771 in the appropriate circumstances.").

No. 09–41238
c/w No. 09–41254
No. 09–31215

showed it had a clear and indisputable right to a writ) (quoting *Schlagenhauf*, 379 U.S. at 110). Even so, we need not resolve this question. Our traditional inquiry suffices to afford Amy the relief she requests. *See* IV-A *infra*. *Cf. Aguirre–Gonzalez*, 597 F.3d at 53–56 (declining to settle question of standard of review because neither the traditional mandamus standard nor a more relaxed standard would afford relief in the circumstances of that case).

Because we hold that the CVRA entitles Amy to only mandamus relief, we dismiss her appeal. Under our traditional mandamus inquiry, we will grant Amy's requested mandamus only if (1) she has no other adequate means to attain the desired relief; (2) she has demonstrated a clear and indisputable right to the issuance of a writ; and (3) in the exercise of our discretion, we are satisfied that the writ is appropriate. *See Dean*, 527 F.3d at 394.

## B

Wright appeals from the district court's restitution order. This court reviews the legality of the restitution order de novo. *United States v. Arledge*, 553 F.3d 881, 897 (5th Cir. 2008). If the restitution order is legally permitted, we then review the amount of the order for an abuse of discretion. *Id.*; *United States v. Ollison*, 555 F.3d 152, 164 (5th Cir. 2009).

## III

To resolve Amy's mandamus petition and Wright's appeal, we must first ascertain the level of proof required to award restitution to Amy and crime victims like her under 18 U.S.C. § 2259. The parties' dispute turns on the interpretation and effect of the words "proximate result" in § 2259(b)(3)(F).

## A

Our analysis again begins with the text of the statute. *See Watt*, 451 U.S. at 265; *In re Rogers*, 513 F.3d 212, 225 (5th Cir. 2008). If § 2259's language is

plain, our "sole function" is to "enforce it according to its terms" so long as "the disposition required by the text is not absurd." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004) (internal quotation marks omitted); *see also Bates v. United States*, 522 U.S. 23, 29 (1997) (holding that courts "ordinarily" should "resist reading words or elements into a statute that do not appear on its face."). The Supreme Court has explained that "[s]tatutory construction 'is a holistic endeavor.'" *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (quoting *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988)). "This Court naturally does not review congressional enactments as a panel of grammarians; but neither do we regard ordinary principles of English prose as irrelevant to a construction of those enactments." *Flora v. United States*, 362 U.S. 145, 150 (1960). Although "the meaning of a statute will typically heed the commands of its punctuation[,] . . . a purported plain-meaning analysis based only on punctuation is necessarily incomplete." *Bank of Or.*, 508 U.S. at 454. "[A]t a minimum," our analysis "must account for a statute's full text, language as well as punctuation, structure, and subject matter." *Id.* at 455.

Only after we apply principles of statutory construction, including the canons of construction, and conclude that the statute is ambiguous, may we consult legislative history. *Carrieri v. Jobs.com, Inc.*, 393 F.3d 508, 518–19 (5th Cir. 2004). For statutory language to be ambiguous, however, it must be susceptible to more than one reasonable interpretation or more than one accepted meaning. *Id.* at 519. Where "the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992) (quoting *Rubin v. United States*, 449 U.S. 424, 430 (1981)).

No. 09–41238
c/w No. 09–41254
No. 09–31215

The language of 18 U.S.C. § 2259 reflects a broad restitutionary purpose. *See United States v. Laney*, 189 F.3d 954, 966 (9th Cir. 1999) ("Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse."); *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999) ("Congress [in § 2259] mandated broad restitution for a minor victim."). Section 2259(a) mandates that district courts "shall order restitution for any offense under this chapter," including the offense to which Paroline and Wright pled guilty, 18 U.S.C. § 2252. Section 2259(b)(1) specifies that a restitution order "shall direct the defendant to pay the victim . . . the full amount of the victim's losses."[7]

Section 2259(b)(3) defines the term "the full amount of the victim's losses," contained in § 2259(b)(1), as

> [A]ny costs incurred by the victim for–
> (A) medical services relating to physical, psychiatric, or psychological care;
> (B) physical and occupational therapy or rehabilitation;
> (C) necessary transportation, temporary housing, and child care expenses;
> (D) lost income;
> (E) attorneys' fees, as well as other costs incurred; and
> (F) any other losses suffered by the victim as a proximate result of the offense.

Section 2259(b)(4) reinforces that "[t]he issuance of a restitution order under this section is mandatory," *id.* § 2259(b)(4)(A), and instructs that "[a] court may not decline to issue an order under this section because of–(i) the economic circumstances of the defendant; or (ii) the fact that a victim has, or is entitled to, receive compensation for his or her injuries from the proceeds of insurance or

---

[7]  A "victim" is an "individual harmed as a result of a commission of a crime under this chapter." *Id.* § 2259(c).

17

No. 09–41238
c/w No. 09–41254
No. 09–31215

any other source." *Id.* § 2259(b)(4)(B).  To guide the district courts in awarding restitution, § 2259(b)(2) instructs courts to issue and enforce restitution orders "in accordance with section 3664 and in the same manner as an order under 3663A."

## B

The district court in *Paroline* rejected Amy's argument that § 2259 requires an award of "the full amount of [her] losses."  Instead, resorting to the Supreme Court's decision in *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, 348 (1920), which explained that "[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all," the district court extended the "proximate result" language contained in § 2259(b)(3)(F) to apply to the losses described in subsections (A) through (E). *See Paroline*, 672 F. Supp. 2d at 788 (also citing *Fed. Mar. Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 734 (1973)).  In construing the statute, the district court expressed its concern that "a restitution order under section 2259 that is not limited to losses proximately caused by the defendant's conduct would under most facts, including these, violate the Eighth Amendment," *id.* at 789, and that an alternative "interpretation would be plainly inconsistent with how the principles of restitution and causation have historically been applied." *Id.* at 790.  In reversing the district court's holding, the *Amy* panel rejected a generalized proximate cause requirement and stressed that the causation requirement in the definition of "victim," together with § 3664's mechanism for joint and several liability, surmounts any Eighth Amendment concerns. *See Amy*, 636 F.3d at 200–01.

18

No. 09–41238
c/w No. 09–41254
No. 09–31215

Unlike the district court in *Paroline*, the *Wright* district court seemed to accept Amy's argument to a limited degree, as it awarded all of the restitution she requested for her future treatment and counseling, and the costs of her expert witness fees.  Although the *Wright* panel accepted *Amy*'s holding as binding precedent in reviewing the district court's restitution award, *Wright*'s special concurrence, tracing the reasoning of the district court in *Amy* and challenging the panel's decision not to limit § 2259 to damages proximately caused by a defendant's criminal actions, presaged this en banc rehearing.  *See Wright*, 639 F.3d at 686–89 (Davis, J., specially concurring).

In this en banc rehearing, Amy maintains that § 2259 is a mandatory statute requiring district courts to award full restitution to victims of child pornography.  In her view, the plain language of the statute dictates that the proximate result language in § 2259(b)(3)(F) is limited to that category of losses and does not apply to the categories of losses described in § 2259(b)(3)(A)–(E).

The Government contends that § 2259(b)(3) conditions all of a victim's recoverable losses on a showing that those losses proximately resulted from the offense.  Drawing on *Porto Rico Railway*, the Government asserts that the statutory text reflects Congress' intent to condition all recoverable losses on a showing of proximate cause.  Without citing to precedent, the Government urges us "to presume that Congress adhered to the usual balance in the law of remedies: to hold defendants fully accountable for the losses associated with their conduct but in a manner that respects the deeply-rooted principle of proximate causation."  The Government further asserts that there is nothing absurd in the conclusion that Congress intended this limiting principle to apply to all categories of losses.  Invoking a recent Supreme Court case analyzing civil tort liability under the Federal Employers' Liability Act in support of this proposition, the Government reasons that "the very purpose of a proximate-

19

No. 09–41238
c/w No. 09–41254
No. 09–31215

cause limitation is to prevent infinite liability." *See CSX Transp., Inc., v. McBride*, 131 S. Ct. 2630, 2642 (2011). The Government advises the court not to delve into legislative materials and also stresses that seven circuits have rejected Amy's reading of the statute.

Paroline similarly construes the "proximate result" language in the statute and relies on the construction of other restitution statutes to support his position. Both Paroline and Wright draw on legislative materials to assert that in drafting § 2259, Congress intended to incorporate a proximate cause requirement.[8]

## C

### 1

Our plain reading of § 2259 leads us to the following conclusion: Once a district court determines that a person is a victim, that is, an "individual harmed as a result of a commission of a crime" under the chapter that relates to the sexual exploitation and abuse of children, § 2259 requires the district court to order restitution for that victim. *See* 18 U.S.C. § 2259(a),(b)(4)(A),(c). The restitution order that follows must encompass "the full amount of the victim's losses." *Id.* § 2259(b)(1). Those losses include five categories of specific losses—medical services related to physical, psychiatric, or psychological care; physical and occupational therapy or rehabilitation; necessary transportation, temporary housing, and childcare expenses; lost income; and attorney's fees and costs—and one category of "other losses suffered by the victim as a proximate result of the offense." *Id.* § 2259(b)(3). The rule of the last antecedent, recently applied by the Supreme Court in *Barnhart v. Thomas*, 540 U.S. 20, 26 (2003),

---

[8] Of course, we cannot consult these materials unless we conclude that § 2259's text is ambiguous. *See Carrieri*, 393 F.3d at 518–19. Even if we were to consult these materials, they are inconclusive at best.

No. 09–41238
c/w No. 09–41254
No. 09–31215

instructs that "a limiting clause or phrase," such as the "proximate result" phrase in § 2259(b)(3)(F), "should ordinarily be read as modifying only the noun or phrase that it immediately follows." "[T]his rule is not an absolute and can assuredly be overcome by other indicia of meaning," but "construing a statute in accord with the rule is 'quite sensible as a matter of grammar.'" *Id.* (quoting *Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993)); *accord* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 144 (2012) ("This rule is the legal expression of a commonsense principle of grammar").

The structure and language of § 2259(b)(3) limit the phrase "suffered by the victim as a proximate result of the offense" in § 2259(b)(3)(F) to the miscellaneous "other losses" contained in that subsection. We see no "other indicia of meaning" in the statute to suggest that the rule of the last antecedent does not apply here. *See id.* Despite the clear terms of the statute, other courts and the parties before us raise arguments in favor of a generalized proximate cause requirement based on (a) canons of statutory construction, (b) traditional causation principles, and (c) possible absurd results. We address—and dismiss—each in turn.

**a**

First, the Government, Paroline, Wright, and Judge Davis's dissenting opinion press the importance of *Porto Rico Railway* and other caselaw relied on by the district court. As did the *Amy* panel, however, we doubt *Porto Rico Railway*'s applicability here. *Porto Rico Railway* concerned the following statute: "Said District Court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States not domiciled in Porto Rico . . . ." *Porto Rico Ry.*, 253 U.S. at 346. The Supreme

21

No. 09–41238
c/w No. 09–41254
No. 09–31215

Court read the words, "not domiciled in Porto Rico," to apply equally to "citizens or subjects of a foreign state or states" and "citizens of a state, territory, or district of the United States." *Id.* at 348. The Supreme Court explained,"When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Id.* at 348.

Deprived of its context, *Porto Rico Railway*'s rule can be contorted to support the statutory interpretation urged by the Government and apply the "proximate result" language in § 2259(b)(3)(F) to the five categories of loss that precede it.  But applying that rule here to require generalized proximate cause would disregard that the list in *Porto Rico Railway*'s statute is significantly different than the one central to this appeal.  The statute analyzed in *Porto Rico Railway* featured a long sentence, unbroken by numbers, letters, or bullets, with two complex noun phrases sandwiching the conjunction "or," with the modifier "domiciled in Porto Rico" following the conjoined phrases.  The structure of the sentence required the reading the Supreme Court gave it; the phrase "domiciled in Porto Rico" modified the nouns at the head of the two phrases, "citizens or subjects" and "citizens."  The Supreme Court expressed its concern that a different construction would have left the reader with a fragmented phrase, which would be overly broad in application, and which, in turn, would have failed to satisfy the statute's overarching purpose to curtail federal courts' jurisdiction. *See Porto Rico Ry.*, 253 U.S. at 348.

Section 2259, in contrast, begins with an introductory phrase composed of a noun and verb ("'full amount of the victim's losses' includes any costs incurred by the victim for—") that feeds into a list of six items, each of which are independent objects that complete the phrase.  Only the last of these items contains the limiting language "proximate result." A double-dash opens the list,

22

No. 09–41238
c/w No. 09–41254
No. 09–31215

and semi-colons separate each of its elements, leaving § 2259(b)(3) with a divided grammatical structure that does not resemble the statute in *Porto Rico Railway*, with its flowing sentence that lacks any distinct separations. Of course, we do not sit "as a panel of grammarians," *Flora*, 362 U.S. at 150, but we cannot ignore that "the meaning of a statute will typically heed the commands of its punctuation." *Bank of Or.*, 508 U.S. at 454. The structural and grammatical differences between § 2259 and the statute in *Porto Rico Railway* forcefully counsel against applying *Porto Rico Railway* to the current statute to reach the *Paroline* district court's reading.[9]

*Seatrain*, the other case relied on by the district court, is similarly inapplicable. *See Seatrain*, 411 U.S. at 726. *Seatrain* analyzed a federal antitrust statute that included a seven-category list. *Id.* at 732. All items on the list but the third referred to ongoing activity; the seventh category was a catchall category phrased as "or in any manner providing for an exclusive, preferential, or cooperative working arrangement." *Id.* at 732–33. The Government urged the Supreme Court to construe this third category as concerning a one-time activity. *Id.* at 732. The Court rejected that argument because a broad reading of the statute would conflict with the legal principle that antitrust laws are strictly construed. *Id.* at 733. To aid in a narrow construction of the statute, the Court applied the rule of statutory construction that "[catchall] clauses are to be read as bringing within a statute categories similar in type to those specifically

---

[9] Further, *Porto Rico Railway* also commands that where the statute in question "manifests a general purpose . . . [and] the application of the clause were doubtful, we should so construe the provision as to effectuate the general purpose of Congress." 253 U.S. at 348. The grammar of § 2259, viewed in light of § 2259's broad restitutionary purpose as expressed by its plain terms, confirms that our reading is correct. *See Crandon*, 173 F.3d at 126 ("Congress [in § 2259] mandated broad restitution for a minor victim."); *Laney*, 189 F.3d at 966 ("Section 2259 is phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse.").

No. 09–41238
c/w No. 09–41254
No. 09–31215

enumerated" and concluded that the last catchall phrase indicated that Congress intended all the activities to penalize only ongoing antitrust activities. *Id.* at 734 (citing 2 J. SUTHERLAND, STATUTES & STATUTORY CONSTRUCTION § 4908 *et seq.* (3d ed. 1943)). Here, we do not face a statutory scheme that requires narrow construction. *See Crandon*, 173 F.3d at 126; *Laney*, 189 F.3d at 966. *Seatrain's* weight in interpreting § 2259 is questionable at best.

*Seatrain's* rule is at odds with the rule of last antecedent on which we rely; the rule of last antecedent, moreover, provides a reading faithful to § 2259's broad restitutionary purpose. To illustrate, in *Barnhart v. Thomas*, the Supreme Court reviewed an agency's interpretation of a statute that states

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do *his previous work* but cannot, considering his age, education, and work experience, engage in *any other kind of substantial gainful work* which exists in the national economy.

*Barnhart*, 540 U.S. at 23 (emphases added). Applying the rule of the last antecedent, the Supreme Court held that the words "which exists in the national economy" referred only to the noun "any other kind of substantial gainful work" and not to the noun "his previous work." *Id.* at 24–27. In support of this holding, the Supreme Court reasoned that the words "any other" in the second phrase did not show the "contrary intention" necessary to overcome the rule of the last antecedent to apply that phrase to the first. *Id.* at 27–28.

The Supreme Court also applied the rule of last antecedent in *Jama v. Immigration & Customs Enforcement*, 543 U.S. 335 (2005) to a statute that included a complete sentence that fed into a seven-category list. Each category on the list was punctuated with a period; only the last category on the list

24

No. 09–41238
c/w No. 09–41254
No. 09–31215

contained a limiting clause. *Id.* at 340. Drawing on the grammatical structure of the list, the Supreme Court concluded that applying the limiting clause to the other items in the list "stretches the modifier too far."[10] *Id.* at 343.

As we have already explained, the grammatical structure of § 2259(b)(3) reflects the intent to read each category of loss separate from the one that preceded it and limit the application of the "proximate result" language in § 2259(b)(3)(F). Comparing the Supreme Court's more recent articulations of the rule of the last antecedent in *Barnhart* and *Jama* to the older rules of statutory construction expressed in *Porto Rico Railway* and *Seatrain* confirms that application of the rule of the last antecedent to limit the proximate result language to the subsection in which it is contained makes more sense here. *See*

---

[10] In *Barnhart*, Justice Scalia provided an example of application of this rule in ordinary life that reveals the commonsensical aspect of the error in applying the proximate result language of § 2259(b)(3)(F) to the five categories of losses that precede it:

> Consider, for example, the case of parents who, before leaving their teenage son alone in the house for the weekend, warn him, "You will be punished if you throw a party or engage in any other activity that damages the house." If the son nevertheless throws a party and is caught, he should hardly be able to avoid punishment by arguing that the house was not damaged. The parents proscribed (1) a party, and (2) any other activity that damages the house. As far as appears from what they said, their reasons for prohibiting the home-alone party may have had nothing to do with damage to the house-for instance, the risk that underage drinking or sexual activity would occur. And even if their only concern was to prevent damage, it does not follow from the fact that the same interest underlay both the specific and the general prohibition that proof of impairment of that interest is required for both. The parents, foreseeing that assessment of whether an activity had in fact "damaged" the house could be disputed by their son, might have wished to preclude all argument by specifying and categorically prohibiting the one activity-hosting a party-that was most likely to cause damage and most likely to occur.

450 U.S. at 27–28.

No. 09–41238
c/w No. 09–41254
No. 09–31215

*id.* at 26. Applying the proximate result language of § 2259(b)(3)(F) to the categories that precede it would "stretch[] the modifier too far" and disregard the structure of § 2259(b)(3) as written. *Jama*, 543 U.S. at 343.

At least three circuits agree that under rules of statutory construction, we cannot read the "proximate result" language in § 2259(b)(3)(F) as applying to the categories of losses in § 2259(b)(3)(A)–(E).[11] *See United States v. Burgess*, 684 F.3d 445, 456–57 (4th Cir. 2012); *United States v. Aumais*, 656 F.3d 147, 153 (2d Cir. 2011); *United States v. Monzel*, 641 F.3d 528, 535 (D.C. Cir.), *cert. denied*, *Amy, Victim in Misty Child Pornography Series v. Monzel*, 132 S.Ct. 756 (2011). But we do not ignore that other circuits have used tools of statutory construction to conclude that the proximate result language in § 2259(b)(3)(F) applies to the five categories of loss that preceded it.[12] *See United States v. McDaniel*, 631 F.3d 1204, 1208–09 (11th Cir. 2011); *United States v. Laney*, 189 F.3d 954, 965 (9th Cir. 1999). These circuits, however, reached this conclusion for reasons we do not find compelling. The Eleventh Circuit, for example, applied *Porto Rico*

---

[11] These circuits, whose approach we discuss later in this opinion, nevertheless inject the statute with a proximate cause requirement through alternative means. *See Monzel*, 641 F.3d at 535; *Aumais*, 656 F.3d at 153.

[12] This disagreement does not mean that our plain-meaning analysis is fraught with any ambiguity. This court considers a statute ambiguous when a statute is subject to more than one reasonable interpretation or more than one accepted meaning. *See Carrieri*, 393 F.3d at 518–19. Even though we choose a course that differs from that of our sister circuits, a division of judicial authority is not enough to render a statute ambiguous. *See Reno v. Koray*, 515 U.S. 50, 64–65 (1995) (discussing this principle in context of rule of lenity). Any "seeming agreement on a standard [in our sister circuits] suggests more harmony than there is." *United States v. Kearney*, 672 F.3d 81, 96 (1st Cir. 2012). The First Circuit has correctly observed that the various circuits have applied a proximate cause test to similar, if not identical facts, yet reached differing outcomes that "cannot be entirely explained by differences in the facts of record." *See id. Compare Monzel*, 641 F.3d at 537–40 (concluding that proximate cause shown but remanding to determine the amount of harm so caused) and *McDaniel*, 631 F.3d at 1209 (holding that the district court did not clearly err in finding proximate cause) *with McGarity*, 669 F.3d at 1267–70 (concluding that proximate cause was not established), *Aumais*, 656 F.3d at 154–55 (same), and *Kennedy*, 643 F.3d at 1263–65 (same).

No. 09–41238
c/w No. 09–41254
No. 09–31215

*Railway*'s rule without accounting for the Supreme Court's application of it. *See* § IV-C-1-a *supra* (exposing the fault in relying on the rule of *Porto Rico Railway*). The Ninth Circuit, moreover, read the "as a result of" language in § 2259's definition of victim together with the "proximate result" language in § 2259(b)(3)(F) to infuse all of § 2259(b)(3) with a proximate cause requirement. *See Laney*, 189 F.3d at 965. Without more in the statute to support that analysis, we cannot accept the Ninth Circuit's conclusion. To do so would contradict the statute's plain terms and be tantamount to judicial redrafting. *See United States v. Naftalin*, 441 U.S. 768, 773 (1979) ("The short answer is that Congress did not write the statute that way."). The rules of statutory construction, properly applied, cannot be used to extend the proximate result language contained in § 2259(b)(3)(F) to the categories of losses preceding it.[13]

---

[13] The dissenting opinion authored by Judge Davis criticizes the majority analysis's inconsistency with *Porto Rico Railway*. Like the Eleventh Circuit, however, Judge Davis's dissent fails to properly account for the statute in that opinion and § 2259's significantly differing contexts. Like the Ninth Circuit, this dissenting opinion attempts to cloak the entire statute with a proximate causation requirement with only scant and scattered causal language as support; the dissenting opinion also resorts to language that applies to the procedures with which restitution is issued and enforced under § 3664 to improperly bolster its position. While making the same errors as our sister circuits, the dissenting opinion does not explain why the rule of last antecedent does not apply. Its position is ultimately unpersuasive.

Judge Southwick's dissenting opinion does not agree with Judge Davis's analysis, but it would similarly resort to the language of § 3664 and § 3663A to require proximate causation. The dissenting opinions are correct that § 2259 directs that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." Judge Southwick's dissenting opinion construes this language to require application of § 3663A's definition of victim as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Congress' directive to rely on the procedures guiding issuance and enforcement of a restitution order, however, does not require us to rely on the substantive definition of "victim" contained in a separate statute when § 2259 has already supplied courts with a different, broader definition of victim.

Lastly, Judge Davis's dissenting opinion claims that under our holding, "if Amy were injured in an automobile accident on the way to a counseling session, those damages would

No. 09–41238
c/w No. 09–41254
No. 09–31215

**b**

Next, we consider the Government's assertion that principles of tort liability limit the award of restitution under § 2259 to losses proximately caused by a defendant's criminal actions. At least three of our sister circuits have accepted this view and derived a proximate cause requirement not from "the catch-all provision of § 2259(b)(3)(F), but rather [from] traditional principles of tort and criminal law and [from] § 2259(c)'s definition of 'victim' as an individual harmed 'as a result' of the defendant's offense." *Monzel*, 641 F.3d at 535; *accord Burgess*, 2012 WL 2821069, at *10; *Aumais*, 656 F.3d at 153; *see Kearney*, 672 F.3d at 96–97 ("It is clear to us that Congress intended some causal link between the losses and the offense to support the mandated restitution."); *United States v. Evers*, 669 F.3d 645, 659 (6th Cir. 2012) (adopting a proximate cause requirement but declining to decide between the two approaches of our sister circuits).

In *United States v. Monzel*, a case that has served as a springboard for other circuits evaluating § 2259, the D.C. Circuit explained that "[i]t is a bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused," and "a restitution statute [presumably] incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply." *Monzel*, 641 F.3d at 535–36 (footnote omitted) (citing WAYNE R. LaFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4,

---

be included in a restitution award." This is not what the majority opinion suggests. Rather, the majority refuses to artificially divide responsibility for a crime victim's losses in circumstances like these here, where multiple defendants are realistically responsible for the victim's indivisible injury. While the dissent attempts to correct this error by adopting a collective causation theory, in doing so, it resorts to an unnecessary source in order to graft upon the clearly-worded statute a causation requirement. Ultimately the dissenting opinion's errors arises from its confusion of the "victim" inquiry which is antecedent to the calculation of "total losses."

No. 09–41238
c/w No. 09–41254
No. 09–31215

at 464, 471 (2d ed. 2003).  The D.C. court posited that "[a]lthough § 2259 is a criminal statute, it functions much like a tort statute by directing the court to make a victim whole for losses caused by the responsible party," *see id.* at 536 n.5, and found nothing in the text of § 2259 indicating Congress' intent to eliminate "the ordinary requirement of proximate cause." *Id.* at 536.  Rather, "[b]y defining 'victim' as a person harmed 'as a result of' the defendant's offense,'" the court inferred that "the statute invokes the standard rule that a defendant is liable only for harms that he proximately caused." *Id.*  The D.C. Circuit worried that without such a limitation, "liability would attach to all sorts of injuries a defendant might indirectly cause, no matter how 'remote' or tenuous the causal connection." *Id.* at 537.

The D.C. Circuit rejected the view expressed by the *In re Amy Unknown* panel, explaining that "[h]ad Congress meant to abrogate the traditional requirement for everything but the catch-all, surely it would have found a clearer way of doing so." *Id.* at 536–37.  The D.C. Circuit criticized this court's decision in *Amy* because "a 'general' causation requirement without a subsidiary proximate causation requirement is hardly a requirement at all"; "[s]o long as the victim's injury would not have occurred but for the defendant's offense, the defendant would be liable for the injury." *Id.* at 537 n.8.  The circuits that have adopted the D.C. Circuit's view have pursued a similar line of reasoning.  We do not accept this reasoning, however, and refuse to inject the statute with a proximate cause requirement based on traditional principles of liability.

The Supreme Court has explained that we "ordinarily" should "resist reading words or elements into a statute that do not appear on its face." *Bates*, 522 U.S. at 29.  But the Supreme Court has also explained that the absence of certain language in a statute does not necessarily mean that Congress intended

29

No. 09–41238
c/w No. 09–41254
No. 09–31215

courts to disregard traditional background principles. *See U.S. Gypsum Co.*, 438 U.S. at 437. To illustrate, with respect to the question of intent in the criminal provisions of the Sherman Act, the Supreme Court has explained that

> "[M]ere omission . . . of intent [in the statute] will not be construed as eliminating that element from the crimes denounced"; instead Congress will be presumed to have legislated against the background of our traditional legal concepts which render intent a critical factor, and "absence of contrary direction [will] be taken as satisfaction with widely accepted definitions, not as a departure from them."

*Id.* at 437 (quoting *Morissette v. United States*, 342 U.S. 246, 263 (1952)). In interpreting the omission of intent in a different statute, the Supreme Court cautioned that "far more than the simple omission of the appropriate phrase from the statutory definition [of the offense] is necessary to justify dispensing with" a mens rea requirement. *Liparota v. United States*, 471 U.S. 419, 426 (1985) (quoting *U.S. Gypsum*, 438 U.S. at 438); *see id.* ("[T]he failure of Congress explicitly and unambiguously to indicate whether mens rea is required does not signal a departure from this background assumption of our criminal law.").

With these principles in mind, the D.C. Circuit's analysis, which infuses § 2259 with a generalized proximate cause requirement, *see Monzel*, 641 F.3d at 535, could comport with the Supreme Court's interpretative guidance—only if § 2259 were naked of causal limitations. *See U.S. Gypsum Co.*, 438 U.S. at 437. But it is not. In assessing whether Congress intended a broad proximate cause limitation, we cannot ignore that § 2259 expresses causal requirements, yet isolates them to two discrete points: the definition of victim as an "individual harmed *as a result of* a commission of a crime," and the limitation of "any other losses" to those that are the *"proximate result* of the offense." *See* 18 U.S.C. §

No. 09–41238
c/w No. 09–41254
No. 09–31215

2259(b),(c) (emphases added). Had Congress omitted all causal language and not required award of the full amount of losses, or positioned the proximate result language so that it would apply to all categories of losses, we could consider the possibility that Congress intended to bind all categories of losses with a proximate cause requirement. Instead, Congress resisted using the phrase "proximate cause" anywhere in § 2259, including § 2259(b)(3)(F) and further required the court to order the "full amount of the victim's losses."[14] *See id.* The selective inclusion and omission of causal requirements in § 2259's subsections, together with language pointing away from ordinary causation, suggest that Congress intended to depart from, rather than incorporate, a tradition of generalized proximate cause.

This interpretation does not render the statute unworkable. The problem seeming to animate the cases in other circuits interpreting § 2259 to require proximate cause is how to allocate responsibility for a victim's harm to any single defendant. *See Burgess*, 2012 WL 2821069, at *12; *Aumais*, 656 F.3d at 153–54; *Kennedy*, 643 F.3d at 1265–66; *Monzel*, 641 F.3d at 537–40. These courts ignore, however, that deciding that a defendant "must pay restitution for the losses he caused (whether proximately or not)," does not resolve how the court "determines how those losses should be allocated in cases where more than one offender caused them"—injecting the statute with traditional proximate causation limitations takes courts no closer to determining what each defendant must pay or to supplying crime victims with the "full amount of [their] losses." *Burgess*, 2012 WL 2821069, at *14 (Gregory, J., concurring in part, dissenting

---

[14]   In stark contrast, other restitution statutes contain more forceful causation requirements that are lacking in § 2259. *Compare* 18 U.S.C. § 3663A(a)(2) (explaining that a victim is "a person directly and proximately harmed as a result of the commission of an offense") *with id.* § 2259(c) (defining a victim as "the individual harmed as a result of a commission of a crime").

No. 09–41238
c/w No. 09–41254
No. 09–31215

in part, and concurring in judgment) ("The question of whether a defendant proximately caused some injury is entirely separate from the question of how those proximately caused losses should be allocated among several offenders."). By focusing on the question of proximate cause, our sister circuits have not made § 2259 any easier to apply and seemingly have ignored that § 2259 has armed courts with tools to award restitution because it instructs courts to refer to the standards under § 3664.[15]  *See id.* § 2259(b)(2) ("An order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A.").

Section 3664 instructs that courts may enforce a restitution order "by all other available and reasonable means," *id.* § 3664(m)(1)(A)(ii), and offers a "means" to aid courts in awarding restitution in a way that would ensure that Amy receives the full amount of her losses, to the extent possible, while also ensuring that no defendant bears more responsibility than is required for full restitution: joint and several liability.  Where "the court finds more than 1 defendant has contributed to the loss of a victim," § 3664(h) instructs that "the court may make each defendant liable for payment of the full amount of

---

[15] Any possible difficulty in ordering restitution in these cases arises not from the statutory construction, but from the type of crime underlying these appeals.  It is quite possible that no other crime is like the crime of distribution, receipt, and possession of child pornography punishable under § 2252: No other crime involves single victims harmed jointly by defendants acting independently in the country.  *See Burgess,* 2012 WL 2821069, at *13 (Gregory, J., concurring in part, dissenting in part, and concurring in judgment) (discussing the indivisibility of the injury to victims of child pornography crimes).  Yet, the unique factual scenario that undergirds the application of this restitution statute need not muddle our analysis.  We cannot interpret this statute to reach a result unsupported by its plain terms. *See Germain,* 503 U.S. at 254 (quoting *Rubin,* 449 U.S. at 430) (explaining that where "the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'"); *see also In re Amy,* 591 F.3d at 797 (Dennis, J., dissenting) ("Congress intended to afford child victims ample and generous protection and restitution, not to invite judge-made limitations patently at odds with the purpose of the legislation.").

No. 09–41238
c/w No. 09–41254
No. 09–31215

restitution."[16] The joint and several liability mechanism applies well in these circumstances, where victims like Amy are harmed by defendants acting separately who have caused her a single harm.[17] *See Burgess*, 2012 WL 2821069, at *13 (Gregory, J., concurring in part, dissenting in part, and concurring in

---

[16] As Judge Davis's dissenting opinion points out, § 3664(h) fully reads:

If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution *or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.*

(emphasis added).

Judge Davis's dissenting opinion would read the italicized portion of 3664(h) to allow district courts the discretion to circumvent § 2259's command to award a crime victim the full amount of his or her losses. Thus, § 2259 dictates that the circumstances underlying child pornography convictions under § 2252 do not permit division of liability for reasons this opinion has already explained; the injury victims like Amy suffer does not produce a loss capable of division. *See* note 14 *supra*. We echo the criticism of this approach embodied in Judge Southwick's dissenting opinion:

In light of the unique nature of prosecutions of child pornography and the clear congressional intent to maximize awards, any doubts about the proper amount of restitution should be resolved in favor of the child. . . . I am concerned that [Judge Davis's] emphasis on the discretion of a district court . . . tends towards accepting inappropriately low, even nominal awards. I would not accept that a forward-looking estimate of the number of future defendants and awards should be used to estimate a percentage of overall liability to be given a particular defendant. That puts too much weight on the interests of the defendants. Over-compensation is an unlikely eventuality.

[17] Writing separately in the Fourth Circuit's recent opinion analyzing § 2259, Judge Gregory explained the indivisibility of pornography victims' harms:

If [a defendant] proximately caused [a victim like Amy]'s psychological injury, this injury is indivisible from the psychological injuries proximately caused by the other offenders. I do not believe a fact finder could meaningfully say precisely $x$ amount of [the victim]'s psychological injuries were caused by [the defendant]'s watching the same video.

*Burgess*, 2012 WL 2821069, at *13 (Gregory, J., concurring in part, dissenting in part, and concurring in judgment).

No. 09–41238
c/w No. 09–41254
No. 09–31215

judgment) (explaining that the joint and several liability described in § 3664 "'has long been available . . . in which two negligent actors, acting independently of one another, caused by a single indivisible harm to the plaintiff.'" (quoting TORT LAW: RESPONSIBILITIES AND REDRESS 517 (John C.P. Goldberg et al. eds., 2008)).  And although the D.C. Circuit has expressed that it is "unclear . . . whether joint and several liability may be imposed upon defendants in separate cases," *Monzel*, 641 F.3d at 539, nothing in § 3664 forbids it, either expressly or through implication; the fact that it conforms well to this context supports its application.

Any fears that Amy and victims like her might be overcompensated through the use of joint and several liability, as expressed under § 3664(h), are unwarranted.  *See, e.g., Burgess*, 2012 WL 2821069, at * 11 ("While full compensation would be unlikely from any individual defendant, [the victim's] proposed interpretation of the restitution statute places no cap on her ultimate recovery, and would allow her to recover the amount of her losses many times over.").  The use of joint and several liability does not mean that Amy may "recover more than her total loss: [rather,] once she collects the full amount of her losses from one defendant, she can no longer recover from any other." *Id.* at *14 (Gregory, J., concurring in part, dissenting in part, & concurring in judgment) (quoting TORT LAW, *supra*, at 517).

Section 3664 provides "reasonable means" to defend against any theoretical overcompensation that could result.  *See* 18 U.S.C. § 3664(m)(1)(A)(ii).  First, if Amy recovers the full amount of her losses from defendants, the Government and defendant may use this information to ensure that Amy does not seek further awards of restitution.  *See id.* § 3664(e) (explaining that the court may resolve "[a]ny dispute as to the proper amount or type of restitution . . . by the preponderance of the evidence.").  Second, § 3664(k)

34

No. 09–41238
c/w No. 09–41254
No. 09–31215

suggests a means for ending defendants' existing joint and several restitution obligations once Amy receives the full amount of her losses; it allows for a district court, "on its own motion, or the motion of any party, including the victim, [to] adjust the payment schedule, or require immediate payment in full, as the interests of justice require." This broadly phrased subsection seems to enable courts to apply joint and several liability across jurisdictions because it permits those courts to adjust restitution orders as victims receive the full amount of their losses.[18]  More concretely, if Amy one day receives the full amount of restitution representing the "full amount of [her] losses" under § 2259, district courts across the nation may amend the judgments of defendants to reflect this fact under § 3664(k) by terminating further restitution obligations.[19]

In either circumstance, district courts must be in possession of evidence to support entry of restitution or amendment of the defendants' judgments. There are several potential sources of this information.  Victims, of course, are in the best position to know what restitution they have recovered and what restitution they have yet to receive.  In addition to information obtained from victims, the Government may rely on information maintained by the probation office and other arms of the U.S. Department of Justice to ensure that amounts

---

[18] Use of this mechanism does not violate § 3664(f)(1)(B)'s command that courts may not consider a victim's receipt of compensation from other sources "in determining the amount of restitution" because § 2259 limits a victim's recovery to the full amount of his or her losses. Section 2259(b)(4)(B)'s similar instruction that a court may not decline to issue a restitution order "because of . . . the fact that a victim has, or is entitled to, receive compensation for his or her injuries from . . . any other source" reinforces this conclusion.  Section 2259(b)(4)(B), read together with § 3664(b)(f)(1)(B), reinforces the mandatory nature of § 2259 by disallowing district courts from declining to issue restitution to crime victims while simultaneously honoring the cap § 2259 places on victims' recovery: the full amount of a victim's losses.

[19] Of course, even while Amy may not collect more than to which she is entitled, she may certainly obtain judgments in excess of that amount. Indeed, Amy has already obtained judgments exceeding $3.4 million.

No. 09–41238
c/w No. 09–41254
No. 09–31215

reported by a victim are accurate.[20]  Defendants may dispute any amounts in these requests, and, under § 3664(e), the court may resolve "[a]ny dispute as to the proper amount or type of restitution . . . by the preponderance of the evidence."[21]

### c

Next, the Government asserts that not restricting the recovery of losses by proximate cause produces an absurd result—constitutional implications that could be avoided if we were to read § 2259 as requiring proximate causation with respect to all categories of losses.  *See Lamie*, 540 U.S. at 534 (instructing that courts must enforce a statute's terms so long as "the disposition required by the text is not absurd.").  Specifically, the Government is concerned that without a proximate cause limitation, § 2259 could be challenged on the ground that it subjects a defendant to excessive punishment under the Eighth Amendment.

The Eighth Amendment prescribes that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Government posits that by giving effect to the statute's plain text, this court could cause Eighth Amendment problems similar to that expressed by a recent Supreme Court case involving criminal forfeiture:  Where criminal forfeiture "would be grossly disproportional to the gravity of [an] offense," the Supreme Court held that it would violate the Excessive Fines Clause of the Eighth Amendment. *United States v. Bajakajian*, 524 U.S. 321, 324 (1998).

---

[20] The comprehensive information the Government has provided in this case regarding the restitution ordered in other cases involving Amy confirms the Government's access to this type of information.

[21] Nothing in § 2259, § 3664, or in this opinion is intended to restrict the district court's ability to use any other mechanisms available under § 3664 to order restitution in a manner that effects § 2259's purposes.

No. 09–41238
c/w No. 09–41254
No. 09–31215

First, we are not persuaded that restitution is a punishment subject to the same Eighth Amendment limits as criminal forfeiture. Its purpose is remedial, not punitive. *See United States v. Webber*, 536 F.3d 584, 602–03 (7th Cir. 2008) ("Forfeiture and restitution are distinct remedies. Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the offender realized from his illegal activity.") (citations omitted); *see also United States v. Taylor*, 582 F.3d 558, 566 (5th Cir. 2009) ("Restitution operates to make the victim of the crime whole."). Even so, restricting the "proximate result" language to the catchall category in which it appears does not open the door to grossly disproportionate restitution in a way that would violate the Eighth Amendment. Section 2259 contains discrete causal limitations that precede the restitutionary right; restitution thus is limited to losses arising out of a victim's injury. *See* 18 U.S.C. § 2259(c) (imposing general causation requirement on definition of victim). Furthermore, the mechanisms under § 3664, which have already been described, further allay any concerns as to over-punishment. Fears over excessive punishment are misplaced.

Any concern that individual defendants may bear a greater restitutionary burden than others convicted of possessing the same victim's images, moreover, does not implicate the Eighth Amendment or threaten to create an absurd result. *See Arledge*, 553 F.3d at 899. Restitution is not tied to the defendant's gain; rather "so long as the government proved that the victim suffered the actual loss that the defendant has been ordered to pay, the restitution is proportional." *Id*. Even where a district court selectively imposed restitution on one co-defendant and not another, this court has treated this seeming inequality as being "of no consequence." *See id.* (citing *United States v. Ingles*, 445 F.3d 830, 839 (5th Cir. 2006) (explaining that "a district court may consider the relative

37

No. 09–41238
c/w No. 09–41254
No. 09–31215

degrees of responsibility of co-defendants in imposing restitution obligations and therefore, the simple fact that like punishment was not imposed on [the co-defendants] does not offend the constitution" (internal quotation marks and citations omitted)). Thus, the fact that some defendants will be held jointly and severally liable for the full amount of Amy's losses, while other defendants convicted of possessing Amy's images may not be (because, for example, the Government or Amy does not seek restitution from them) does not offend the Eighth Amendment. *See id.*

The court, moreover, can ameliorate the impact of joint and several liability on an individual defendant by establishing a payment schedule that corresponds to the defendant's ability to pay. *See, e.g., United States v. Wright*, No. 09-CR-103, at 5 (E.D. La. Dec. 16, 2009) (explaining the payment of restitution "shall begin while the defendant is incarcerated [and u]pon release, any unpaid balance shall be paid at a rate of $200.00 per month" and further explaining that "[t]he payment is subject to increase or decrease, depending on the defendant's ability to pay."); *see also* 18 U.S.C. § 3664(e) ("The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant.").

Ultimately, while the imposition of full restitution may appear harsh, it is not grossly disproportionate to the crime of receiving and possessing child pornography. *Cf. id.* at 899–900 (rejecting Eighth Amendment challenge to the imposition of full restitution, pursuant to joint and several liability, under Mandatory Victims Restitution Act, in context of mail fraud case). In light of restitution's remedial nature, § 2259's built-in causal requirements, and the mechanisms described under § 3664, we do not see any Eighth Amendment concerns here or any other absurd results that our plain reading produces.

38

No. 09–41238
c/w No. 09–41254
No. 09–31215

2

Accordingly, we hold that § 2259 requires a district court to engage in a two-step inquiry to award restitution where it determines that § 2259 applies. First, the district court must determine whether a person seeking restitution is a crime victim under § 2259—that is, "the individual harmed as a result of a commission of a crime under this chapter." 18 U.S.C. § 2259(c). The Supreme Court has acknowledged that "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children," *New York v. Ferber*, 458 U.S. 747, 759 (1982), and this court has elaborated that "children depicted in child pornography may be considered to be the victims of the crime of receiving child pornography." *United States v. Norris*, 159 F.3d 926, 929 (5th Cir. 1998). This logic applies with equal force to defendants who possess child pornography: By possessing, receiving, and distributing child pornography, defendants collectively create the demand that fuels the creation of the abusive images. Thus, where a defendant is convicted of possessing, receiving, or distributing child pornography, a person is a victim under this definition if the images the defendant possesses, receives, or distributes include those of that individual.

Second, the district court must ascertain the full amount of the victim's losses as defined under § 2259(b)(3)(A)–(F), limiting only § 2259(b)(3)(F) by the proximate result language contained in that subsection, and craft an order guided by the mechanisms described in § 3664, with a particular focus on its mechanism for joint and several liability.

IV

Having resolved this important issue of statutory interpretation, we apply our holding to Amy's mandamus and Wright's appeal.

39

No. 09–41238
c/w No. 09–41254
No. 09–31215

## A

Under our traditional mandamus inquiry, we will grant Amy's petition for mandamus if (1) she has no other adequate means to attain the desired relief; (2) she has demonstrated a clear and indisputable right to the issuance of a writ; and (3) in the exercise of our discretion, we are satisfied that the writ is appropriate in these circumstances. *See Dean*, 527 F.3d at 394. As the Supreme Court has noted, the "hurdles" limiting use of mandamus, "however demanding, are not insuperable." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 381 (2004).

We easily conclude that the first prong is met. Because we have held that the CVRA limits crime victims' relief to the mandamus remedy, Amy has no other means for obtaining review of the district court's decision not to order restitution. *See supra* § II–A. We are also satisfied that a writ is appropriate in these circumstances: The CVRA expressly authorizes mandamus, 18 U.S.C. § 3771(d)(3), and awarding restitution would satisfy § 2259's broad restitutionary purpose. Next, we conclude that Amy has a "clear and indisputable" right to restitution in light of our holding today. First, Amy is a "victim" under § 2259(c). Paroline possessed at least two of her images, and his possession of those images partly formed the basis of his conviction. *See Ferber*, 458 U.S. at 759; *Norris*, 159 F.3d at 929. Amy, as an "individual harmed as a result of [Paroline's] commission of a crime" falling within § 2259's scope, is thus a victim under § 2259. *See Kearney*, 672 F.3d at 94 ("Any argument that [Amy] has not suffered harm as a result of [Paroline's] crimes defies both fact and law."). Because Amy is a victim, § 2259 required the district court to award her restitution for the "full amount of [her] losses" as defined under § 2259(b)(3). Because the district court awarded Amy nothing, it therefore clearly and indisputably erred. No matter what discretion the district court possessed and no matter how

40

No. 09–41238
c/w No. 09–41254
No. 09–31215

confounding the district court found § 2259, it was not free to leave Amy with nothing.

On remand, the district court must enter a restitution order reflecting the "full amount of [Amy's] losses" in light of our holdings today.

## B

Turning to Wright's appeal, Amy is eligible for restitution as a "victim" of Wright's crime of possessing images of her abuse for the same reasons she is eligible as a victim of Paroline's crime. *See supra* § IV-A. It was therefore legal for the district court to order restitution to Amy. *See Arledge*, 553 F.3d at 897 (reviewing the legality of the restitution order de novo). As such, Wright's appeal necessarily focuses on the amount of the district court's restitution award, which we review for an abuse of discretion. *Id.* The district court awarded Amy $529,661 by adding Amy's estimated future counseling costs to the value of her expert witness fees. The district court did not explain why Wright should not be required to pay for any of the other losses Amy requested, and the record does not otherwise disclose why the district court reduced the Government's full request on Amy's behalf. While the district court erred in failing to award Amy the full amount of her losses, because the Government did not appeal Wright's sentence and Amy did not seek mandamus review, under *Greenlaw v. United States*, we must affirm Wright's sentence. 554 U.S. 237, 246 (2008) (holding appellate court may not increase sentence of defendant where Government did not appeal sentence directly or on cross-appeal).

## V

For the reasons above, we reject the approach of our sister circuits and hold that § 2259 imposes no generalized proximate cause requirement before a child pornography victim may recover restitution from a defendant possessing images of her abuse. We AFFIRM the district court in *United States v. Wright*,

No. 09–41238
c/w No. 09–41254
No. 09–31215

No. 09-CR-103 (E.D. La. Dec. 16, 2009).   We VACATE the district court's judgment in *United States v. Paroline*, 672 F. Supp. 2d 781 (E.D. Tex. 2009), and REMAND for proceedings consistent with this opinion.[22]

---

[22] Amy's motion to strike portions of the Government's brief is DENIED.

No. 09–41238
c/w No. 09–41254
No. 09–31215

DENNIS, Circuit Judge, concurring in part in the judgment.


I respectfully concur in the majority opinion's decision that the CVRA does not grant crime victims a right to a direct appeal from a district court's rejection of her claim for restitution under 18 U.S.C. § 2259; that the CVRA grants crime victims only a right to seek traditional mandamus review; and that the CVRA grants the government the right to seek mandamus and to retain its right to a direct appeal.

I further agree with the majority that neither the Government nor the victim is required to prove that the victim's losses defined by 18 U.S.C. § 2259(b)(3)(A)-(E) were a proximate result of the defendant's crime; it is only "any other loss suffered by the victim" that must be proved to be "a proximate result of the offense." *Id.* § 2259(b)(3)(F). Section 2259(c) defines "victim" as an "individual harmed as a result of a commission of a crime under this chapter," but it does not require a showing that the victim's losses included in § 2259(b)(3)(A)-(E) be a "proximate result of the offense." From this, I infer that the statute places only a slight burden on the victim or the government to show that the victim's losses or harms enumerated in those subsections plausibly resulted from the offense. Once that showing has been made, in my view, a presumption arises that those enumerated losses were the proximate result of the offense, which the defendant may rebut with sufficient relevant and admissible evidence.

Finally, I agree with the majority's conclusion that where a defendant is convicted of possessing child pornography, a person is a victim under the statute if the images include those of that individual.  In these cases, I agree that the government and the victim have made a sufficient showing, unrebutted by the defendant, that the victim is entitled to restitution of losses falling under 18 U.S.C. § 2259 (b)(3)(A)-(E).  Therefore, I concur in that part of the majority's

43

No. 09–41238
c/w No. 09–41254
No. 09–31215

judgment that vacates the district courts' judgments and remands the cases to them for further proceedings.

In remanding, however, I would simply direct the district courts to proceed to issue and enforce the restitution orders in accordance with 18 U.S.C. § 3664 and 3663A, as required by § 2259(b)(2).  Going forward, I believe it best to permit district courts to craft procedural and substantive devices for ordering restitution that would take into account both the mandatory nature of full restitution for crime victims under section 2259 and the mechanical difficulties of crafting orders given the possibility of multiplicitous liability among hundreds of defendants under circumstances that may change over time.  While I admire the majority's effort to provide guidance to the district courts in their extremely difficult task of molding and merging these federal statutes, §§ 2259, 3663A, and 3664, into a legal, just, and predictable system, I believe that effort is premature in this court at this time on the present record.  Rather, I would leave the decision as to how to proceed under these statutes to the district courts, which may decide to take additional evidence and require study and briefing by the parties to assist them in these difficult cases.

No. 09–41238
c/w No. 09–41254
No. 09–31215

W. EUGENE DAVIS, Circuit Judge, concurring in part and dissenting in part, joined by KING, SMITH, and GRAVES, Circuit Judges.

I agree with my colleagues in the majority that we should grant mandamus in *In re Amy* and remand for entry of a restitution award.[1]  I also agree that we should vacate the award entered in *Wright* and remand for further consideration on the amount of the award.  The devil is in the details, however, and I disagree with most of the majority's analysis.

I disagree with my colleagues in the majority in two major  respects:

1.   Although I conclude that the proximate cause proof required by the restitution statutes can be satisfied in these cases, I disagree with the majority that the statute authorizes restitution without any proof that the violation proximately caused the victim's losses.

2.   I agree with the majority that the district court must enter a restitution award against every offender convicted of possession of the victim's pornographic image; but I disagree with the majority that in cases such as these two, where the offenses of multiple violators contribute to the victim's damages, the district court must enter an award against each offender for the full amount of the victim's losses. No other circuit that has addressed this issue has adopted such a one size fits all rule for the restitution feature of the sentence of an offender. Other circuits have given the district courts discretion to assess the amount of the restitution the offender is

---

[1] Section 2259 directs courts to "order restitution for any offense under this chapter." District courts do not have discretion to make no award.

45

No. 09–41238
c/w No. 09–41254
No. 09–31215

ordered to pay. *See, e.g., United States v. Burgess*, 684 F.3d 445, 460 (4th Cir. 2012); *United States v. Kearney*, 672 F.3d 81, 100-01 (1st Cir. 2012); *United States v. McGarity*, 669 F.3d 1218, 1270 (11th Cir. 2012); *United States v. Laney*, 189 F.3d 954, 967 (9th Cir. 1999).

## I.

## THE STATUTES

At bottom, this is a statutory interpretation case, and I begin with a consideration of the structure and language of the statutes at issue that facially belie the majority's position that victims may be awarded restitution for losses not proximately caused by offense conduct. Section 2259 specifically governs mandatory restitution awards for crimes related to the sexual exploitation and abuse of children. A number of provisions in the statute make it clear that proof of a causal connection is required between the offenses and the victim's losses.

Section 2259(b)(2) expressly incorporates the general restitution procedures of 18 U.S.C. § 3664 and states that "[a]n order of restitution under this section shall be issued and enforced in accordance with section 3664 in the same manner as an order under section 3663A." Section 3664(e) states that "[t]he burden of demonstrating the *amount of the loss* sustained by a victim *as a result of the offense* shall be on the attorney for the Government." (emphasis added).

This language requiring proof of causation from § 3664(e) is consistent with the language defining "victim" found in § 2259(c), who is defined as "the individual harmed *as a result of* a commission of crime under this chapter . . . ." (emphasis added).

Section 2259(a) states that the court "shall order restitution for any offense under this chapter." Section 2259(b)(3) states that the victim's losses are defined

46

No. 09–41238
c/w No. 09–41254
No. 09–31215

as those suffered by the victim "as a proximate result of the offense." The full

text of § 2259(b)(3) is as follows:

> [T]he term "full amount of the victim's losses" includes any costs
> incurred by the victim for –
> > (A) medical services relating to physical, psychiatric, or
> > psychological care;
> > (B) physical and occupational therapy or rehabilitation;
> > (C) necessary transportation, temporary housing, and child
> > care expenses;
> > (D) lost income;
> > (E) attorneys' fees, as well as other costs incurred; and
> > (F) any other losses suffered by the victim *as a proximate*
> > *result of the offense.*

(emphasis added).

In interpreting this provision we should follow the fundamental canon of

statutory construction established by the Supreme Court in *Porto Rico Railway,*

*Light & Power Co. v. Mor,* 253 U.S. 345 (1920). In that case, the Court held that

"[w]hen several words are followed by a clause which is applicable as much to

the first and other words as to the last, the natural construction of the language

demands that the clause be read as applicable to all." *Id.* at 348. Applying this

cardinal rule of statutory interpretation, I conclude that subsection (F)'s "as a

proximate result of the offense" language applies equally to the previous five

subcategories of losses, (A) through (E). This interpretation was accepted by the

Eleventh Circuit in *United States v. McDaniel,* 631 F.3d 1204, 1209 (11th Cir.

2011) ("The phrase 'as a proximate result of the offense' is equally applicable to

medical costs, lost income, and attorneys' fees as it is to 'any other losses.'"

(citing *Porto Rico Ry.,* 253 U.S. at 348)); *see also Laney,* 189 F.3d at 965 (reading

the "as a result of" language in § 2259's definition of victim together with the

"proximate result" language in § 2259(b)(3)(F) to infuse all of 2259(b)(3) with a

proximate cause requirement).

No. 09–41238
c/w No. 09–41254
No. 09–31215

In contrast, the majority concludes that once the district court determines that a person is a victim (an individual harmed as a result of an offense under § 2259) the district court must order restitution without further proof of causation.[2]

The majority's reading of § 2259(b)(3) is patently inconsistent with the rule of statutory interpretation announced in *Porto Rico Railway*, which makes it clear that the clause should be read to apply to all categories of loss.[3] My conclusion that *Porto Rico Railway*'s rule of interpretation applies in this case is made even clearer when we consider the multiple references in the statutes discussed above expressly reflecting Congressional intent to require proof of causation.

The D.C. Circuit and other circuits have reached the same conclusion–that is, that § 2259 requires proof of proximate cause–albeit by a slightly different reasoning. *See United States v. Monzel*, 641 F.3d 528, 535-37 (D.C. Cir. 2011); *United States v. Aumais*, 656 F.3d 147, 153 (2d Cir. 2011); *Burgess*, 684 F.3d at 459. The D.C. Circuit explained that it is

> a bedrock rule of both tort and criminal law that a defendant is only liable for harms he proximately caused. ("An essential element of the plaintiff's cause of action for negligence, or . . . any other tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has

---

[2] The majority would apparently hold that if Amy were injured in an automobile accident on the way to a counseling session, those damages would be included in a restitution award.

[3] I am not persuaded by *In re Amy*'s attempt to distinguish the statute in *Porto Rico Railway* on the basis that the subcategories of § 2259(b)(3) are separated by semicolons rather than commas. *See In re Amy*, 636 F.3d 190, 199 (5th Cir. 2011). Either punctuation device is an acceptable method of separating clauses. *See* BRYAN A. GARNER, THE REDBOOK: A MANUAL ON LEGAL STYLE 1-15 (2d. ed. 2006).

No. 09–41238
c/w No. 09–41254
No. 09–31215

suffered. This connection usually is dealt with by the courts in terms of what is called 'proximate cause' . . . .").

(footnote omitted) (citation omitted) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 263 (5th ed. 1984)); *see also* WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 6.4, at 464 (2d ed. 2003) ("[For] crimes so defined as to require not merely conduct but also a specified result of conduct, the defendant's conduct must be the 'legal' or 'proximate' cause of the result."). "Thus, we will presume that a restitution statute incorporates the traditional requirement of proximate cause unless there is good reason to think Congress intended the requirement not to apply." *Monzel*, 641 F.3d at 536. The court found that "nothing in the text or structure of § 2259 leads us to conclude that Congress intended to negate the ordinary requirement of proximate cause." *Id.*

Other circuits have used different analyses but all circuits to confront this issue have interpreted the statute as using a proximate causation standard connecting the offense to the losses. *See United States v. Evers*, 669 F.3d 645, 658-59 (6th Cir. 2012) (finding a proximate cause requirement but declining to choose whether to adopt the *McDaniels* or *Monzel* rationale as they are "complementary"); *Kearney*, 672 F.3d at 96, 99 (adopting a proximate cause standard but not specifying under what analysis); *United States v. Crandon*, 173 F.3d 122, 125-26 (3d Cir. 1999) (stating, without analysis, that § 2259 requires damages for losses suffered "as a proximate result of the offense"). This circuit is the only circuit that has interpreted § 2259 and concluded that proximate cause is not required by the statute.

For the above reasons, I conclude that the statutes at issue require proof that the defendant's offense conduct proximately caused the victim's losses before a restitution award can be entered as part of the defendant's sentence.

No. 09–41238
c/w No. 09–41254
No. 09–31215

## II.

## CAUSATION

In cases such as the two cases before this court where the conduct of multiple offenders collectively causes the victim's damages, I would follow the position advocated by the Government and adopted by the First Circuit and the Fourth Circuit to establish the proximate cause element required by § 2259. *Kearney*, 672 F.3d at 98-99; *Burgess*, 684 F.3d at 459-60.  Under this "collective causation" theory, it is not necessary to measure the precise damages each of the over 100 offenders caused.  As the First Circuit in *Kearney* stated: "Proximate cause exists where the tortious conduct of multiple actors has combined to bring about harm, even if the harm suffered by the plaintiff might be the same if one of the numerous tortfeasors had not committed the tort." 672 F.3d at 98.  The court relied on the following statement of the rule from Prosser and Keeton:

> When the conduct of two or more actors is so related to an event that their combined conduct, viewed as a whole, is a but-for cause of the event, and application of the but-for rule to each of them individually would absolve all of them, the conduct of each is a cause in fact of the event.

KEETON ET AL., *supra*, § 41, at 268.

The court explained further:

> Proximate cause therefore exists on the aggregate level, and there is no reason to find it lacking on the individual level.  The Restatement (Third) of Torts has recognized this: causation exits even where "none of the alternative causes is sufficient by itself, but together they are sufficient" to cause the harm.

*Kearney*, 672 F.3d at 98 (quoting RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 27 reporters' n. cmt. g. (2010); *id.* § 36 cmt. a ("[E]ven an insufficient condition . . . can be a factual cause of harm when it combines with other acts to constitute a sufficient set to cause the harm.")).

50

No. 09–41238
c/w No. 09–41254
No. 09–31215

I agree with the Government and the First and Fourth Circuits that this definition of proximate cause is appropriate in this context and under this standard the causation requirement in both cases before us is satisfied.

## III.

## AMOUNT OF THE AWARD

The most difficult issue in these cases–where multiple violators combine to cause horrendous damage to a young victim–is establishing some standards to guide the district court in setting an appropriate restitution award for the single offender before the court.

I agree that Amy is a victim in both cases before us.  Defendant Paroline (in *In re Amy*) and defendant Wright possessed Amy's pornographic images and the statute requires the court to enter an award against them.

I agree that Amy is entitled to a restitution award from all of her offenders in a sum that is equal to the amount of her total losses.  But in cases such as these where multiple violators have contributed to the victim's losses and only one of those violators is before the court, I disagree that the court must always enter an award against that single violator for the full amount of the victim's losses.  I agree that § 3664(h) gives the court the option in the appropriate case of entering an award against a single defendant for the full amount of the victim's losses even though other offenders contributed to these losses.  I also agree that in that circumstance the defendant can seek contribution from other offenders jointly liable for the losses.[4]  We have allowed such contribution claims

---

[4] The Government argued that contribution would not apply in this context because the statute did not authorize it and, in any event, it would not apply among defendants convicted in different courts; but their authority on this point is very thin and does not directly and

No. 09–41238
c/w No. 09–41254
No. 09–31215

in analogous non-sex offender cases. *E.g.*, *United States v. Arledge*, 553 F.3d 881, 899 (5th Cir. 2008) (finding that defendant could "seek contribution from his co-conspirators to pay off the restitution award and reduce the amount he personally owe[d]" in the context of a fraud scheme with multiple participants); *accord United States v. Martinez*, 610 F.3d 1216, 1234 (10th Cir. 2010); *United States v. Newsome*, 322 F.3d 328, 340-41 (4th Cir. 2003).

In concluding that an award for the full amount of the victim's losses is required the majority relies on § 3664(h) which provides:

> If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or *may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.*

(emphasis added).   The majority simply ignores the second clause in § 3664(h) emphasized above.   That subsection plainly gives the court the option of either (1) assessing a restitution award against the single defendant in an amount that is equal to the victim's total losses or (2) apportioning liability among the defendants to reflect each defendant's level of contribution to the victim's loss taking into consideration a number of factors including the economic circumstances of each defendant. *Accord McGarity*, 669 F.3d at 1270. It would be surprising if Congress had not given courts this option. After all, restitution is part of the defendant's criminal sentence and § 3664(h), consistent with sentencing principles generally, gives the sentencing judge discretion to fix the sentence based on the facts and circumstances surrounding the defendant's circumstances, background, and nature of his conduct. *See, e.g., Burgess*, 684 F.3d at 460; *Kearney*, 672 F.3d at 100-01; *McGarity*, 669 F.3d at 1270; *Laney*,

---

strongly support this view.

No. 09–41238
c/w No. 09–41254
No. 09–31215

189 F.3d at 967. One size does not fit all in this context any more than the length of a prison sentence or any other feature of a criminal sentence.

I agree with the majority that the defendants in both cases before us having been convicted of violating 18 U.S.C. § 2252 must be ordered to pay restitution to Amy. We should leave the calculation of the appropriate award against each defendant to the district court in the first instance. I would give the district court the following general guidelines:

The court must recognize that Amy's losses are an aggregation of the acts of the person who abused and filmed her assault, those who distributed and redistributed her images, and those who possessed those images. The culpability and liability for restitution of any one defendant regarding Amy's loss is dependent at least in part on the role that defendant played with respect to her exploitation. *See, e.g., Burgess,* 684 F.3d at 460.

The court should first compute the victim's probable future losses based on evidence of the damages she will likely incur from the date of the defendant's offense conduct into the foreseeable future. The court should consider all items of damage listed in § 2259(b)(3) as well as any other losses suffered by the defendant related to the conduct of the violators of this chapter.

In a case such as this where multiple individuals have been convicted of contributing to her abuse, the district court has the discretion under § 3664(h) either to enter an award for the total amount of her provable losses or some portion of those losses to reflect the defendant's role in causing the damage as well as the other surrounding circumstances.

The district court is not required to justify any award with absolute precision, but the amount of the award must have a factual predicate. In determining whether it should cast the single defendant before it for the total amount of the victim's losses or in fixing the amount of a smaller award the

53

No. 09–41238
c/w No. 09–41254
No. 09–31215

court should consider all relevant facts including without limitation the following:

1. The egregiousness of the defendant's conduct including whether he was involved in the physical abuse of this victim or other victims, and whether he attempted to make personal contact with victims whose images he viewed or possessed.

2. For defendants who possessed images of the victim, consider the number of images he possessed and viewed, and whether the defendant circulated or re-circulated those images to others.

3. The financial means of the defendant and his ability to satisfy an award.

4. The court may consider using the $150,000 liquidated civil damage award authorized by 18 U.S.C. § 2255 or a percentage thereof as a guide in fixing the amount of the award.

5. The court may also consider as a guide awards made in similar cases in this circuit and other circuits.

6. Any other facts relevant to the defendant's level of contribution to the victim's loss and economic circumstances of the defendant.

## IV.

## CONCLUSION

In summary, I would grant mandamus and vacate the judgment in *In re Amy* and remand that case to the district court to enter an award consistent with the principles outlined above. I would also vacate the judgment in *Wright* and remand for entry of judgment consistent with the above guidelines.

No. 09–41238
c/w No. 09–41254
No. 09–31215

LESLIE H. SOUTHWICK, Circuit Judge, dissenting:

We are confronted with a statute that does not provide clear answers.  I join others in suggesting it would be useful for Congress "to reconsider whether § 2259 is the best system for compensating the victims of child pornography offenses." *United States v. Kennedy*, 643 F.3d 1251, 1266 (9th Cir. 2011); *see also United States v. Burgess*, 684 F.3d 445, 460 (4th Cir. 2012).  The goal is clear: providing meaningful restitution to victims of these crimes.  How to order restitution in individual cases in light of that goal is a difficult question.

Our task today is to effectuate the scheme according to the congressional design as best as we can discern it.  Both of the other opinions have ably undertaken this difficult task.  I agree with Judge Davis that this circuit should not chart a solitary course that rejects a causation requirement.  The reasons why I believe the statute requires causation are different than he expresses, though.  I agree with the majority, relying on the last-antecedent rule, that the phrase "as a proximate result of the offense" that is in Section 2259(b)(3)(F) only modifies the category of loss described in (F).  *See, e.g., Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 343 (2005).

Though I agree with the majority in that respect, I find persuasive the reasoning of the Second, Fourth, and D.C. Circuits that causation "is a deeply rooted principle in both tort and criminal law that Congress did not abrogate when it drafted § 2259." *United States v. Aumais*, 656 F.3d 147, 153 (2d Cir. 2011); *Burgess*, 684 F.3d at 457; *United States v. Monzel*, 641 F.3d 528, 535-36 (D.C. Cir. 2011).  In a similar vein, the Supreme Court stated that absent "some indication of congressional intent, express or implied," courts will decline to read federal statutory crimes that fail to mention it, as eliminating the *mens rea*

No. 09–41238
c/w No. 09–41254
No. 09–31215

requirement that has been a hallmark of crimes since the common law. *Staples v. United States*, 511 U.S. 600, 605-06 (1994).

True, the positioning of the phrase "proximate result" solely within subsection (F) could be a sign that Congress meant to eliminate causation for damages falling under subsections (A)-(E). Any such implication is thoroughly defeated, though, by other provisions of the statute. First, as the D.C. Circuit has recognized, Section 2259 calls for restitution to go to a "victim" of these crimes, a term defined as "the individual harmed *as a result* of a commission of a crime under this chapter." *Monzel*, 641 F.3d at  535 (emphasis added). Second,  the statute directs that an order of restitution should be issued and enforced "in the same manner as an order under section 3663A." §2259(b)(2). Under Section 3663A "'victim' means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." § 3663A(2). The "as a result" language from Section 2259 as well as the more explicit mention of proximate harm in Section 3663A convince me that "nothing in the text or structure of the restitution statute affirmatively indicates that Congress intended to negate the ordinary requirement of proximate causation for an award of compensatory damages." *Burgess*, 684 F.3d at 457; *Monzel*, 641 F.3d at 536.

I understand the contours of this proximate-cause requirement in much the same manner as does Judge Davis, including his analysis of "collective causation." *See also United States v. Kearney*, 672 F.3d 81, 96-98 (1st Cir. 2012). I also agree that the option of "apportion[ing] liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant" belies the majority's notion that each case calls for an award equal to the total loss incurred by a victim. § 3664(h). Yet by making restitution

56

No. 09–41238
c/w No. 09–41254
No. 09–31215

"mandatory" for all these crimes of exploitation, including possession and distribution of child pornography, Congress made its "goal of ensuring that victims receive full compensation" plain. *Kearney*, 672 F.3d at 99.

Awards must therefore reflect the need to make whole the victims of these offenses. As Amy's suffering illustrates, the "distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children." *New York v. Ferber*, 458 U.S. 747, 759 (1982). They constitute an indelible "record of the children's participation and the harm to the child is exacerbated by their circulation." *Id.*

In light of the unique nature of prosecutions for child pornography and the clear congressional intent to maximize awards, any doubts about the proper amount of restitution should be resolved in favor of the child. This concern is largely a matter of a difference of emphasis from the views expressed by Judge Davis. I am concerned that his emphasis on the discretion of a district court, though clearly that discretion exists and can be exercised under the terms of Section 3664, tends towards accepting inappropriately low, even nominal awards. I would not accept that a forward-looking estimate of the number of future defendants and awards should be used to estimate a percentage of overall liability to be assigned a particular defendant. That puts too much weight on the interests of the defendants. Over-compensation is an unlikely eventuality. Were it to occur, then at that point district courts might be able to shift to evening up contributions among past and future defendants.

In summary, proximate cause must be shown and the principle of aggregate causation is the method for proving its existence. By statute, district courts can award all damages to each defendant but also have discretion to make

lesser awards if properly explained.  This means that I agree with requiring additional proceedings as to both defendants, but disagree that each district court is *required* to impose a restitution award of the full amount of damages.